1  *
BRENT L. RYMAN, ESQ. (#008648)
2  PAUL M. BERTONE, ESQ. (#004533)
ERICKSON, THORPE & SWAINSTON, LTD.
3  1885 South Arlington Ave., Suite 205
Reno, Nevada 89509
4  Telephone: (775) 786-3930
*Attorneys for Defendants*
5  *Nye, Elko and Storey Counties*

6

7

8

9

10            IN THE UNITED STATES DISTRICT COURT

11                  FOR THE DISTRICT OF NEVADA

12

13

14  JANE DOE;
                                            Case No.: 3:24-cv-00065-MMD-CLB
15         Plaintiffs,
                                            **MOTION TO DENY**
16  vs.                                     **PRO HAC VICE ADMISSION**

17  JOSEPH LOMBARDO, Governor of Nevada,
in his official capacity; AARON FORD,
18  Attorney General of Nevada, in his official
capacity; NYE COUNTY; ELKO COUNTY;
19  STOREY COUNTY; WESTERN BEST, INC.
D/B/A/ CHICKEN RANCH; WESTERN
20  BEST, LLC; DESERT ROSE CLUB, LLC;
HACIENDA ROOMING HOUSE, INC.
21  D/B/A BELLA'S HACIENDA RANCH;
MUSTANG RANCH PRODUCTIONS, LLC
22  d/b/a MUSTANG RANCH LOUNGE, LLC;
LEONARD "LANCE' GILMAN, in his
23  official capacity; and LEONARD 'LANCE'
GILMAN, in his individual capacity,
24
         Defendants.
25  _____/

26  ///

27  ///

28  ///

ERICKSON, THORPE &
SWAINSTON, LTD.

1

1  COME NOW, Defendants, NYE COUNTY, ELKO COUNTY and STOREY COUNTY, (hereinafter, "the County Defendants," which includes the official capacity suit against Defendant Gilman), by and through their Attorneys of Record, ERICKSON, THORPE & SWAINSTON, LTD., and BRENT L. RYMAN, ESQ., and PAUL M. BERTONE, ESQ., and hereby move this Court, pursuant to LR IA 11-2 and pursuant to its inherent power, to deny any anticipated pro hac vice petitions filed by the outside attorneys currently listed upon Plaintiff's Complaint (ECF No. 1).

The County Defendants reluctantly pursue this motion because these out-of-state attorneys' behavior strongly skirts this Court's rules and practices, as plainly evidenced a Complaint containing entirely superfluous claims in violation of Nevada Rule of Professional Conduct 3.1 (Meritorious Claims and Contentions). Specifically, as referenced in the County Defendants' recent Motion to Dismiss (ECF No. 5), this litigation presents claims identical to those previously rejected and soundly dismissed by this very District Court, with such dismissal being affirmed at the Ninth Circuit Court of Appeals. The County Defendants further rely upon other questionable actions raising ethical concerns, including but not limited to a veritable publicity tour in violation of Nevada Rule of Professional Conduct 3.6 (Trial Publicity). As the Court will see below, this includes a video press release broadly publicizing the filing of the instant Complaint without being authorized by this Court to practice law in this suit. Pro hac vice admission has been appropriately denied for less, and the County Defendants respectfully request such relief here.

The County Defendants' Motion Deny Pro Hac Vice Admission is made and based upon all of the pleadings and papers on file herein, including the following Memorandum of Points & Authorities, as well as any oral argument the Court may seek to entertain.

///
///
///
///
///



**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    BRIEF SUMMARY OF ACTION AND CURRENT MOTION**

Plaintiff's Complaint (ECF No. 1) advances claims for relief against the County Defendants under (1) the Thirteenth Amendment Ban on Slavery, (2) 18 U.S.C. § 1591 (a)(1) and § 1595 for perpetrating sex trafficking, and (3) 18 U.S.C. § 1591 (a)(2) and § 1595 for benefitting from sex trafficking. (*See*, Pl's Compl. (ECF No. 1), pp. 42-44). It requests, in addition to other compensation, declaratory relief and an injunction which would effectively end legalized prostitution in Nevada. (Pl's Compl. (ECF No. 1), pp. 45-46). Unfortunately for Plaintiff, these claims have already been heard and denied in other cases filed by these same attorneys from the National Center on Sexual Exploitation.

The immediately-prior generation of this suit contained identical or near-identical claims and prayers for relief. *See*, *Williams v. Sisolak, et al.*, Case No. 2:21-cv-01676-APG-VCF, Compl. (ECF No. 1), pp. 40-46, ll. 20-1, filed Sept, 10, 2021; *see, also*, First Amend. Compl., (ECF No. 49), pp. 50-55, ll. 5-8, filed Nov. 11, 2021 (adding Jane Doe #1 and Jane Doe #2 to the caption). And more importantly, as to those identically-situated public defendants within that prior-referenced suit, these same claims were already decided and soundly rejected in a decision affirmed by the Ninth Circuit. To wit, the County and other governmental Defendants were dismissed for lack of Article III constitutional standing, and thus a lack of subject matter jurisdiction over them. *Williams v. Sisolak*, 2022 WL 2819842, at *9 (D. Nev., July 18, 2022); *see also*, *Williams v. Sisolak*, 2024 WL 194180, at *2 (9th Cir., Jan. 18, 2024).

It is thus surprising these attorneys would now cast identical and near-identical allegations of purported wrongdoing against these County Defendants to those which were just dismissed but a few short weeks ago. Defendants find no distinguishing fact or factor, no relevant difference from the last suit that might suggest the possibility of a different result. And at this point, such persistence has to be as annoying to this Court as it is to these County Defendants. And the only reason appears to be so certain out-of-state interests may enjoy the media spotlight at the outset of each suit.

The filing of these vexatious, baseless and frivolous claims against the County Defendants seems all the more egregious when the attorneys guilty of such artful pleading practices are not even licensed in Nevada, but remain desirous pro hac vice admission. *See, e.g.*, Compl., (ECF No. 1), p. 1, ll. 10-11 ("Pro Hac Vice applications forthcoming Attorneys for Plaintiff"). So when the Court considers the publicity efforts surrounding this suit, including an ill-advised press conference celebrating this fatally-flawed Complaint, these Defendants hope it will see fit to end this repeated abuse by precluding the admission of any and all of the counsel for the National Center on Sexual Exploitation.

## II. LEGAL ARGUMENT

### A. Factors for consideration of pro hac vice applications.

The non-admitted attorneys again listed on this Complaint include Benjamin W. Bull, Esq., Peter A. Gentala, Esq., Dani Bianculli Pinter, Esq., Christen M. Price, Esq., and Victoria Hirsch, Esq., all of the National Center on Sexual Exploitation in Washington, DC. Although no petitions for permission to practice yet appear on the docket, they will presumably, eventually, be filed as in past cases. As such, the Court may require a certain framework around which to guide its consideration. And with that in mind, the following law is suggested to provide that direction for this Court's sound discretion.

"The Latin phrase 'pro hac vice' means: 'For this occasion or particular purpose. The phrase usually refers to a lawyer who has not been admitted to practice in a particular jurisdiction but who is admitted there temporarily for the purpose of conducting a particular case.'" *In re Schwinn Bicycle Co.*, 249 B.R. 760, 762 (Bankr. N.D. Ill. 2000). "The term implies by its definition that it is to be used sparingly. If pro hac admission was used to allow out of state attorneys to maintain a regular presence in courts in this state, the State Bar's ability to supervise lawyers who regularly practice law in this State would be undermined." *In re Rash*, 2008 WL 2519825, at *3 (Bankr., M.D. Ala., June 19, 2008).

///
///
///



In this District Court, LR IA Rule 11-2 governs the admission to practice in a particular case. The Rule provides that "[a]n attorney who has been retained or appointed to appear in a particular case but is not a member of the bar of this court may appear only with the court's permission. Applications must be by verified petition on the form furnished by the clerk." LR IA 11-2(a). The Rule further provides that to be admitted, certain conditions must be met:

  (1) The attorney is not a member of the State Bar of Nevada;

  (2) The attorney is not a resident of the State of Nevada;

  (3) The attorney is not regularly employed in the State of Nevada;

  (4) The attorney is a member in good standing and eligible to practice before the bar of another jurisdiction of the United States; and

  (5) The attorney associates an active member in good standing of the State Bar of Nevada as attorney of record in the action or proceeding.

*Id.*

Notably, the Rule cautions against repeated appearances "[a]bsent special circumstances and a showing of good cause . . . ." LR IA 11-2(f). Critically for our purposes, it also requires the petition seeking admission to state "[th]at the attorney understands and will comply with the standards of professional conduct of the State of Nevada and all other standards of professional conduct required of members of the bar of this court. LR IA 11-2(b)(7).

Admission on a pro hac vice basis is a privilege, and ceertainly not a right. *United States v. Ensign*, 491 F.3d 1109, 1113 (9th Cir. 2007). "[D]enial of a motion to appear pro hac vice is reviewed for abuse of discretion, except to the extent that the appeal raises an issue of law, which is reviewed de novo." *Id.* Local rules pertaining to pro hac vice practice should <u>not</u> be applied "mechanistically, without discussion of whether the interest of the 'fair, efficient and orderly administration of justice' requires denial of the application." *United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002). "[A] court's decision to deny pro hac

vice admission must be based on criteria reasonably related to promoting the orderly administration of justice or some other legitimate policy of the courts." *In re Bundy*, 840 F.3d 1034, 1042 (9th Cir. 2016).

"Where an out-of-state attorney suggests through his behavior that he will not 'abide by the court's rules and practices,' the district court may reject his pro hac vice application." *Id*. "In denying a pro hac vice application, the judge must articulate his reason for the benefit of the defendant and the reviewing court." *Id.*, at 1042-43. Questionable behavior which may tend to persuade against pro hac vice admission includes the petitioning counsel being previously guilty of "unreasonably and vexatiously multiplying the proceedings" in violation of 28 U.S.C. § 1927. *Id.*, at 1045 (*citing, Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 555 (Fed. Cir. 1996)); *see also, United States v. Ensign*, 491 F.3d at 1113 (noting that pro hac vice attorney had previously filed "pleadings . . . of dubious merit and possibly submitted for improper purposes"). Nonetheless, "[w]hen a district court admits an attorney pro hac vice, the attorney is expected to follow local rules." *In re Bundy*, 840 F.3d at 1047.

The Ninth Circuit has recognized that "counsel from other jurisdictions may be significantly more difficult to reach or discipline than local counsel." *In re U.S.*, 791 F.3d 945, 957 (9th Cir. 2015). "However, '[a]dmission to the state bar is the essential determinant of professional ethics and legal competence,' and, in practice, 'the application process for admission before the federal district courts is generally perfunctory and pro forma.'" *Id*. "Therefore, if a court has ethical doubts about an attorney who is in good standing with a state bar, it must articulate some reasonable basis for those doubts before denying the attorney's application for pro hac vice admission." *Id.* "When we are faced with misconduct by an attorney practicing in Nevada without a Nevada law license, we do not have the benefit of all the sanctions available to us in responding to the same misconduct by a Nevada-licensed attorney." *Matter of Moquin* (No. 78946), 135 Nev. 660, 450 P.3d 389, 2019 WL 5390401, at *3 (Nev., Oct. 21, 2019) (unpublished disposition).

///

With regard to the "perfunctory and pro forma" aspect to the application process referenced *In re U.S.*, 791 F.3d at 957, all too often it seems that the pro hac vice petition is submitted and heard *ex parte*. *See, United States v. Bundy*, 2017 WL 1458197, at *3 (D. Nev., Apr. 24, 2017) (conducting ex parte hearing on attorney's pro hac vice application); *In re N.S. Garrott & Sons*, 63 B.R. 189, 191 (Bankr. E.D. Ark. 1986) (noting that bankruptcy court routinely approved pro hac vice applications without a hearing, and relied on counsel's integrity to accurately state whether they represented adverse interests); *Harty v. Spring Valley Marketplace LLC*, 2016 WL 8710480, at *2 (S.D.N.Y., Jan. 22, 2016) (party opposing pro hac vice admission forced to do so through Motion for Reconsideration, since application was had been granted ex parte).[1]

Toward that end, this "preemptive strike" motion is also directed to the sound discretion and inherent power of the Court to control its docket and the proceedings before it. As illustrated above, that power includes deciding who may practice before that Court. "It is well established that the district courts have inherent power to control their dockets." *Arminas Wagner Enterprises, LLC v. Ohio Sec. Ins. Co.*, 2022 WL 980602, at *1 (D. Nev., Mar. 31, 2022). "Such power is indispensable to the court's ability to enforce its orders, manage its docket, and regulate insubordinate attorney conduct." *Adobe Sys. Inc. v. Christenson*, 891 F.Supp.2d 1194, 1201 (D. Nev. 2012). "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc*., 20 Cal.4th 1135, 1145, 980 P.2d 371, 378 (1999).

///

---

[1]. Defendants mention this here only to explain what might seem at first blush to be an aggressive tactic in filing this Motion to Deny Pro Hac Vice Admission, before an application or petition has technically even been made. Frankly, Defendants simply did not want to risk a pro hac vice admission being handed to them as a fait accompli, and then being forced to oppose said admission through some type of Motion for Reconsideration employing highly unfavorable standards which weigh heavily against the party seeking to reverse such result.

Considering the above law and principles, and for the factual reasons illustrated below, the District Court should refuse to allow this charade of a lawsuit – at least in regard to the specious claims advanced against these County Defendants – to proceed with these out-of-state counsel.

**B.      This case presents frivolous, sham litigation filed solely for publicity, and this Court can discourage such tactics by refusing to permit the authors of this tactic to practice before this Court.**

There can be no dispute that LR IA 11-2 (b)(9) requires the petitioning counsel seeking admission to comply "with the standards of professional conduct of the State of Nevada and all other standards of professional conduct required of members of the bar of this court." *Id.* Yet even based on the limited material and evidence before the Court, it is readily apparent that Plaintiff's counsel has no intent to abide by local rules. The actual pleading already on file, a very familiar-looking Complaint to those who have been involved in defending this ongoing attack against legal prostitution, is completely frivolous as to these County Defendants, and therefore is already a violation of local rule.

NRPC 3.1 requires the filing of "Meritorious claims and Contentions," as reflected by its title, and therefore requires in pertinent part that: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." *Id.* Moreover, the "failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process." *See*, NRPC 1.0A (c). This rule seems already to have been touched upon by filing a Complaint including claims against these County Defendants that are frivolous and have no hope of succeeding.

Plaintiff's Complaint alleges that, by allowing legalized brothel prostitution, and by failing to adequately regulate the operation of those brothels, the County Defendants have provided an infrastructure which facilitates and provides cover for the sex trafficking of the prostitutes subject to those requirements. Jane Doe #3 is alleged to be one of these prostitutes so injured. Unfortunately, this current suit's immediate predecessor alleged

ERICKSON, THORPE & SWAINSTON, LTD.

8

exactly the same thing, and the causes of action alleged are even identical. *See*, *Williams v. Sisolak, et al.*, Case No. 2:21-cv-01676-APG-VCF, Compl. (ECF No. 1), pp. 40-46, ll. 20-1, filed Sept, 10, 2021; *see, also*, First Amend. Compl., (ECF No. 49), pp. 50-55, ll. 5-8, filed Nov. 11, 2021 (adding Jane Doe #1 and Jane Doe #2 to the caption). The only pertinent difference between the respective suits is that different names appeared in the caption of the last one, to wit Jane Doe #1, Jane Doe #2 and Angela Williams.

At this point, it is settled law that any injuries these women are suffering are not fairly traceable back to these county governmental Defendants because those injuries were necessarily inflicted by independent third-parties. *Williams v. Sisolak*, 2022 WL 2819842 (D. Nev., July 18, 2022), *aff'd*, 2024 WL 194180 (9th Cir. Jan. 18, 2024). This current suit has charged nothing to change this end result. For that matter, Plaintiff's counsel did not even try to render a noticeable difference or attack from a different approach in this latest effort. And there is no indication that constitutional law concerning Article III standing is on the verge of some drastic, generational sea change either. The National Center on Sexual Exploitation cannot expect to come to Nevada and repeatedly attack its governmental entities with ivory tower pontifications about the evils of prostitution until it runs out of Plaintiffs. The County Defendants therefore respectfully request this Court end this serial, sham litigation by refusing to admit these out-of-state counsel.

The publicity tour in which these out-of-state counsel have already engaged whilst attempting to generate interest in their frivolous Complaint, full of salacious allegations, only seems to aggravate the offensiveness of this entire political campaign. And this media blitz may violate local rules as well.

NRPC 3.6, "Trial Publicity," provides in pertinent part:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

///

Rule 3.6(a); *see also*, Nev. Sup. Ct. R. 244 ("Attorneys must observe and strictly comply with Rule of Professional Conduct 3.6 regarding the conduct of all attorneys with respect to trial publicity."); LR 1-1(c) ("The court expects a high degree of professionalism and civility from attorneys. There should be no difference between an attorney's professional conduct when appearing before the court and when engaged outside it, whether in discovery or any other phase of a case.").

> The "substantial likelihood" test embodied in [Nevada's former] Rule 177 is constitutional under this analysis, for it is designed to protect the integrity and fairness of a State's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech. The limitations are aimed at two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found. Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by "impartial" jurors, and an outcome affected by extrajudicial statements would violate that fundamental right.

*Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991).

Nevada also requires that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." NRPC Rule 4.4(a). And there is voluminous decision law indicating that pro hac vice counsel should tread lightly about seeking press coverage and using media in influence the court. *See, e.g., Bromgard v. Montana*, 2007 WL 9709964, at *3 (D. Mont., July 11, 2007) (court reminding pro hac vice counsel of discretionary nature of his appearance, and cautioning that he cannot be counsel of record and also "use this case as a public interest case" without risking serious and willful violation of Rule 3.6(a)); *Dillinger v. Brandt*, 2020 WL 5642192, at *1-3 (S.D. Ind., Sept. 22, 2020) (after plaintiff's pro hac vice counsel live-streamed accusations that school thought rape was fine, court reminding counsel the pro hac vice admittance required compliance with Rule 3.6(a)); *Clifford v. Trump,* 2018 WL 5273913, at *2 (C.D. Cal., July 31, 2018) (reflecting that attorney Jason Avenatti withdrew his pro hac vice application soon after the judge told him that if admitted to this case, your "publicity

1  tour" ends here); *Adams v. Lab'y Corp. of Am.*, 2014 WL 7336697, at *4 (N.D. Ga., Dec. 22, 2014) (adopting Order Governing Pretrial Publicity, and requiring pro hac vice counsel to comply in Georgia RPC 3.6(a)); *United States v. Megale*, 235 F.R.D. 151, 164 (D. Conn. 2006) (noting dissemination of privileged information to the media which appeared to be done to engender publicity, harassment and intimidation the witness, and ordering attorney to notify any future court to whose bar he sought admission on pro hac vice basis that he has been found to have violated a District of Connecticut local rule protecting the identity of witnesses).

Closer still to the circumstances presented here, in *Mooney v. Haight*, 2005 WL 2319262, at *1 (Mass. Super., Aug. 26, 2005), an out-of-state New York attorney, John A. Aretakis, had axe to grind against the Catholic Church in Massachusetts, and had previously represented multiple plaintiffs (alter boys) alleging sexual abuse by priests. But before he could be admitted to the Massachusetts bar in the particular case at bar, and indeed before the Complaint in the matter had even been filed, this attorney held a press conference broadly publicizing the instant complaint and salacious facts underlying it, all in an apparent effort to generate trial publicity. *Id.* The court was not overly impressed with such conduct, since it implicated Mass. RPC Rule 3.6 (Trial Publicity), and was further "aggravated" by the acknowledged circumstance that at the time Mr. Aretakis held the conference, he was not even licensed to practice law in Massachusetts. *Id*. Viewing this fact, and other indications of trouble to come, "the Court ha[d] no hesitation in concluding that there [were] 'serious and articulable reasons' for concluding that Attorney Aretakis should not be extended the privilege of practicing before the court." *Id.*, at 2.

///
///
///
///
///
///



11

1    As referenced previously, some of the Attorneys of the National Center of Sexual Exploitation have engaged in a veritable press tour over the filing of this case.[2] None of them are yet licensed to practice in this particular action. And while Ms. Price is not technically a prosecutor, she certainly does seem to be using her video appearance (https://www.youtube.com/watch?v=5jYIFhn3bgQ) for the purpose of "making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused . . . ." *See*, NRPC 3.8(f) (rule is applicable to prosecutors only). Regardless, the entire video is designed to engender disgust and anger toward the defendants, and further generate a "substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." NRPC 3.6(a).

Moreover, in this immediately above referenced video, never once is it mentioned that this same suit, making the same allegations, has already been dismissed, with this result affirmed by the Ninth Circuit. (Nye County was even a common defendant in both suits.) The closest to conceding such previous failures comes within a comment made by Mr. Guinasso, that "[w]ith every case we file, we continue to expose the systemic sexual exploitation codified and promoted by the State of Nevada and its political subdivisions from survivors who have been and continue to be entrapped, enslaved and abused by Nevada's system." *See*, https://www.youtube.com/watch?v=5jYIFhn3bgQ (at approximately 6:24).

///
///
///
///
///

---

[2]. *See, e.g.*, https://www.youtube.com/watch?v=5jYIFhn3bgQ, "National Center on Sexual Exploitation/Press Conference-2024 Nevada Brothel Sex Trafficking Case-Sex Trafficking Survivor Sues Nevada, Government Officials, and Brothels for Enabling Sex Trafficking"; *see also, e.g.* https://www.courthousenews.com/nevadas-legal-brothels-facilitate-sex-trafficking-lawsuit-says/ , "Nevada's legal brothels facilitate sex trafficking, lawsuit says," Courthouse News Service, Mark Hebert, published Feb. 9, 2024 (all publicly-available internet materials as last visited February 19, 2024); *see also,* referenced materials at Mustang Ranch's Motion to Dismiss, (ECF No. 6), p. 5, ll. 26-28.

ERICKSON, THORPE & SWAINSTON, LTD.

12

1　　　　The accuracy or inaccuracy of press statements can sometimes make the difference in conformance or violation of Rule 3.6. *See, e.g., Coleman-Hill v. Governor Mifflin Sch. Dist.*, 2010 WL 5014352, at *1-3 (E.D. Pa., Dec. 2, 2010) (allegations that press release was intended to "defame and humiliate" the plaintiffs, but court noting statements reflected a general, yet accurate, description of the parties' positions). Not mentioning these prior failures is misrepresentation by omission.

　　　　This Court has the ability to stop this abuse of the court system, and end this ceaseless drain on public coffers in the form of legal fees, right here and right now, by simply refusing to admit these out-of-state attorneys who are bent on repetitive failure, so long as they can get another press conference out of it.

### III.　CONCLUSION

　　　　The National Counsel on Sexual Exploitation may not simply ignore the fact that their theories and their claims have been repeatedly rejected, and keep filing the same suit hoping for a different result. Whatever moral imperative with which they believe themselves to be vouchsafed, they still must comply with this Court's rules and regulations. Yet they have illustrated, already, an abject disregard for those rules. These County Defendants therefore respectfully request that the Court deny their pro hac vice admissions.

　　　　DATED this 1st day of March, 2024.

　　　　　　　　　　　　　　　　　　　　ERICKSON, THORPE & SWAINSTON, LTD.


　　　　　　　　　　　　　　　　　　　　　　*/s/ Brent Ryman*
　　　　　　　　　　　　　　　　　　　　BRENT L. RYMAN, ESQ. (#008648)
　　　　　　　　　　　　　　　　　　　　PAUL M. BERTONE, ESQ. (#004533)
　　　　　　　　　　　　　　　　　　　　ERICKSON, THORPE & SWAINSTON, LTD.
　　　　　　　　　　　　　　　　　　　　1885 South Arlington Ave., Suite 205
　　　　　　　　　　　　　　　　　　　　Reno, Nevada 89509
　　　　　　　　　　　　　　　　　　　　Telephone: (775) 786-3930
　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants Nye,*
　　　　　　　　　　　　　　　　　　　　*Elko and Storey Counties*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP Rule 5, I certify that I am an employee of ERICKSON, THORPE & SWAINSTON, LTD. and that on this day I caused to be served a true and correct copy of the attached document by:

☐     U.S. Mail

☐     Facsimile Transmission

☐     Personal Service

☐     Messenger Service

X     CMECF

addressed to the following:

     *See* CMECF service list.

DATED this 1st day of March, 2024.

                                                   */s/ Brent Ryman*
                                                   Brent Ryman