1

2

3                          UNITED STATES DISTRICT COURT

4                                DISTRICT OF NEVADA

5                                        * * *

6    JANE DOE,                                    Case No. 3:24-cv-00065-MMD-CSD

7                              Plaintiff,                         ORDER

8         v.

     JOSEPH LOMBARDO, in his capacity as
9    Governor of the State of Nevada, *et al.*,

10                            Defendants.

11

12   **I.    SUMMARY**

13            In this action challenging Nevada's system of legalized prostitution, anonymous

14   Plaintiff "Jane Doe" alleges violations of the Thirteenth Amendment and the Trafficking

15   Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591(A)(1)-(2) and 1595,

16   related to her employment at several ranches and clubs licensed to sell sexual services.

17   (ECF No. 1 ("Complaint").) Doe brings suit against three sets of Defendants, which

18   include (1) Nevada state government officials ("State Defendants")[1]; (2) several Nevada

19   counties with licensed brothels ("County Defendants")[2]; and (3) the legal brothels at which

20   Plaintiff worked between 2017 and 2023 ("Brothel Defendants")[3]. (*Id.*) Asserting third-

21   party standing on behalf of all individuals "currently being sex trafficked within legal

22

23   _____

24   [1]State Defendants are Joseph Lombardo, Governor of Nevada, and Aaron Ford,
     Attorney General of Nevada, in their official capacities.

25        [2]County Defendants are Nye, Elko, and Storey counties.

26        [3]Brothel Defendants are Western Best, Inc. d/b/a Chicken Ranch ("Chicken
     Ranch"); Desert Rose Club, LLC ("Desert Rose Club"); Hacienda Rooming House, Inc.
27   d/b/a Bella's Hacienda Ranch ("Bella's Hacienda Ranch"); Mustang Ranch Productions,
     LLC d/b/a Mustang Ranch Lounge, LLC ("Mustang Ranch"), and Lance Gilman, owner of
28   Mustang Ranch and Storey County Commissioner, in his individual and official capacities
     (collectively, "Mustang Ranch Defendants").

1
2
3

brothels in Nevada," Plaintiff seeks declaratory and injunctive relief preventing all Defendants from implementing and enforcing numerous prostitution-related Nevada state and local laws, as well as damages. (*Id.* at 45-46.)

4
5
6
7
8
9
10
11
12
13
14
15
16
17

Pending before the Court are multiple motions to dismiss implicating important threshold issues. They include State and County Defendants' motions to dismiss the Complaint under, *inter alia*, Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction (ECF Nos. 5 ("County Defendants' First Motion")[4], 24 ("State Defendants' Motion")[5], 43 ("County Defendants' Second Motion")[6]), and Mustang Ranch Defendants' motion to dismiss under Rule 8(a) or to strike the Complaint under Rule 12(f) (ECF No. 6 ("Mustang Ranch Defendants' Motion")[7]). Because the Court finds that Plaintiff fails to demonstrate Article III standing to bring her claims against State and County Defendants (collectively, "Government Defendants"), the Court grants their Rule 12(b)(1) motions (ECF Nos. 5, 24, 43) and dismisses all claims against Government Defendants with prejudice. The Court similarly dismisses Doe's claims for prospective relief against Brothel Defendants for lack of standing and directs Plaintiff to show cause as to why she has standing to bring her only remaining claims for damages against Brothel Defendants. Finally, in light of its jurisdictional findings, the Court denies Mustang

18
19
20

21
22

[4]Plaintiff filed a response (ECF No. 13) to County Defendants' First Motion and County Defendants replied (ECF No. 16). Mustang Ranch Defendants, Desert Rose Club, and Chicken Ranch joined the motion. (ECF Nos. 8, 32, 69.)

23
24

[5]Plaintiff filed a response (ECF No. 63) to State Defendant's Motion and State Defendants replied (ECF No. 74). Mustang Ranch Defendants, Desert Rose Club, and Chicken Ranch joined State Defendants' motion. (ECF Nos. 29, 41, 69.)

25
26

[6]Plaintiff filed a response (ECF No. 52) to County Defendants' Second Motion and County Defendants replied (ECF No. 62). State Defendants joined the motion. (ECF No. 51.)

27
28

[7]Plaintiff filed a response (ECF No. 14) and Mustang Ranch Defendants replied (ECF No. 18). Defendants Desert Rose Club and Chicken Ranch joined the motion. (ECF Nos. 33, 69.)

1  Ranch Defendants' Motion (ECF No. 6).[8] The Court defers ruling on other pending

2  motions.[9]

3  **II.    BACKGROUND**[10]

4        Plaintiff "Doe" is an anonymous individual residing in Nevada who alleges that she

5  experienced sex trafficking while working at four separate licensed Nevada brothels over

6  the course of six years. (ECF No. 1.) She now sues each of these establishments, their

7  respective counties, and Nevada's Governor and Attorney General. (*Id.*) Doe categorizes

8  Defendants as Brothel Defendants, County Defendants, and State Defendants, and the

9  Court will also do so here.

10       Doe specifically asserts that she "was sex trafficked due to th[e Nevada] system

11 of legalized prostitution, that is, she was induced to engage in commercial sex acts

12 through force, fraud, and coercion—including psychological manipulation, constraints on

13 her movement, and debt—in legal brothels operating in Nevada." (*Id.* at 2.) She alleges

14 that this trafficking occurred during intermittent periods between 2017 and 2023, when

15 she was a sex worker at Chicken Ranch (Nye County), Desert Rose Club (Elko County),

16 Bella's Hacienda Ranch (Elko County), and Mustang Ranch (Storey County). (*Id.*)

17 Notably, in addition to allegations about her personal experiences at each of these

18 ranches and clubs, Doe's Complaint includes extensive discussion of United States and

19 Nevada history, as well as various references to the experiences of other unnamed sex

20 workers.[11]

21 _____

22        [8]The Court also grants County and State Defendants' motions to supplement their
   dismissal motions (ECF Nos. 84, 86) as specified in this order.

23        [9]In light of the show-cause order issued herein and in the interest of efficiency, the
   Court defers ruling on Plaintiff's motion for a protective order (ECF No. 73) and the motion
24 to intervene (ECF No. 109). With regard to the former, the Court specifically notes that it
   defers ruling on the issue of whether Plaintiff may properly appear via a pseudonym.
25
26        [10]The following facts are adapted from the Complaint.

27        [11]For example, Doe alleges that on one occasion Mustang Ranch failed to assist
   an unnamed woman who was drugged and raped on an "out-date" with a customer (*id.*
28 at 40) and that Desert Rose Club's owner nearly shot one woman in the foot in 2022 (*id.*
   at 35-36).

With some exceptions, Doe alleges similar facts about the policies and practices of all four Brothel Defendants. Centrally, she contends that all Brothel Defendants charged excessive fees effectively amounting to debt bondage[12], limited her movements and ability to leave their properties (including by maintaining physical barriers around the properties)[13], conducted invasive searches of her personal property, forced her to undergo and pay for regular health and sexually-transmitted infection ("STI") screenings, and never permitted her to keep her own license card. (*Id.* at 31.) Doe further alleges illegal or abusive behavior on the part of brothel employees, managers, visitors, and clients. She contends, for example, that Brothel Defendants exercised favoritism in removing violent customers, failed to stop violence when customers paid well, discouraged contact with law enforcement, and threatened legal action against Doe for reporting complaints.[14] (*Id.* at 31, 37.) Doe also asserts that "[r]oughly half of the women at the brothels had external pimp/traffickers." (*Id.* at 31.)

As to Government Defendants, Plaintiff alleges in broad terms that state and local officials and agents have colluded with private businesses to advance the sex trade, failed to enforce state and federal laws, and created cover for a flourishing sex trade operating through slavery and involuntary servitude. (*Id.* at 2, 18-21.) While Doe aims many of these

---

[12]While alleged fee arrangements vary between ranches and clubs, Plaintiff asserts, *inter alia*, that Brothel Defendants generally took 50% of the money that Doe and other women received from customers, charged for room and board, docked Doe and other women's pay for rule infractions, fined them if they missed a required "lineup," and charged high fees for required STI tests. (*Id.* at 31-32, 35-38.) Plaintiff also alleges that some Brothel Defendants charged fees if women chose to leave before the end of their short-term contractual stays. (*Id.* at 33-34 (Chicken Ranch), 39 (Mustang Ranch).)

[13]Plaintiff alleges that Brothel Defendants controlled gates and imposed limitations on sex workers' comings and goings—for example, by limiting the days on which they could leave during a stay, implementing a buddy system, and requiring screenings and searches upon their return. (*Id.* at 33 (Chicken Ranch), 39 (Mustang Ranch).)

[14]Doe also alleges, *inter alia*, that Desert Rose Club sent Doe and others into local bars and town events to look for customers, "coaching them on how to avoid explicitly discussing prostitution" and that its owner was violent, sometimes brandishing his gun. (*Id.* at 35.) Meanwhile, she alleges that "Mustang Ranch pressured Doe and the other women to have sex with longtime sex buyers without condoms, in violation of state regulations" and held classes on breaking Nevada's prostitution advertising laws. (*Id.* at 39-40.)

4

allegations at both State and County Defendants, some additional allegations pertain to County Defendants in particular. Doe contends, for example, that officials in Nye, Elko and Storey counties did not appropriately "screen for sex trafficking" or revoke brothel licenses upon receiving information about improper conduct, and that local law enforcement did not adequately conduct brothel inspections—except to check that women had been tested for STIs and maintained license cards—or "talk to the women and assess whether they were being forced, coerced, or defrauded."[15] (*Id.* at 31, 35-36.) To support her assertion that Government Defendants and Brothel Defendants have colluded to mutually benefit from trafficking, Doe points specifically to Defendant Lance Gilman's dual role as owner of Mustang Ranch and Storey County Commissioner. (*Id.* at 26, 42-44.)

Based on these allegations, Plaintiff brings a Thirteenth Amendment constitutional claim against all Defendants (claim one) and statutory claims for perpetrating and benefiting from sex trafficking under 18 U.S.C. §§ 1591(A)(1) and 1595 against County and Brothel Defendants (claims two and three). (*Id.* at 42-44.) Doe asserts third-party standing on behalf of all people "currently being sex trafficked within legal brothels in Nevada jurisdictions which permit prostitution." (*Id.*) She seeks a declaratory judgment that numerous Nevada state and county statutes and licensing ordinances are unconstitutional, and an injunction preventing all Defendants from implementing or enforcing these statutes and ordinances or otherwise violating federal anti-trafficking laws.[16] (*Id.* at 45.) Doe also seeks nominal damages from State Defendants, and compensatory and other damages from County and Brothel Defendants. (*Id.* at 46.)

---

[15]Doe alleges that Elko County failed to suspend Desert Rose Club's license and that its owner "bragged about paying money under the table to Elko officials to protect his brothel." (*Id.* at 35-36.) Doe also asserts that "Mustang Ranch had an apparent agreement with the Storey County Sherriff" because for other brothels, law enforcement asked for women's identification directly, while allowing Mustang Ranch itself to provide that documentation. (*Id.* at 37.)

[16]Plaintiff seeks declaratory and injunctive relief as to the following provisions of the Nevada Revised Code and the Nevada Administrative Code: NRS § 244.345 (permitting prostitution in certain counties, as well as escorting and entertainment by

1    As additional broader context, the Court notes that Plaintiff's Complaint follows two

2 recent prior actions in this District bringing similar Thirteenth Amendment and statutory

3 challenges to Nevada's prostitution laws—both filed by the same attorneys representing

4 Doe in the instant litigation. *See Charleston v. Nevada*, 423 F. Supp. 3d 1020 (D. Nev.

5 2019), *aff'd*, 830 F. App'x 948 (9th Cir. 2020); *Williams v. Sisolak*, Case No. 2:21-cv-

6 01676-APG-VCF, 2022 WL 2819842 (D. Nev. July 18, 2022), *aff'd*, Case No. 22-16859,

7 2024 WL 194180 (9th Cir. Jan. 18, 2024), *cert. denied sub nom. Williams v. Lombardo*,

8 Case No. 23-1138, 2024 WL 3014535 (U.S. June 17, 2024). In both *Charleston* and

9 *Williams*, the Ninth Circuit ultimately affirmed dismissals of numerous claims for lack of

10 standing. *See id.* These cases involved different plaintiffs and do not directly impact the

11 procedural history of the instant action at its current stage. But this litigation history—and

12 the position of Doe's Complaint in a trilogy of sorts—is relevant background across the

13 numerous motions currently pending.

14    County Defendants have filed two separate motions to dismiss for lack of subject

15 matter jurisdiction under Rule 12(b)(1), the first for improper use of a pseudonym and the

16 second for lack of standing. (ECF Nos. 5, 43.) State Defendants also move to dismiss

17 under, *inter alia*, Rules 12(b)(1) and 12(b)(6). (ECF No. 24.) Separately, Defendants

18 Mustang Ranch and Lance Gilman move to dismiss for violation of Rule 8(a) or, in the

19 alternative, to strike the Complaint under Rule 12(f). (ECF No. 6.) Because the Court

20 dismisses the majority of Plaintiff's claims for lack of standing, it does not address

21 Defendants' other arguments for relief, except to the limited extent described below.[17]

22

23 referral services), NRS § 244.335(2) (also permitting prostitution in certain counties), and
24 NAC § 441A.777-815 (mandating STI testing of individuals offering legal sex-work
services). (ECF No. 1 at 45.) She also challenges the brothel licensing ordinances of Elko,
25 Lander, Lyon, Mineral, Nye, Storey, and White counties. (*Id.*)

26    [17]The Court does not reach Government Defendants' non-jurisdictional arguments
for dismissal under, *inter alia*, Rules 12(b)(6). (ECF No. 24.) Similarly, because the Court
27 dismisses the majority of Plaintiff's claims for lack of standing, the Court does not reach
any separate jurisdictional arguments under Rule 12(b)(1). (ECF Nos. 24, 43.) And the
28 Court again notes that it defers ruling on the separate threshold question of whether Doe
may properly appear as a plaintiff in this action via pseudonym. (ECF Nos. 5, 73.)

1    **III.    DISCUSSION**

2              The Court addresses its jurisdiction to hear Plaintiff's claims against State, County,

3    and Brothel Defendants. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal

4    courts must determine that they have jurisdiction before proceeding to the merits."). First,

5    the Court finds that Plaintiff lacks Article III standing to bring claims against State and

6    County Defendants and grants—on that basis alone—Government Defendants' motions

7    to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) (ECF Nos. 5, 24, 43).

8    Second, the Court dismisses Plaintiff's claims for declaratory and injunctive relief against

9    Brothel Defendants because Plaintiff lacks standing to seek prospective relief and cannot

10   assert third-party standing. Third, the Court directs Plaintiff to show cause as to her

11   standing to bring the remaining *damages* claims against Brothel Defendants. Finally, the

12   Court addresses Mustang Ranch Defendants' Motion (ECF No. 6).

13             **A.    Standing**

14             A federal court is presumed to lack jurisdiction in a particular case unless the

15   contrary affirmatively appears. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365,

16   374 (1978). Lack of Article III standing is a jurisdictional defect. *See* U.S. Const., Art. III,

17   § 2 (limiting a federal court's power to "cases and controversies"); *Braunstein v. Ariz.*

18   *Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (emphasizing that an action brought

19   without standing does not constitute a case or controversy). A court may dismiss an action

20   based on constitutional standing defects *sua sponte*. *See Arbaugh v. Y&H Corp.*, 546

21   U.S. 500, 506 (2006). A party may also seek dismissal of a claim or action for lack of

22   subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See also* Fed.

23   R. Civ. P. 12(h)(3) (providing that a jurisdictional defense of this type cannot be waived

24   and may be raised at any time).

25             As with other jurisdictional requirements, "[t]he party invoking federal jurisdiction,

26   [here Plaintiff], bears the burden of establishing [the constitutional minimum of standing]."

27   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Three elements must be met to

28   establish standing—the plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly

7

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016) (citing *Lujan*, 504 U.S. at 560-61). These elements are an indispensable part of a plaintiff's case and therefore "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. The Court evaluates whether Doe has met her burden as to her claims against each set of Defendants. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984-85 (9th Cir. 2008); *Arbaugh*, 546 U.S. at 506.

### 1.    State and County Defendants' motions to dismiss under Rule 12(b)(1) (ECF Nos. 5, 24, 43)

Government Defendants each move to dismiss the Complaint under Rule 12(b)(1), arguing in part that Plaintiff lacks standing to bring suit against them.[18] (ECF Nos. 5, 24, 43.) Because Doe encounters similar pitfalls in her claims against state and local actors, the Court evaluates these motions together, except where Plaintiff makes specific allegations pertaining only to her TVPRA claims against County Defendants. Although several Brothel Defendants joined County Defendants' Motions, the Court will address Brothel Defendants separately below because Plaintiff's claims against them involve separate issues.

Government Defendants bring a facial attack to the Complaint under Rule 12(b)(1).[19] *See DRAM Antitrust Litigation*, 546 F.3d at 984-85 ("Dismissal [under Rule 12(b)(1)] is appropriate if a complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction."). They point to the Ninth

---

[18]The Court grants County Defendants' First Motion (ECF No. 5) only as to the relevant relief requested, because the motion does not address standing.

[19]"In a facial attack, as opposed to a factual attack, the challenger attacks the sufficiency of the Complaint. *See Safe Air for Everyone v. Myer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Accordingly, the Court assumes the factual allegations of the Complaint are true and draws all reasonable inferences in favor of Plaintiff. *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

8

1    Circuit's decisions in *Williams*, 2024 WL 194180, and *Charleston*, 830 F. App'x, to argue

2    that Doe has not demonstrated traceability or redressability—the two standing

3    requirements at issue in those recent cases from this District filed by the same attorneys

4    appearing in this action. (ECF No. 24 at 5-6.) The Court agrees that Plaintiff has not met

5    her burden as to these elements. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957

6    (9th Cir. 2001) (noting that the party invoking a court's jurisdiction bears the burden of

7    proving that a case is properly in federal court).

8                                    **a.    Traceability**

9           The Court first finds that Plaintiff fails to establish causation between Government

10   Defendants' conduct and any alleged injuries. To survive a motion to dismiss with respect

11   to the causation element of standing, a plaintiff must allege facts to support that their

12   injuries are "fairly traceable" to a defendant's conduct and "not the result of the

13   independent action of some third party not before the court." *Namisnak v. Uber Techs.,*

14   *Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561). While a

15   showing of proximate cause is not required, a plaintiff must "establish a 'line of causation'

16   between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya*

17   *v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S.

18   737, 757 (1984)). "[I]n cases where a chain of causation 'involves numerous third parties'

19   whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries,

20   the Supreme Court and [the Ninth Circuit Court of Appeals] have found the causal chain

21   too weak to support standing at the pleading stage." *Maya*, 658 F.3d at 1070 (quoting

22   *Allen*, 468 U.S. at 759). *See also Williams*, 2024 WL 194180 at *1.

23          Where causation turns on a third party's reaction to government action or inaction,

24   "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."

25   *WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1216 (9th Cir. 2023)

26   (quoting *Allen*, 468 U.S. at 758) (finding an alleged injury too attenuated to establish

27   standing because it was two steps removed from the actions of a federal agency

28   defendant). A plaintiff may satisfy the standing requirement when they demonstrate "that

1    a defendant's action exerts a 'determinative or coercive effect' on the third-party conduct

2    that directly causes the injury." *WildEarth Guardians*, 70 F.4th at 1217 (quoting *Bennett*

3    *v. Spear*, 520 U.S. 154, 169 (1997)). *See also Turaani v. Wray*, 988 F.3d 313, 316 (6th

4    Cir. 2021) ("An indirect theory of traceability requires that the government cajole, coerce,

5    command.").

6         In *Williams*, a parallel challenge to Nevada's legal prostitution system failed on

7    traceability grounds. *See* 2024 WL 194180 (affirming the district court's findings on

8    traceability upon denial of rehearing). There, plaintiffs, alleged trafficking victims, brought

9    Thirteenth Amendment and statutory trafficking claims against numerous state and city

10   government official defendants, asserting that these defendants facilitated the trafficking

11   by providing the cover of Nevada's legal prostitution regime. *See id.*; *Williams*, 2022 WL

12   2819842 (district court decision). District Court Judge Andrew Gordon found that the

13   *Williams* plaintiffs lacked standing because "Nevada's legal system of prostitution is, at

14   best, an attenuated cause of the plaintiffs' alleged injuries." *Id.* at *4. In a memorandum

15   opinion, the Ninth Circuit affirmed Judge Gordon's ruling, finding that the government

16   defendants' regulatory roles did not confer standing when alleged injuries were inflicted

17   in large part by "the traffickers, escort agencies, strip clubs, and brothels who were also

18   named in the[] complaint." *See Williams*, 2024 WL 194180, at *2. The Supreme Court

19   subsequently denied the plaintiffs' petition for writ of certiorari. *See Williams v. Lombardo*,

20   2024 WL 3014535, at *1.[20] In *Charleston*—which was originally before this Court—the

21   Ninth Circuit ultimately affirmed the finding that plaintiffs lacked standing on redressability

22   grounds. *See* 830 F. App'x. But in that case, this Court also noted in its original decision—

23   and the Ninth Circuit did not address on appeal—that the illicit behavior of private bad

24

25

26         [20]The Court grants County Defendants' and State Defendants' motions (ECF Nos.
27   84, 86) to supplement their respective 12(b)(1) filings only to the extent they request that
     this Court note the Supreme Court's denial of certiorari in *Williams*. *See* 2024 WL
28   3014535. The Court finds that good cause exists to permit this limited supplementation.
     *See* LR 7-2(g) (prohibiting supplementation without good cause).

1   actors called into question the traceability of the alleged injuries. *See* 423 F.Supp.3d at

2   1027.

3       Here, Doe asserts that by prohibiting independent prostitution and regulating the

4   limited avenues for legal prostitution, Government Defendants effectively "force women

5   to be under control of a pimp," which in turn "permits them to be coerced via debt

6   bondage" and provides trafficking revenue to government actors. (ECF No. 63 at 5.) She

7   argues that unlike in *Williams* and *Charleston*, her claims do not rest on the independently

8   illegal conduct of third-party traffickers. (*Id.* at 10-12.) Instead, she insists, Government

9   Defendants in this case are *directly* responsible for the injuries alleged. (*Id.*) Government

10  Defendants' actions and inactions in this case, however, bear at best an attenuated

11  relationship to Doe's alleged injuries behind the cover of evocative references to slavery

12  and servitude. *See Maya*, 658 F.3d at 1070; *Williams*, 2024 WL 194180, at *2. For the

13  reasons explained below, nothing in the Complaint supports that Government Defendants

14  are responsible for directly perpetrating of trafficking, nor that they have indirectly exerted

15  "determinative or coercive" force on the injurious actions of brothels, their managers,

16  visitors, or clients—or on Plaintiff herself. *See WildEarth Guardians*, 70 F.4th at 1217;

17  *Turaani*, 988 F.3d at 316.

18      To start, it is true that unlike in *Williams*, Doe generally avoids directly listing or

19  naming third parties responsible for illegal or abusive conduct. But Plaintiff does not erase

20  third parties from the picture merely by attempting to redact references to them. Where

21  Plaintiff asserts that Government Defendants themselves "facilitated" and "enabled"

22  trafficking, her underlying factual allegations nevertheless rely on the existence of

23  independent decision-makers—including brothels, their owners, and clients. For

24  example, Doe alleges facts as to Brothel Defendants' individual fee and travel practices

25  (without connecting these policies to state or county requirements), non-defendant

26  owners' use of weapons and threats, and clients' violence (alluding, among other things,

27  to members of "organized crime"). (ECF No. 1 at 31-41.) Plaintiff also alleges that "half of

28  the women at the brothels had external pimp/traffickers." (*Id.* at 31.) *See Williams*, 2024

11

1   WL 194180, at *2 (emphasizing the attenuating impact of both brothels themselves and

2   external traffickers). Like in *Williams*, generic allegations against Government Defendants

3   which rest on their mere failure to intervene in otherwise illegal behavior are not, by

4   themselves, adequate to establish traceability. *See id.*; *WildEarth Guardians*, 70 F.4th at

5   1217 (explaining the heightened showing needed where government action or inaction

6   impacts third parties).

7           Doe further points to Government Defendants' affirmative laws and regulations to

8   argue that these Defendants qualify as direct traffickers. This argument is not persuasive

9   either. For example, Doe focuses on mandatory "one-sided" STI testing and insists that

10  such a measure amounts to an enforced condition of bondage attributable to Government

11  Defendants. (ECF No. 63 at 14.) She further argues that because male brothel clients are

12  not required to undergo STI testing, such measures are unrelated to public health. (*Id.*)

13  The Court finds this position contradictory to the extent that some of Plaintiff's injuries

14  ostensibly arise from lack of safety at brothels, but an appropriate remedy to any alleged

15  injury from health screenings would appear to be de-regulation, not de-*legalization*.

16  Setting aside that contradiction, it is also unclear how alleged injuries resulting from STI

17  testing implicate a causal relationship between Government Defendants and *trafficking*

18  *or sexual servitude*. Even if a regulation may impose some cognizable injury by limiting

19  the circumstances under which selling sexual services is legal, that alone does not

20  contribute to the traceability of the injuries alleged in *this* action. *See Maya*, 658 F.3d at

21  1070 (finding a causal inference chain too weak to support traceability).

22          While Plaintiff sometimes blurs the distinctions between state and local actors, she

23  argues with particular force that *County* Defendants have directly participated in trafficking

24  by colluding with and profiting from local brothels, as alleged in her TVPRA claims. (ECF

25  Nos. 1 at 42-44, 52 at 13.)[21] Doe specifically argues that in concert with Brothel

26  _____

27          [21]Doe brings her second and third claims under 18 U.S.C. §§ 1591(A)(1)-(2) and
    1595 against County Defendants but not against State Defendants, asserting that County
28  Defendants (1) "knowingly harbored and/or maintained Plaintiff, knowing or in reckless
    disregard of the fact that force, fraud, and/or coercion were being used to induce Plaintiff

Defendants, County Defendants have created a "regime of control . . . for their mutual benefit and ultimate exploitation of the women" (ECF No. 52 at 13.) For support, Plaintiff pieces together a hodge-podge of regulations and practices from different counties. She asserts, *inter alia*, that some or all Defendant Counties (1) require that individuals stay on brothel premises pending Board of Health contact; (2) "implicitly approve" of brothels' contract enforcement practices, which amount to "debt bondage," through the absence of criminal enforcement; (3) require perimeter fencing around brothels; (4) fail to implement regulations "concerned with the well-being of the prostituted person within the brothel"; (5) allow brothels themselves to provide documentation about the women obtaining licenses to work in their establishments; (6) implement stringent licensing requirements mandating that individuals maintain expensive licenses which limit their freedom; (7) alternatively, implement *lax* licensing requirements, and/or employ sheriffs who provide licenses to women under 21 or 18 years of age in violation of federal law. (ECF Nos. 1, 52 at 11-12.)

These allegations again fall short of establishing traceability. First, many of Plaintiff's cited County Defendant failures, including apparent deference to civil employment contracts and failure to implement measures "concerned with the well-being of the prostituted person," fall into the same category of government inaction the Court has already discussed above. Second, Plaintiff asks the Court to add together inconsistent supposed injuries to establish traceability, making it hard to ascertain a chain of causation regarding County Defendants' alleged culpability. For example, Doe protests *strict* licensing requirements, but also separately protests *lenient* enforcement of licensing requirements. (ECF No. 52 at 11-12.) Relatedly, and tied to the separate injury-in-fact requirement, it is not clear that Doe herself suffered cognizable injuries *as a result* of many of the cited regulations and practices. For example, Doe does not allege that she was injured by Storey County's general practice of allowing Mustang Ranch to itself

---

to engage in commercial sex acts," and (2) benefited from trafficking through local taxes, licensing fees, and general tourism revenue. (ECF No. 1 at 43-44.)

provide worker documentation to obtain licenses. Rather, she seems to allege mostly that one could imagine, in the abstract, this practice causing injury to others. *See Spokeo*, 578 U.S. at 330-31 (quoting *Lujan*, 504 U.S. at 560) (noting an injury is particularized where it "affect[s] the plaintiff in a personal and individual way").

Finally, Plaintiff makes much of Defendant Lance Gilman's status as both Mustang Ranch's owner and Storey County Commissioner, as well as member of the County Brothel Licensing Board, and asserts that Storey County "perpetrates" sex trafficking through this relationship. (ECF No. 52 at 12.) But simply alleging that Gilman's dual role creates a conflict of interest does nothing to bolster traceability with regard to Storey County, let alone other counties. *See, e.g.*, *Turaani*, 988 F.3d at 316 (noting that an indirect theory of traceability requires that "the government cajole, coerce, command."). And to the extent Plaintiff asserts that "Commissioner Gilman would require the women to break various prostitution laws," this again does not implicate the *county* in any causal chain. (ECF No. 52 at 12.)

The Court thus finds that Plaintiff has failed to allege facts to support that her injuries are fairly traceable to State and County Defendants' conduct. *See Namisnak*, 971 F.3d at 1094.

### b.    Redressability

The Court also finds that Plaintiff fails to establish redressability as to Government Defendants and lacks standing to seek prospective relief. Doe seeks to enjoin numerous Nevada statutes and county ordinances establishing legal pathways for prostitution and escort services. (ECF No. 1 at 44-46.) She does not primarily allege, however, that she herself is under threat of repeated injury—the Complaint only details past experiences between 2017 and 2023. (ECF Nos. 1, 63 at 8-9.) Instead, Doe insists that prospective relief is appropriate because she has properly asserted third-party standing on behalf of "people currently being sex trafficked within legal brothels in Nevada" and that this requested relief "would have [a] meaningful impact and provide an actual remedy to their

1   harm and her own." (ECF Nos. 1 at 43, 63 at 8-9.) Third-party standing does not save

2   Plaintiff from the jurisdictional defects here.

3          In general, "[p]ast wrongs are insufficient by themselves to [establish] standing" for

4   declaratory and injunctive relief claims. *See Wright v. SEIU Local 503*, 48 F.4th 1112,

5   1118 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023). *See also Summers v. Earth*

6   *Island Inst.*, 555 U.S. 488, 493 (2009) ("[T]o seek injunctive relief, a plaintiff must show

7   that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized; the

8   threat must be actual and imminent, not conjectural or hypothetical."); *City of Los Angeles*

9   *v. Lyons*, 461 U.S. 95, 96 (1983) (emphasizing that a plaintiff cannot seek injunctive relief

10  based on a "speculative" claim where there is "no showing of any real or immediate threat

11  that the plaintiff will be wronged again").

12         On rare occasions, a plaintiff may vicariously assert the rights of third parties when

13  the plaintiff (1) demonstrates that they have suffered an injury in fact giving them a

14  "sufficiently concrete interest" in the issue in dispute; (2) demonstrates "a close relation"

15  with the person who possesses the right; and (3) demonstrates a "hindrance to the Third

16  Party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411,

17  (1991). *See also Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004); *Fleck & Assocs., Inc.*

18  *v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006) (noting that "a litigant who has

19  *already* met the constitutional requirements" may also sometimes turn to third-party

20  standing to assert the rights of others, provided they meet both Article III and prudential

21  requirements). A relationship is "close," for purposes of third-party standing, where "the

22  [litigant] is fully, or very nearly, as effective a proponent of the right as the [third party]."

23  *Singleton v. Wulff*, 428 U.S. 106, 115 (1976). *See also Kowalski*, 543 U.S. at 129-30

24  (finding that a future attorney-client relationship is not sufficiently close to confer third-

25  party standing).

26         Doe's Complaint details only "past wrongs" as to her individual circumstances.

27  (ECF No. 63 at 8-9.) There is no indication she continues to work at the Brothel Defendant

28  establishments or to otherwise sell legal sexual services in Nevada, and any future

15

1    remedial impact of enjoining Defendant conduct for Plaintiff herself would be speculative.

2    *See City of Los Angeles*, 461 U.S. at 96 (finding that speculative risk of future harm does

3    not establish redressability); *Charleston*, 423 F. Supp. at 1028 ("[T]he facts Plaintiffs

4    allege do not demonstrate a likelihood that the primary relief Plaintiffs request—

5    declaratory relief and injunction concerning legal prostitution in Nevada—will redress their

6    alleged injuries as a result of being illegally forced into prostitution and being sex

7    trafficked.").

8         Doe also fails to meet the requirements to assert third-party standing. First, the

9    Court is not convinced that Doe demonstrates a sufficiently concrete individual interest to

10   permit her to vicariously advocate for the rights of others. *See Powers*, 499 U.S. at 411.

11   On the contrary, by referring throughout the Complaint to nebulous injuries that *other* sex

12   workers may have suffered because of various state and local regulations and practices,

13   Doe improperly turns to third parties to bootstrap her *own* claims. *See, e.g.*, *Kowalski*,

14   543 U.S. at 129-30 (requiring an individual and concrete interest in a dispute *before*

15   asserting third-party standing). Second, Plaintiff does not share a sufficiently close

16   relationship with the individuals whose rights she claims to vindicate to serve as fully or

17   near-fully as effective an advocate for those rights. *See Singleton*, 428 U.S. at 115.

18   Plaintiff's definition of third-party survivors of sex trafficking is expansive: it would seem

19   to include most or all individuals currently providing legal sex-work services in Nevada.

20   But the Court cannot reasonably treat the individuals in this category as similarly situated,

21   especially when Plaintiff purports to advocate for these individuals' rights by effectively

22   prohibiting a form of income in which she herself no longer has a personal stake. *See id.*

23   Third, the Court is unconvinced that the third parties for whom Doe purportedly advocates

24   are truly hindered in presenting their own claims "due to being under the control of

25   traffickers," simply because they may experience retaliation—a general risk of pursuing

26   legal action against employers. *See Powers*, 499 U.S. at 411 (noting the hindrance

27   requirement).

28   ///

1    Plaintiff also emphasizes the Ninth Circuit's cursory observation in *Charleston* that
2    "[t]hird-party standing may be the only practical way to assert the rights of enslaved
3    human beings." 830 F. Appx. at 949. In *Charleston*, plaintiffs failed to demonstrate
4    redressability, but did not attempt to assert third-party standing. *See id.* The Ninth Circuit
5    never went as far as to imply that plaintiffs would have necessarily succeeded in curing
6    their standing defects by doing so. Regardless, the Court also notes that any vicarious
7    third-party relationship invoked in *Charleston* would likely have been different from the
8    relationship invoked in this action. The *Charleston* plaintiffs alleged that they were illegally
9    trafficked into the state of Nevada. *See id.* at 948-49. By comparison, as discussed above,
10   Doe goes to great lengths to distinguish her claims on the basis that here, State and
11   County Defendants operate as direct traffickers. But again, this means that the third-party
12   "trafficking survivors" whose rights Doe claims to advance are a particularly diffuse and
13   heterogenous group. *See Powers*, 499 U.S. at 411.

14        Moreover, even if the Court were to find that Plaintiff could assert claims on behalf
15   of third parties, Plaintiff would still fall short of demonstrating "a substantial likelihood" that
16   the requested relief—enjoining the laws allowing for legal sex work and medical screening
17   requirements—will prevent future injuries associated with sex trafficking. *See Fleck &*
18   *Assocs., Inc.*, 471 F.3d at 1104. And finally, although the Court does not rely on the
19   separate but intertwined doctrine of prudential standing, it notes that courts have
20   historically "'refrained from adjudicating 'abstract questions of wide public significance'
21   which amount to 'generalized grievances,' pervasively shared and most appropriately
22   addressed in the representative branches." *Valley Forge Christian Coll. v. Americans*
23   *United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) (quoting *Warth*
24   *v. Seldin*, 422 U.S. 490, 499-500 (1975)). *See also Lexmark Int'l Inc. v. Static Control*
25   *Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (noting that the bar on generalized
26   grievances is partially grounded in constitutional, rather than simply prudential,

27

28

17

1    requirements). Plaintiff cannot use third-party standing to bring otherwise constitutionally

2    impermissible claims amounting to generalized grievances.

3        In sum, the Court finds that Plaintiff fails to demonstrate traceability as to her claims

4    against Government Defendants and redressability as to her claims for prospective relief.

5    The Court thus grants Government Defendants' motions to dismiss (ECF Nos. 5, 24, 43)

6    for lack of standing as to the claims against these Defendants. The Court dismisses the

7    claims with prejudice because the standing deficiency cannot be cured by amendment.

8    *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

9        ## 2.    Claims against Brothel Defendants & Order to Show Cause ("OSC")

10

11        The Court next turns to Plaintiff's standing to bring claims against Brothel

12    Defendants. In the current tangle of filings, neither Brothel Defendants nor other parties

13    have clearly distinguished this issue from broader jurisdictional concerns. Nevertheless,

14    the Court finds that Plaintiff lacks standing to bring claims for prospective relief against

15    Brothel Defendants and dismisses those claims with prejudice. *See Arbaugh*, 546 U.S. at

16    506. Because of the concerns detailed below, the Court further orders Plaintiff to show

17    cause as to her standing to bring the remaining *damages* claims against Brothel

18    Defendants and defers its evaluation of those claims pending her response.

19        The Court first dismisses Plaintiff's claims for prospective relief against Brothel

20    Defendants for the same reason it has already dismissed prospective relief claims against

21    Government Defendants. That is, because Plaintiff fails to demonstrate that her injuries

22    would be redressed by an injunction preventing Brothel Defendants from implementing

23    Nevada prostitution laws, and further fails to properly assert third-party standing on behalf

24    of similarly-situated individuals.[22]

25        This leaves only Plaintiff's damages claims against Brothel Defendants. Although

26    prospective relief is clearly Doe's primary focus, she also seeks compensatory,

27    _____

28        [22]Plaintiff does not seek to enjoin Brothel Defendants from any conduct or practice beyond the prospective relief she seeks from Government Defendants. In her prayer for

1  consequential, general, and punitive damages from Brothel Defendants. (ECF No. 1 at

2  46.) Because the Court plans to resolve the matter of standing before proceeding to other

3  issues, it will order Plaintiff to show cause as to her standing to bring these damages

4  claims. *See McCauley*, 264 F.3d at 957 (noting that the burden of demonstrating federal

5  jurisdiction falls on the party asserting jurisdiction).

6       The Court issues this OSC to give Doe an opportunity to affirmatively address her

7  standing as to outstanding damages claims in light of this order, given that those claims

8  have so far remained comparatively under-discussed—both in the Complaint itself and in

9  the parties' subsequent motions. Notably, even where Brothel Defendants join

10 Government Defendants' dismissal motions, many of the jurisdictional standing

11 arguments in those motions relate specifically to the attenuation of *regulators* and thus

12 do not apply to Brothel Defendants in the first place, let alone specifically to damages

13 claims against them. At the same time, Doe's factual allegations against the various

14 Brothel Defendants are dispersed throughout the Complaint and involve many of the flaws

15 already noted in this order. (ECF No. 1 at 10-42.) Some of these allegations pertain to

16 only a single establishment. Some—such as those about exploitative fee policies—apply

17 in different iterations to multiple or all Brothel Defendants.

18      With this context in mind, the Court is especially concerned as to whether and how

19 Plaintiff has established concrete injuries in fact with regard to each Brothel Defendant. It

20 notes that Doe may not rely on third parties' injuries, or on potentially injurious practices

21 that did not injure *Plaintiff specifically*, to bolster her own damages claims. *See Arizona*

22 *State Legislature v. Arizona Independent Redistricting Com'n*, 576 U.S. 787, 799-800

23

24 _____

25 relief, she simply lumps all Defendants together and asks the Court to prevent them from
implementing and enforcing various Nevada laws and from violating federal anti-

26 trafficking laws. (ECF No. 1 at 45-46.) The Court thus finds no reason to treat Plaintiff's
prospective relief claims against Brothel Defendants differently from other prospective

27 relief claims that fail for lack of redressability. While Doe makes various allegations about
specific establishments, she does not meet the additional burden for prospective relief

28 claims because she does not demonstrate her own actual and imminent injury or that
third-party standing is appropriate. *See Powers*, 499 U.S. at 411.

1   (2015) (injuries must constitute concrete "invasions of legally protected interests"). The

2   Court issues the OSC to better address these concerns.

3          The Court thus directs Plaintiff to show cause in writing as to why she has standing

4   to bring her damages claims against Brothel Defendants and defers its jurisdictional

5   analysis of those claims pending her compliance with the OSC.

6          **B.     Mustang Ranch Defendants' Motion to Dismiss and/or Strike the
             Complaint for Violations of Rules 8(a) and 12(f) (ECF No. 6)**
7

8          Because damages claims against Brothel Defendants remain, the Court also

9   addresses Mustang Ranch Defendants' motion to dismiss under Rule 8(a) or,

10  alternatively, to strike the Complaint under Rule 12(f) (ECF No. 6). *See* Fed. R. Civ. P.

11  8(a)(2) (providing that a pleading must contain "a short and plain statement of the claim

12  showing that the pleader is entitled to relief"); Fed. R. Civ. P. 12(f) (providing that a court

13  may, on its own or on motion by a party, strike a pleading for including "redundant,

14  immaterial, impertinent, or scandalous matter"). Considering the Court's preceding

15  findings on standing, which significantly narrow the contours of the claims at issue, the

16  Court will deny the motion (ECF No. 6).

17         Mustang Ranch Defendants' arguments under both Rule 8(a) and Rule 12(f) go to

18  the broad and admittedly meandering nature of the Complaint as originally filed. Mustang

19  Ranch Defendants argue that (1) the Complaint violates Rule 8(a) because it is "nearly

20  impossible . . . to determine the factual and legal bases for the stated causes of action

21  against them," and, alternatively, that (2) striking the Complaint is appropriate under Rule

22  12(f) because the pleading contains "immaterial, impertinent, and scandalous"

23  allegations, filed by attorneys with nefarious motives, which serve no purpose but to sully

24  Mustang Ranch's name. (*Id.* at 2-4.)

25         In this order, however, the Court has greatly narrowed the relevant scope of the

26  Complaint to damages claims against Brothel Defendants and factual allegations

27  supporting those claims. The Court has further directed Plaintiff to clarify her standing to

28  bring these claims. Given these parameters, it is hardly "impossible" for Defendants to

1    determine the boundaries of the claims brought against them. Moreover, dismissal under

2    Rule 8—particularly without leave to amend—is disfavored absent egregiously long or

3    confusing pleadings. *See, e.g.*, *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637

4    F.3d 1047, 1058-59 (9th Cir. 2011) (dismissing a pleading under Rule 8 given its

5    "extraordinary prolixity" but distinguishing it from pleadings which are merely verbose).

6         For similar reasons, the Court declines to strike the Complaint under Rule 12(f).

7    While the Court agrees with Mustang Ranch Defendants that some of the background

8    included in the Complaint may be distracting or of peripheral relevance, the Court does

9    not find that the factual allegations against Brothel Defendants—or specifically against

10   Defendant Gilman—are wholly illegitimate because they are somehow uniquely

11   "scandalous." It is clear that Defendants take fundamental issue with Plaintiff and her

12   attorneys' motivations for filing this lawsuit after a history of non-meritorious suits involving

13   similar claims. But summarily doing away with the Complaint for violations of Rules 8(a)

14   or 12(f) is not an avenue to address those broader concerns. If Mustang Ranch

15   Defendants wish to challenge the sufficiency of the allegations in the Complaint with

16   regard to the claims remaining, they may do so by filing a renewed jurisdictional motion

17   under Rule 12(b)(1) or otherwise moving for relief as permitted under Rule 12.

18         Accordingly, the Court denies Mustang Ranch Defendants' Motion (ECF No. 6). In

19   the interest of efficiency, the Court also defers ruling on the remaining motions pending

20   Plaintiff's compliance with the OSC. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (noting

21   district courts' inherent authority to manage their dockets with "a view toward the efficient

22   and expedient resolution of cases").

23   **IV.    CONCLUSION**

24         The Court notes that the parties made several arguments and cited to several

25   cases not discussed above. The Court has reviewed these arguments and cases and

26   determines that they do not warrant discussion as they do not affect the outcome of the

27   issues before the Court.

28   ///

1    It is therefore ordered that Government Defendants' motions to dismiss (ECF Nos.

2    5, 24, 43) are granted under Fed. R. Civ. P. 12(b)(1) as to all claims against Government

3    Defendants because Plaintiff fails to demonstrate standing. Dismissal is with prejudice

4    because amendment would be futile. The Court does not address any other grounds upon

5    which Government Defendants seek dismissal. To the extent Government Defendants

6    rely on those other grounds, the Court grants the motions only as to the relief requested

7    therein.

8    It is further ordered that County and State Defendants' motions to supplement their

9    dismissal motions (ECF Nos. 84, 86) are granted to the extent specified in this order.

10   It is further ordered that Plaintiff's claims for declaratory and injunctive relief against

11   Brothel Defendants are dismissed with prejudice because Plaintiff fails to demonstrate

12   standing establishing the Court's jurisdiction and amendment would be futile. Only

13   Plaintiff's damages claims against Brothel Defendants remain pending in this action.

14   It is further ordered that within 14 days from the date of entry of this order, Plaintiff

15   must show cause in writing as to why she has standing to bring her damages claims

16   against Brothel Defendants Mustang Ranch and Lance Gilman, Chicken Ranch, Bella's

17   Hacienda Ranch, and Desert Rose Club. The Court will defer its evaluation of Plaintiff's

18   standing as to these claims pending Plaintiff's compliance with the show-cause order.

19   It is further ordered that Brothel Defendants will have 14 days from the date of

20   Plaintiff's filing regarding standing to file a response. The Court will not permit a reply.

21   It is further ordered that discovery deadlines will remain stayed pending Plaintiff's

22   compliance with the Order to Show Cause.

23   ///

24   ///

25   ///

26   ///

27   ///

28

22

It is further ordered that Defendants Mustang Ranch and Lance Gilman's motion to dismiss for violation of Fed. R. Civ. P. 8(a) or, in the alternative, to strike the Complaint for violation of Fed. R. Civ. P. 12(f) (ECF No. 6) is denied in light of the Court's findings on standing.

DATED THIS 16th Day of August 2024.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE