Jason D. Guinasso (SBN# 8478)
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*guinassolaw@gmail.com*

Benjamin W. Bull*
Peter A. Gentala
Dani Bianculli Pinter*
Christen M. Price
Victoria Hirsch
NATIONAL CENTER ON SEXUAL EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Pro Hac Vice applications forthcoming*
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JANE DOE, | Case No.: 3:24-cv-00065-MMD-CSD |
| Plaintiff, | |
| vs. | |
| JOSEPH LOMBARDO, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; NYE COUNTY; ELKO COUNTY; STOREY COUNTY; WESTERN BEST, INC., D/B/A CHICKEN RANCH; WESTERN BEST, LLC; DESERT ROSE CLUB, LLC; HACIENDA ROOMING HOUSE, INC. D/B/A BELLA'S HACIENDA RANCH; MUSTANG RANCH PRODUCTIONS, LLC D/B/A MUSTANG RANCH LOUNGE, LLC; LEONARD 'LANCE' GILMAN, in his official capacity; and LEONARD 'LANCE' GILMAN, in his individual capacity, | **PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE [ECF NO. 112]** |
| Defendants. | |

1

Plaintiff Jane Doe, by and through her counsel of record, hereby files this Response to the Court's Order to Show Cause [ECF No. 112].

DATED this 30th day of August, 2024.

<u>/s/ Christen M. Price</u>
Christen M. Price
*(admitted Pro Hac Vice)*

Benjamin W. Bull*
Peter A. Gentala *(admitted pro hac vice)*
Dani Bianculli Pinter*
Victoria Hirsch *(admitted pro hac vice)*
NATIONAL CENTER ON SEXUAL EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

Jason D. Guinasso
SBN# 8478
GUINASSO LAW

*Attorneys for Plaintiffs*

# INTRODUCTION

Plaintiff Jane Doe is bringing Thirteenth Amendment claims for creating and maintaining a system of slavery against all the defendants in this case, and Trafficking Victims Protecting Act claims for perpetrating and benefiting from sex trafficking against only the County and Brothel Defendants. *See* ECF 1.

The Brothel Defendants include Western Best, Inc. d/b/a Chicken Ranch ("Chicken Ranch"); Desert Rose Club, LLC ("Desert Rose"); Hacienda Rooming House, Inc. d/b/a Bella's Hacienda Ranch ("Bella's"); Mustang Ranch Productions, LLC d/b/a Mustang Ranch Lounge, LLC and Storey Commissioner/Mustang Ranch owner Lance Gilman, in his individual capacity ("Mustang Ranch").[1]

Bella's has failed to respond to the complaint altogether, ECF 113-114, and Mustang Ranch only responded directly by saying the complaint should be dismissed or stricken for being scandalous, ECF 6. The Brothel Defendants have not contested standing nor otherwise moved to dismiss the Complaint as to the facts alleged against them, but have joined the State and County Defendants' motions to dismiss, *see, e.g.*, ECF 8,17, 29, 32, 33, 34, 35, 36, 41, 42, 69, 76, 78, 80, 93, even though those Defendants largely made arguments on their own behalf, specific to their status as government entities, *see* ECF 24, 43.

On August 16, 2024, this Court dismissed the State and County Defendants and issued a show-cause order directing Plaintiff to address her standing to sue the Brothel Defendants for damages,

---

[1] While Defendant Gilman appears to also remain in this case in his official capacity as a Storey County Commissioner, *see* 2024 WL 3886299, at *1 n.2, n.3, Plaintiff does not address standing as to him in this show-cause order response, as the Court's order only referred to the Brothel Defendants.

3

*Doe v. Lombardo*, No. 3:24-CV-00065-MMD-CSD, 2024 WL 3886299, at *1, 4, 10-12, (D. Nev. Aug. 16, 2024), whom she alleges sex trafficked her through a system of debt and other coercion.

In response to the Court's show-cause order, Plaintiff argues below that she has standing, as a sex trafficking victim, to sue the Brothel Defendants—the direct perpetrators of the crimes against her.

## STANDARD OF REVIEW

To establish constitutional standing, Plaintiff must show three elements: 1) an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; which is 2) "fairly traceable" to the defendant's "challenged action," and "not the result of the independent action of some third party not before the court"; and is 3) redressable "by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

"[A]t the motion to dismiss stage, general factual allegations of injury resulting from the defendant's conduct may suffice," as a court will "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 560–61.

Relatedly, at the motion to dismiss stage, a court "must accept as true all facts alleged in the complaint and draw all reasonable inferences" in the plaintiff's favor. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

## ARGUMENT

Plaintiff Jane Doe argues that for Article III standing, she has sufficiently alleged that I) the defendant brothels injured her by sex trafficking her; II) her injuries from being sex trafficked are fairly traceable to the defendant brothels who sex trafficked her; and III) her injuries from being sex trafficked by the defendant brothels are redressable through damages.

### I. Plaintiff Jane Doe has sufficiently alleged that the defendant brothels injured her by sex trafficking her.

For standing, "certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms," as well as "harms specified by the Constitution itself." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (cleaned up).

This Court noted that "injuries must constitute concrete invasions of legally protected interests[.]". *Doe v. Lombardo*, No. 3:24-CV-00065-MMD-CSD, 2024 WL 3886299, at *10-11 (D. Nev. Aug. 16, 2024) (cleaned up).  Plaintiff Jane Doe has alleged both physical harms, as well as an invasion of her constitutional and statutory rights.

Invading a statutorily protected human right is an injury in fact.  Alleging a "violation of [one's] personal legal rights" suffices for the "injury-in-fact requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 347 (2016) (internal citations omitted).  This is certainly true where, as in Plaintiff Jane Doe's case, a statute simply recognizes an inherent human right, as it is true even where statute creates the right: "The actual threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (cleaned up).

The right to be free from slavery is a fundamental legal right.  The Thirteenth Amendment categorically abolishes all forms of slavery, U.S. Const. amend. XIII, § 1, and under it, government entities cannot create conditions that enable slavery or involuntary servitude to flourish. *See Bailey v. Alabama*, 219 U.S. 219, 227–28 (1911) (ruling that the state indirectly enabling debt bondage through a fraud statute was unconstitutional).

Under the Trafficking Victims Protection Act (TVPRA), sex trafficking occurs if there is a commercial sex act involving a person under age 18 or a person induced by force, fraud, or coercion. 18 U.S.C. § 1591.

Anyone who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," 18 U.S.C. § 1591(a)(1), or "benefits, financially or by receiving anything of value" can be held liable. 18 U.S.C. § 1591(a)(2).

A commercial sex act is "any sex act, on account of which anything of value is given to or received by any person." § 1591(e)(3). Coercion is "the abuse or threatened abuse of law or the legal process," or threatening or otherwise causing someone to believe any person will face physical restraint or serious harm, which includes "psychological, financial, or reputational harm." § 1591(e)(3).

The TVPRA allows lawsuits against perpetrators or anyone who "knowingly benefits" from participating in what they knew or should have known was a sex trafficking venture. 18 U.S.C. § 1595(a).

As in the complaint, ECF 1 at ¶¶ 191-312, Plaintiffs will address each brothel's violations in turn. Jane Doe alleges that Chicken Ranch, Desert Rose, Bella's, and Mustang Ranch each used a combination of punishing financial schemes, physical constraints on her movement, and other coercive tactics to induce Jane Doe to engage in prostitution (that is, commercial sex acts), from which the Brothel Defendants profited.

### A. Plaintiff Jane Doe's allegations against Chicken Ranch

*Coercive fees and fines structure*

- Chicken Ranch took 50% of the fees Jane Doe received from sex buyers. ECF 1 at ¶ 202.

6

- Chicken Ranch charged Jane Doe $45 a day for room and board, or $1350 per month ECF 1 at ¶ 203.

- Chicken Ranch required Jane Doe to pay for food she could not eat. ECF 1 at ¶ 204-205.

- Chicken Ranch required Jane Doe to subsidize transportation for the men buying her. ECF 1 at ¶ 206.

- Chicken Ranch required Jane Doe to pay $50 whenever she used the brothel's transportation. ECF 1 at ¶ 207.

- Chicken Ranch required Jane Doe to pay $120 week (or nearly $500/month) for mandatory STI exams. ECF 1 at ¶ 208.

- Chicken Ranch forbade Jane Doe to have any cash with her or in her room at any time – if she violated this rule, Chicken Ranch could take all the money in her account. Chicken Ranch thus controlled Jane Doe's money. ECF 1 at ¶ 210.

- Chicken Ranch forced Jane Doe to appraise any jewelry or other gifts she received and give Chicken Ranch half the value or risk Chicken Ranch taking all of it. ECF 1 at ¶¶ 211-212.

- Chicken Ranch required Jane Doe to participate in a lineup – she had 3 minutes to respond when a sex buyer showed up at the brothel, and if she missed it, she faced a $500 fine. ECF 1 at ¶¶ 225-226.

- Jane Doe would have been forced to pay a $500 fine if she left before her two weeks were up. ECF 1 at ¶ 220. This threat contributed to the coercion inducing Jane Doe to engage in commercial sex acts, regardless of whether it was ultimately carried out.

*Constraints on movement*

- Chicken Ranch had a barbed wire fence.  ECF 1 at ¶ 213.
- Jane Doe was locked inside, and Chicken Ranch managers decided whether anyone could come in or out. ECF 1 at ¶¶ 214-218.
- Usually, Jane Doe was not allowed to leave at all on most days, except for about half a day on Tuesdays, and only to certain locations.  If she ran out of supplies before a Tuesday, she could not leave. ECF 1 at ¶ 215.
- Jane Doe had to get permission to even go outside to the backyard (within the locked gates). ECF 1 at ¶ 218.
- Jane Doe was forced to work 24-hour shifts. ECF 1 at ¶ 226.

*Control via other means*

- Chicken Ranch controlled Jane Doe's access to medication, sometimes denying it to her altogether. ECF 1 at ¶ 223.
- Access to documents: Jane Doe was not allowed to keep her own license (the brothel was thus controlling her proof that she was engaging in prostitution legally and not breaking the law); Chicken Ranch had it under lock and key.  ECF 1 at ¶ 228.
- Jane Doe was subjected to searches, including of her phone and email accounts.  ECF 1 at ¶¶ 221-222.
- Chicken Ranch discouraged Jane Doe from using a panic button and otherwise failed to intervene when she dealt with violent sex buyers.  ECF 1 at ¶ 230-231.

**B. Plaintiff Jane Doe's allegations against Desert Rose**

*Coercive fees and fines structure*

- Desert Rose took 50% of the fees Jane Doe received from sex buyers.  ECF 1 at ¶ 236.

- Desert Rose charged Jane Doe $50 week for cleaning, even though she and the other women themselves had to do it. ECF 1 at ¶ 237.
- Desert Rose required Jane Doe to pay $90 week and $110 for monthly STI exams (or nearly $500/month). ECF 1 at ¶ 242.
- Jane Doe went into debt due to Desert Rose's policies. ECF 1 at ¶ 250.

*Constraints on movement*

- Desert Rose required Jane Doe to work shifts that amounted to 72-hour work weeks. ECF 1 at ¶ 238.
- Barbed wire fence ECF 1 at ¶ 243.

*Control via other means*

- Abuse or threatened abuse of the legal process: Desert Rose forced Jane Doe to sign a nondisclosure agreement and threatened her when she wanted to go the police. ECF 1 at ¶ 249.
- Desert Rose employed threats of force and violence, and other intimidation. Desert Rose's owner was violent and would even shoot at people, he allowed organized crime members to access the brothel, and he bragged about bribing local officials, who visited Desert Rose each week. ECF 1 at ¶¶ 244-248. Jane Doe witnessed and thus experienced the coercive effects of abuses not committed not against her directly. Also, Desert Rose's owner's stated relationship with local law enforcement and other officials, together with their presence at (and non-intervention in the conditions of) the brothel implied that Jane Doe could expect no help from them.

**C. Plaintiff Jane Doe's allegations against Bella's**

*Coercive fees and fines structure*

9

- Bella's took 50% of the fees Jane Doe received from sex buyers. ECF 1 at ¶ 257.
- Jane Doe was required to pay $40-50/week for room and board. ECF 1 at ¶ 258.
- Bella's employed fines as well; once fining Jane Doe for opening a window. ECF 1 at ¶ 263.

*Constraints on movement*

- Bella's had a fence and gate, and did not allow Jane Doe to leave at will: her requests to leave where sometimes denied. ECF 1 at ¶¶ 260-261.
- Jane Doe was monitored while inside the brothel and was always required to let Bella's know where she was. ECF 1 at ¶ 262.

*Control via other means*

- Abuse/threatened abuse of the legal process: Bella's withheld Jane Doe's final $1000 check as punishment for leaving and threatened to report Jane Doe for prostitution without a license (even though Bella's had not required a license). ECF 1 at ¶¶ 256, 264, 266.

    **D. Plaintiff Jane Doe's allegations against Mustang Ranch**

*Coercive fees and fines structure*

- Mustang Ranch took 50% of the fees Jane Doe received from sex buyers. ECF 1 at ¶ 275.
- Mustang Ranch charged Jane Doe $40-50 a day for room and board, or about $1350 per month. ECF 1 at ¶ 276.
- Mustang Ranch required Jane Doe to subsidize transportation for the men buying her (pay 30% of the driver's flat rate). ECF 1 at ¶ 278.

- Mustang Ranch required Jane Doe to pay $150-200 per week (or nearly $600-$800/month) for mandatory STI exams ECF 1 at ¶ 292. If she left for even one day without the brothel's driver, she was subjected to new tests. ECF 1 at ¶ 292.
- Mustang Ranch forced Jane Doe to participate in a line up – she had 3 minutes to respond when a sex buyer showed up at the brothel, and if she missed it, it was a $1500 fine. ECF 1 at ¶ 279.

*Constraints on movement*

- Jane Doe was locked inside the brothel and had no ability to open the gates. ECF 1 at ¶ 284, 288. The brothel would even change the gate codes to make doubly sure that Jane Doe could not get out. ECF 1 at ¶ 288.
- Jane Doe was not allowed to leave by herself. ECF 1 at ¶ 286.
- Jane Doe had to get permission from Mustang Ranch to even go outside to the yard (within the locked gates). ECF 1 at ¶ 287.
- Mustang Ranch made Jane Doe get permission to take a nap or use the bathroom. ECF 1 at ¶ 282.
- Jane Doe's shifts at Mustang Ranch were 12 hours or even longer. ECF 1 at ¶ 281.
- Mustang Ranch kicked Jane Doe out in the snow because she was late due to a flight delay (because of the snow). ECF 1 at ¶¶ 305-306. Only after someone else intervened, Jane Doe was put in a brothel area that lacked heat, running water, and working lights. ECF 1 at ¶ 307.

*Control via other means*

- Mustang Ranch permitted Jane Doe no personal belongings in her room. ECF 1 at ¶ 273.

- Mustang Ranch forced Jane Doe to open medicine and mail in front of them. ECF 1 at ¶ 283.
- Mustang Ranch subjected Jane Doe to searches, including of her phone and email accounts – whenever the brothel wanted. ECF 1 at ¶ 289.
- Abuse or threatened abuse of the legal process: Mustang Ranch forced Jane Doe to sign a non-disclosure agreement and a legal agreement stating she wasn't being trafficked. ECF 1 at ¶ 269. The brothel also had a live-in attorney who threatened Jane Doe. ECF 1 at ¶ 302. These tactics were made more severe by the fact of Lance Gilman's status as a government official.
- Racial discrimination: Jane Doe was fined $2000 for an infraction; the other woman involved, who was white, was not punished. ECF 1 at ¶¶ 295-296.
- Lance Gilman, the brothel's owner and a Storey County commissioner, would brag about controlling Reno. ECF 1 at ¶ 270. He was on his brothel's regulatory board, ECF 1 at ¶¶ 146-148, and Jane Doe observed irregularities in her own licensing process that suggested special, favorable status for Mustang Ranch. ECF ¶¶ 271-272. Gilman also advised Jane Doe and other women on how to break prostitution advertising laws, and the brothel broke various other laws as well. ECF 1 at ¶¶ 299-301. This disregard for the rule of law and implied corruption suggested that Jane Doe could expect no help from the local government officials.
- Control/abuse of others: at Mustang Ranch, women got in trouble for using panic button, even though when they pushed it, the Storey County Sheriff never came. ECF 1 at ¶¶ 290-291. Mustang Ranch would kick women out in the snow and rain. ECF 1 at ¶¶ 303-

304. Jane Doe witnessed and thus experienced the coercive effects of abuses not committed not against her directly.

- Mustang Ranch forced Jane Doe was out in her pajamas after she tried to help another woman, and she used the last of her money to get an Uber to a hotel (which said they saw this all the time, and did not charge her that night). ECF 1 at ¶¶ 308-310.

- Mustang Ranch kept Jane Doe's final check and wouldn't allow her to retrieve any belongings – including clothes, documents, and her laptop. ECF 1 at ¶¶ 311-312.

The Brothel Defendants thus engaged in classic coercive tactics to exploit Jane Doe in prostitution. Under longstanding federal law, these are not "contract enforcement practices," *Doe v. Lombardo*, No. 3:24-CV-00065-MMD-CSD, 2024 WL 3886299, at *7 (D. Nev. Aug. 16, 2024), they are crimes.[2]

Notably, similar allegations were deemed sufficient to state a claim against Chicken Ranch brothel for perpetrating sex trafficking. *Williams v. Sisolak*, No. 2:21-CV-01676-APG-VCF, 2022 WL 2819842, at *7 (D. Nev. July 18, 2022) (Plaintiff stated claim against Chicken Ranch brothel for direct trafficking via a "coercive plan" involving debt and control over her ability to leave the brothel).

Importantly, Jane Doe was not trafficked by third parties in Nevada brothels; she was trafficked directly by the brothels themselves. Jane Doe did not allege third party traffickers,

---

[2] Not only does it violate the TVPRA, it also violates federal laws banning debt bondage. Congress passed the Peonage Act in 1867. *See* 42 U.S.C. § 1994 ("The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void).

because she was not under the control of third-party traffickers while in the brothels. *See* ECF 1.

These allegations, as to Defendants Chicken Ranch, Desert Rose, Bella's, and Mustang Ranch/Lance Gilman, demonstrate that these Brothel Defendants exploited Jane Doe in prostitution through force and coercion, which is sex trafficking under federal law. Therefore, by alleging that the Brothel Defendants sex trafficked her, Plaintiff Jane Doe has sufficiently alleged a concrete, particularized injury as to the brothels.

### II. Plaintiff Jane Doe has sufficiently alleged that her injuries from being sex trafficked are fairly traceable to the defendant brothels who sex trafficked her.

For traceability, Jane Doe must show that her injuries from being sex trafficked in brothel prostitution are traceable to the Brothel Defendants' conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). An injury can have multiple causes; a plaintiff "need not eliminate any other contributing causes to establish its standing." *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 901 (9th Cir. 2011) (cleaned up).

Plaintiffs need only allege "a line of causation between defendants' action and their alleged harm that is more than attenuated. A causation chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (cleaned up).

Jane Doe alleges that the Brothel Defendants, based on the allegations detailed above, all violated her Thirteenth Amendment rights and directly trafficked her in violation of the TVPRA. The Brothel Defendants are parties to the case, not "independent third parties," and are being sued for their own acts.

As Jane Doe is suing the Brothel Defendants for their own acts, which directly injured her, she has sufficiently alleged traceability.

### III. Jane Doe has sufficiently alleged that her injuries from being sex trafficked by the defendant brothels are redressable through damages.

Damages are sufficient for redressability: "When one private party is injured by another, the injury can be redressed in at least two ways: by awarding compensatory damages or by imposing a sanction on the wrongdoer that will minimize the risk that the harm-causing conduct will be repeated." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 127 (1998).

This is true even for nominal damages. *Skyline Wesleyan Church v. California Dept. of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020) ("Nominal damages would redress Skyline's injury, even if only to a minimal extent. Nothing more is needed to establish redressability for that form of relief."). Plaintiffs have alleged more than nominal damages.

Plaintiff seeks compensatory, consequential, general, and punitive damages against the Brothel Defendants, as well as restitution of any profit or unjust enrichment Brothel Defendants received from trafficking her. ECF 1 at 46.

Accordingly, given that Plaintiff Jane Doe is seeking damages against all the Brothel Defendants, her claims against them for sex trafficking are redressable.

Because Plaintiff Jane Doe has alleged that the Brothel Defendants sex trafficked her directly, and has requested damages, she has sufficiently demonstrated standing as to the Brothel Defendants.

## CONCLUSION

For the foregoing reasons, this Court should find that Plaintiff Jane Doe has sufficiently alleged standing as to the Brothel Defendants.

DATED this 30th day of August, 2024.

        */s/ Christen M. Price*
        Christen M. Price
        *(admitted Pro Hac Vice)*

        Benjamin W. Bull*
        Peter A. Gentala *(admitted pro hac vice)*
        Dani Bianculli Pinter*
        Victoria Hirsch *(admitted pro hac vice)*
        NATIONAL CENTER ON SEXUAL EXPLOITATION
        1201 F Street NW, Suite 200
        Washington, DC 20004
        202.393.7245
        *lawcenter@ncose.com*

        Jason D. Guinasso
        SBN# 8478
        GUINASSO LAW

        *Attorneys for Plaintiffs*

## ELECTRONIC CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that on this 30th day of August, 2024, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE [ECF NO. 112]** was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List.

        */s/ Jennifer Johnson*

16