1 | *
BRENT L. RYMAN, ESQ. (#008648)
2 | PAUL M. BERTONE, ESQ. (#004533)
ERICKSON, THORPE & SWAINSTON, LTD.
3 | 1885 South Arlington Ave., Suite 205
Reno, Nevada 89509
4 | Telephone: (775) 786-3930
*Attorneys for Defendants*
5 | *Nye, Elko and Storey Counties*

6

7

8

9

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE DISTRICT OF NEVADA

12

13

14 | JANE DOE;

Case No.: 3:24-cv-00065-MMD-CSD

15 |       Plaintiffs,

**MOTION FOR CERTIFICATION**
**AND ENTRY OF FINAL**
16 | vs. | **JUDGMENT PURSUANT**
**TO FRCP RULE 54(b)**

17 | JOSEPH LOMBARDO, Governor of Nevada,
in his official capacity; AARON FORD,
18 | Attorney General of Nevada, in his official
capacity; NYE COUNTY; ELKO COUNTY;
19 | STOREY COUNTY; WESTERN BEST, INC.
D/B/A/ CHICKEN RANCH; WESTERN
20 | BEST, LLC; DESERT ROSE CLUB, LLC;
HACIENDA ROOMING HOUSE, INC.
21 | D/B/A BELLA'S HACIENDA RANCH;
MUSTANG RANCH PRODUCTIONS, LLC
22 | d/b/a MUSTANG RANCH LOUNGE, LLC;
LEONARD "LANCE' GILMAN, in his
23 | official capacity; and LEONARD 'LANCE'
GILMAN, in his individual capacity,

24

      Defendants.
25 | _____/

26 |      COME NOW, Defendants, NYE COUNTY, ELKO COUNTY and

27 | STOREY COUNTY, (hereinafter, "the County Defendants," which includes the official

28 | capacity suit against Defendant Gilman), by and through their Attorneys of Record,

ERICKSON, THORPE &
SWAINSTON, LTD.

1

1    ERICKSON, THORPE & SWAINSTON, LTD., BRENT L. RYMAN, ESQ., and PAUL M.

2    BERTONE, ESQ., and hereby file this Motion for Certification and Entry of Final Judgment

3    Pursuant to FRCP Rule 54(b).[1]

4         The County Defendants' instant Motion is made and based upon all of the pleadings

5    and papers on file herein, as well as the following Memorandum of Points & Authorities, and

6    the arguments of counsel to be offered at the hearing of this matter, if any.

7                    **MEMORANDUM OF POINTS & AUTHORITIES**

8    **I.    BRIEF SUMMARY OF ACTION AND INSTANT MOTION**

9         This is a case in which Plaintiff, a former prostitute, sought to challenge Nevada's

10    system of legalized prostitution through claims against Nevada State and County Defendants,

11    and also pursue claims for damages against the legal brothels where Plaintiff plied her chosen

12    trade.  Following full briefing upon a series of motions to dismiss, the District Court issued

13    an Order (ECF No. 112) dismissing the entirety of Plaintiff's claims against the public entity

14    Defendants.  Because Plaintiff's claims against the Brothel Defendants remain unresolved,

15    the County Defendants now seek FRCP Rule 54(b) certification of final judgment so

16    they and the State Defendants may be extricated from the remainder of this litigation.

17         By way of this Motion, the County Defendants will illustrate that Rule 54(b)

18    certification is appropriate because the District Court's Order (ECF No. 112) constitutes a

19    "final judgment" as to all governmental defendants, and there is no just reason to delay the

20    entry of said judgment despite the fact that multiple other parties and claims remain.  The

21    County Defendants wish to obtain that final judgment so that this matter can move on to the

22    post-judgment phase of proceedings for the governmental defendants, whether it be appeal

23    or determinations of costs and/or fees or any other post-judgment matters or issues.  This

24    severance from the remaining claims will spare the governmental Defendants from having

25    to monitor this action for years to come.

26

27         [1]. Additionally, as outlined below, Defendants wish to take this opportunity to highlight
and clarify the fact that Plaintiff's official-capacity claims against Defendant Gilman have been
28    dismissed in light of an incorrect statement to the contrary in Plaintiff's recent show-cause
briefing.

ERICKSON, THORPE &
SWAINSTON, LTD.

1    **II.    STATEMENT OF FACTUAL AND PROCEDURAL HISTORY**

2        This suit represents the third in a series of related actions challenging Nevada's system

3    of legalized prostitution.  All three suits sought to undermine and destroy that system of

4    legalized prostitution, despite the fact that Nevada's voters have repeatedly rejected attempts

5    to end Nevada's half-century long experiment in controlling this vice through licensing and

6    regulation.  In the latest incarnation of this unfolding effort, Plaintiff Jane Doe, a former

7    prostitute, alleged violations of the Thirteenth Amendment and the Trafficking Victims

8    Protection Reauthorization Act ("TVPRA"), with all claims generally related to and deriving

9    from her employment at several brothels where, pursuant to license, she legally provided

10   sexual services to paying customers.  (*See*, Pl's Compl. (ECF No. 1)).  Plaintiff brought her

11   claims against three readily-divisible sets of defendants, which included (1) Nevada state

12   government officials ("State Defendants"); (2) several Nevada counties with licensed,

13   operating brothels ("County Defendants"); and (3) the legal brothels (or related businesses)

14   at which Plaintiff worked between 2017 and 2023 ("Brothel Defendants").  Doe also asserted

15   third-party standing on behalf of all individuals "currently being sex trafficked within legal

16   brothels in Nevada," and as such sought declaratory and injunctive relief preventing all

17   Defendants from implementing and enforcing numerous prostitution-related Nevada state and

18   local laws, as well as damages.  (Pl's Compl. (ECF No. 1), pp. 45-46).

19       Pursuant to an Order (ECF No. 112) issued August 16, 2024, the District Court

20   granted both the Nevada State and County Defendants' (collectively the "Government

21   Defendants") Motions to Dismiss, each of which claimed a lack of subject matter jurisdiction

22   over those respective governmental entities.  *See, Doe v. Lombardo*, 2024 WL 3886299 (D.

23   Nev., Aug. 16, 2024).  As such, all claims against the Government Defendants were

24   dismissed pursuant to Rule 12(b)(1), and with prejudice due to futility of amendment.  *Id.*,

25   at 12.  Specifically, the decision to end this matter was based on the Complaint's twin

26   failures to allege facts supporting claims that Doe's injuries were "fairly traceable" to the

27   Government Defendants' conduct, and to establish redressability as to the claims for

28   prospective relief as against those same Government Defendants.  *Id.*, at 8-10.  As a result

ERICKSON, THORPE &
SWAINSTON, LTD.

1   of said Order, Government Defendants (both State and County) have now been dismissed

2   from this suit with prejudice, with no surviving claims remaining against either.

3          Nonetheless, while all County and State Defendants have been dismissed, the action

4   continues against the so-called "Brothel Defendants."   The District Court's Order

5   (ECF No. 112) found that Plaintiff lacked standing to bring claims for prospective relief

6   against Brothel Defendants, and so dismissed those claims with prejudice.  *Id.*, 2024 WL

7   3886299, at *10.  However, the Order (ECF No. 112) also left Plaintiff's damages claims

8   against the remaining Brothel Defendants unresolved.  While some Brothel Defendants

9   joined the Government Defendants' Motions to Dismiss, the District Court lamented that

10  scant argument had been offered regarding Plaintiff's standing to seek damages against those

11  Brothel Defendants.  *Id.*  To fill this perceived vacuum in the record, the District Court

12  ordered Plaintiff the opportunity to show cause as to her standing to bring damages claims

13  as against the Brothel Defendants.  *Id*.  The District Court further directed that within this

14  context, it was "especially concerned as to whether and how Plaintiff has established

15  concrete injuries in fact with regard to each Brothel Defendant." *Id*., at 11.  It further warned

16  not to "rely on third parties' injuries, or on potentially injurious practices that did not injure

17  Plaintiff specifically, to bolster her own damages claims." *Id*.  Pending that briefing, this

18  Court deferred its jurisdictional analysis as to the remaining Brothel Defendants.  *Id*.

19         Plaintiff has now lodged her Response (ECF No. 115).  Therein, Doe offered a

20  bullet-point presentation of the alleged acts of malfeasance of each brothel, drawn from the

21  averments reflected in the Complaint.  (*See*, Pl's Resp. Brief (ECF No. 115), pp. 6-13,

22  ll. 24-8).  She also attempted to distinguish the Brothel Defendants from the dismissed

23  Government Defendants by claiming the former directly trafficked her and therefore directly

24  injured her. Moreover, Plaintiff maintained the Brothel Defendants were being sued for their

25  own actions.  Therefore, as per this line of reasoning, Plaintiff asserts that she has established

26  "fairly traceable" injuries to those Brothel Defendants. (*See*, Pl's Resp. Brief (ECF No. 115),

27  p. 14, ll. 9-28).  Plaintiff also rendered arguments as to how those trafficking actions

28  damaged her, thus arguably rendering her claims redressable through damages against the

ERICKSON, THORPE &
SWAINSTON, LTD.

1    Brothel Defendants.  (*See*, Pl's Resp. Brief (ECF No. 115), p. 15, ll. 1-21).

2        In the event Plaintiff is able to establish preliminary standing to proceed against the

3    Brothel Defendants, this action against those parties will likely continue for the foreseeable

4    future. These County Defendants seek Rule 54(b) certification because they would like

5    proceed in the appellate or post-judgment phase of this litigation sooner rather than later, and

6    do not wish to wait for months or years for the remaining claims against the Brothel

7    Defendants, if any, to resolve themselves.

8        But even if the Court opts to dismiss the remaining claims for lack of standing as

9    against the Brothel Defendants, the instant Motion will remain relevant.  Other matters will

10   remain pending in the District Court.  For example, a default (ECF No. 113) has been sought

11   by Plaintiff against Defendant Hacienda Rooming House, Inc., d.b.a. Bella's Hacienda

12   Ranch, which seems not to have appeared.  Moreover, a Motion to Intervene (ECF No. 109),

13   wherein a Mr. Greer seeks to join the suit as a Defendant, remains pending.  *See, Doe v.*

14   *Lombardo*, 2024 WL 3886299, at *1 n.9 (deferring ruling on the Greer motion to intervene).

15   Further, ruling upon Plaintiff's Motion for a Protective Order, wherein the crucial issue of

16   her ability to proceed under a pseudonym remains at stake, has also been deferred.  *Id.,* at *1

17   n.9.[2]  Thus even if the Brothel Defendants are dismissed shortly for lack of subject matter

18   jurisdiction as well, other issues and claims may remain pending in the District Court.  And

19   these other issues and claims will keep this request for Rule 54(b) certification relevant, and

20   a determination of the same needed.  The governmental Defendants wish to be let off

21   this ride before it goes any further.

22   ///

23   ///

24

25        [2].  Since none of the Defendants wish to continue being repeatedly sued by a series of

26   "Jane Doe" phantoms in perpetuity, that issue remains of critical importance.  That is why the
ability to proceed under a pseudonym is being hotly contested in the immediately proceeding

27   generation of these highly similar suits, to this very day.  *See, e.g.,Williams v Sisolak*, No. 2:21-
cv-01676 (ECF No. 221) (filed August 23, 2024) ("Plaintiffs' Reply to  Defendants Shac, LLC

28   d/b/a Sapphire Gentleman's Club and Shac Mt, Llc's Opposition [ECF No. 219] and Western
Best, Inc. d/b/a Chicken Ranch's Joinder [220] to Plaintiffs' Motion for a Protective Order and
Leave to Proceed Pseudonymously [ECF No. 215]").

ERICKSON, THORPE &
SWAINSTON, LTD.

1    **III.    LEGAL ARGUMENT**

2        **A.    Standards for Rule 54(b) final judgment certification.**

3        "Federal Rule of Civil Procedure 54(b) controls the analysis of finality of judgments

4    for purposes of appeal in federal civil actions." *McCarty v. Roos,* 2014 WL 4206698, at *1

5    (D. Nev., Aug. 25, 2014), aff'd, 689 F.App'x 576 (9th Cir. 2017). "A judgment in a

6    consolidated action that does not resolve all claims against all parties is not appealable as a

7    final judgment without a Rule 54(b) certification." *Id.* In pertinent part, FRCP Rule 54(b)

8    reads as follows:

9        **(b)    Judgment on Multiple Claims or Involving Multiple
        Parties.** When an action presents more than one claim for
10        relief – whether as a claim, counterclaim, crossclaim, or
        third-party claim – or when multiple parties are involved,
11        the court may direct entry of a final judgment as to one or
        more, but fewer than all, claims or parties only if the court
12        expressly determines that there is no just reason for delay.
        Otherwise, any order or other decision, however
13        designated, that adjudicates fewer than all the claims or
        the rights and liabilities o fewer than all the parties does
14        not end the action as to any of the claims or parties and
        may be revised at any time before the entry of a judgment
15        adjudicating all the claims and all the parties' rights and
        liabilities.

16

17    FRCP Rule 54(b) (2023).

18        Applying Rule 54(b) requires a two-step analysis. "First, a district court must

19    determine that it has rendered a final judgment – a judgment that is 'an ultimate disposition

20    of an individual claim entered in the course of a multiple claims action.'" *Windeler v.*

21    *Cambria Cmty. Water Dist.*, 2018 WL 7507427, at *1 (C.D. Cal., May 15, 2018). "Then it

22    must determine whether there is any just reason for delay, keeping in mind the 'historic

23    federal policy against piecemeal appeals.'" *Id.* "It is left to the sound judicial discretion of

24    the district court to determine the 'appropriate time' when each final decision in a multiple

25    claims action is ready for appeal." *Bumatay v. Fin. Factors, Ltd.*, 2010 WL 4386732, at *1

26    (D. Haw., Oct. 26, 2010).

27    ///

28    ///

ERICKSON, THORPE &
SWAINSTON, LTD.

1    The Ninth Circuit has framed several other factors for determining whether to enter

2  final judgment under Rule 54(b), and whether there is no just reason for delay:

> [W]hether certification would result in unnecessary appellate
> review; whether the claims finally adjudicated were separate,
> distinct, and independent of any other claims; whether review of
> the adjudicated claims would be mooted by any future
> developments in the case; whether an appellate court would
> have to decide the same issues more than once even if there
> were subsequent appeals; and whether delay in payment of the
> judgment . . . would inflict severe financial harm.

8  *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 n.2 (9th Cir. 2005).

9    "[T]he Rule was designed to eliminate potential injustices that resulted from the

10  increasingly complex cases that new federal joinder rules had created." *Scanlon v. Life Ins.

11  Co. of N. Am.*, 2009 WL 10676074, at *1 (W.D. Wash., Dec. 18, 2009).  "Courts have

12  generally only certified matter for appeal under Rule 54(b) in such complex cases, and have

13  eschewed using it in more traditional, two-party litigation." *Id.*

14    "[O]nce such juridical concerns have been met, the discretionary judgment of the

15  district court should be given substantial deference, for that court is the one most likely to

16  be familiar with the case and with any justifiable reasons for delay." *Stanley v. Cullen*, 633

17  F.3d 852, 865 (9th Cir. 2011).  Once armed with the district court's proper Rule 54(b)

18  certification, the appellate court is thereafter empowered with jurisdiction under 28 U.S.C.

19  § 1291 to proceed with disposition of any appeal. *California v. Trump*, 963 F.3d 926, 935

20  (9th Cir. 2020).

21    **B.    The District Court's Order as to the County and State Defendants is a
22          final judgment, and certification of final judgment will appropriately
            ripen the time for appeal and post-judgment motions.**

23    All claims against all the governmental defendants have been completely resolved due

24  to a lack of subject matter jurisdiction over these Defendants.  This satisfies the "final

25  judgment" criteria of an ultimate disposition of those individual claims entered in the course

26  of a multiple claims action. *Windeler*, 2018 WL 7507427, at *1.

27  ///

28  ///

ERICKSON, THORPE &
SWAINSTON, LTD.

7

1    The nature of the claims levied against these Government Defendants is also

2    inherently separate, distinct and independent.  The Government Defendants' alleged

3    culpability seems to stem from enacting and maintaining a system of laws and regulations

4    in place which provide a framework for the business of prostitution to proceed, pursuant to

5    license and as a legal enterprise.  This represents a system designed, at the legislative level,

6    to protect both the public health and municipal sanitation, as well as the safety of the

7    prostitutes themselves.  And as intended, by operating under the aegis of law, it further

8    represents a system where employment, contract and other legitimate disputes between

9    varying interests are necessarily resolved in courts of law,  and not through violence and

10   intimidation.  As so aptly characterized by the District Court, Plaintiff lacked standing over

11   the Government Defendants because they maintained the "attenuation of *regulators.*" *Doe v.*

12   *Lombardo*, 2024 WL 3886299, at \*10 (emphasis in original).

13       In comparison, the claims levied against the Brothel Defendants stem more from an

14   interactive, hands-on type role in the day-to-day acts of purported dereliction and

15   malfeasance which Plaintiff alleges were the sources of her injuries.  As per Plaintiff's own

16   attempted distinguishment, the Brothel Defendants allegedly had more of a direct

17   involvement in her trafficking, and therefore more of a direct role in her injury.  (*See*, Pl's

18   Resp. Brief (ECF No. 115),  p. 14, ll. 9-28).  As such, a stark contrast develops between the

19   nature of the dismissed claims, and the legal and factual basis of Plaintiff's remaining claims.

20   There is certainly sufficient distinction in the basic character of claims levied against the

21   governmental versus the business interests, which have been categorized so as to present a

22   clear line of demarcation, an aiming point for the falling axe seeking to split these claims

23   cleanly, and thereafter allow those severed claims already resolved to proceed into the

24   post-judgment phase.

25   ///

26   ///

27   ///

28   ///


ERICKSON, THORPE &
SWAINSTON, LTD.

1       It is particularly noteworthy that in the immediately prior action, after being dismissed

2   for lack of subject matter jurisdiction, the Government Defendants were granted the same

3   Rule 54(b) certification being sought here.    *See*, *Williams v Sisolak*, No. 2:21-cv-01676

4   (ECF No. 191) ("Order (1) Directing Entry of Final Judgment Against Government

5   Defendants and (2) Staying Case Pending Appeal"); *Williams v. Sisolak*, 2022 WL 2819842

6   (D. Nev., July 18, 2022) (court taking the identical tack of dismissing claims since causal

7   chain was too weak to support standing against the City and State Defendants).[3]    That

8   separated matter then proceeded through the entire appellate process, with dismissal being

9   affirmed at the Ninth Circuit and rehearing denied, and with *certiorari* eventually being

10  denied by the United States Supreme Court, before the final victory of those Government

11  Defendants was beyond cavil. *Williams v. Sisolak*, 2023 WL 8469159 (9th Cir. Dec. 7,

12  2023), amended on denial of reh'g, 2024 WL 194180 (9th Cir. Jan. 18, 2024), cert. denied

13  sub nom., *Williams v. Lombardo*, 144 S. Ct. 2659 (2024).

14      But while the appellate process in the *Williams* matter has completely run its course

15  for the victorious Government Defendants, the underlying litigation is only now chugging

16  along in the District Court as to the remaining claims against those business defendants, with

17  no end in sight, and with no notable effect on those remaining proceedings from either the

18  earlier dismissal or the subsequent appellate rulings.  The fact that the *Williams* appeal was

19  completed with no effect on the remaining proceedings or the remaining defendants in that

20  District Court is a strong indication that review of the adjudicated claims here would <u>not</u> be

21  mooted by any future developments in the lower court, and that an appellate court would <u>not</u>

22  have to decide the same issues more than once, even if there were subsequent appeals later

23  in this action.  Both those considerations indicate Rule 54(b) certification of a final judgment

24  would be appropriate here because there is no just reason for delay. *Wood v. GCC Bend,*

25  *LLC*, 422 F.3d at 878, n.2.

26  ///

27

28
_____

[3]. A true, accurate and correct copy of the referenced Order (ECF No. 191) from the *Williams* litigation is attached hereto as "Exhibit 1."

ERICKSON, THORPE &
SWAINSTON, LTD.

1       The fact that Rule 54 certification was previously granted to the Government

2   Defendants in the *Williams* action is strong persuasive authority that it should be granted

3   here.  This is due to the recognized identity (not to mention audacious pleading similarity)

4   between all three of these suits.  *See, e.g., Doe v. Lombardo*, 2024 WL 3886299, at *3

5   (D. Nev., Aug. 16, 2024) ("In both *Charleston* and *Williams*, the Ninth Circuit ultimately

6   affirmed dismissals of numerous claims for lack of standing.").

7       Based on the National Center on Sexual Exploitation's track record, it is highly likely

8   that this most recent Jane Doe will seek to appeal the dismissal of these governmental

9   defendants to the Ninth Circuit, despite the decision's obvious merit.  Appeal means press

10  and that means publicity, which is a proven component of what is driving these

11  politically-motivated suits.  Yet these Nevada Counties would welcome an immediate appeal,

12  as this case presents the paradigmatic example of where a separate, distinct and crucial

13  decision in a multi-claim action should be sent upstairs without delay.  The political

14  implications of Jane Doe's attack on a uniquely Nevada system of laws involving lofty

15  economic, as well as moral considerations, cannot be denied.  Should eventual appeal be

16  inevitable, then the citizens of this State deserve to understand, sooner rather than later, that

17  their enacted system of legalized prostitution is both safe and sanitary, and just as critically

18  that it passes constitutional muster.  *See, In re: Fifth Third Early Access Cash Advance Litig.*,

19  925 F.3d 265, 275 (6th Cir. 2019) (determination of whether there is any just reason for delay

20  requires a weighing of both the equities in the case and judicial administrative interests).

21      Moreover, forcing multiple County and State Defendants to monitor ongoing

22  proceedings in the District Court, likely for years to come, and with the possibility of

23  differing results for differing Brothel Defendants, has negative implications on these

24  Governmental Defendants, which again favors Rule 54(b) certification.  *Wood v. GCC Bend,*

25  *LLC*, 422 F.3d at 878, n.2.  Forcing the Government Defendants to wait in the wings as

26  Plaintiff prosecutes her various claims, each unique to the individual Brothel Defendant

27  being charged, without providing a final judgment and concomitant reasonable deadline

28  would be manifestly unjust.

ERICKSON, THORPE &
SWAINSTON, LTD.

1    All these factors point to the same unerring end result.  There being no just reason for

2  delay, the District Court should grant 54(b) certification, declaring the Order (ECF No. 112)

3  to be a final judgment as to the County and State Defendants.[4]  *See, e.g., Van Horn v.*

4  *Hornbeak*, 2009 WL 1146407, at *1 (E.D. Cal., Apr. 28, 2009) (order dismissing defendants

5  for court's lack of subject matter jurisdiction over them afforded Rule 54(b) certification as

6  a final judgment).

7    **C.    The certification must include the official-capacity claims against
          Defendant Gilman, which were dismissed along with the other claims
8         against the County Defendants.**

9    As a final note, the County Defendants wish to address Plaintiff's recent contention

10  that Storey County Commissioner Lance Gilman remains an active participant and hence a

11  viable defendant in this suit in his "official capacity," which appears as a very small footnote

12  in the recent show-cause briefing.  (*See*, Pl's Resp. Brief (ECF No. 115), p. 3, ll. 27-28, n.1)

13  (maintaining that Commissioner Gilman remains a defendant in his "official capacity")).

14  Plaintiff's contention is utterly unsupportable, even if the Order (ECF No. 112) in issue did

15  not specifically address his dismissal in that "official capacity."

16    To that end, the District Court's dismissal of Storey County necessarily included

17  dismissal of Plaintiff's claims against Storey County Commissioner Gilman in his "official

18  capacity."  This is well-established, immutable law. "In an official-capacity suit, 'the real

19  party in interest . . . is the governmental entity and not the named official.'"  *Wright v.*

20  *Penzone*, 2022 WL 819802, at *1 (9th Cir., Mar. 17, 2022).  "It is a matter of black-letter law

21  that a federal § 1983 claim brought against individuals in their official capacity is treated the

22  same as a § 1983 claim against the government entity employing that individual."  *Cox v.*

23  *Lewis*, 2023 WL 3816873, at *14 (D. Nev., June 5, 2023), appeal dismissed, 2023 WL

24  9067589 (9th Cir. July 17, 2023).  "'A suit against a governmental officer in his official

25  capacity is equivalent to a suit against the governmental entity itself.' . . .  Therefore, any

26

27    [4]. Without styling this as a joint motion, the County Defendants anticipate the State
28  Defendants will likely join; however, even absent formal joinder in these arguments, the
    respective categorization of Plaintiff's claim against the Governmental Defendants, as opposed to
    the private Brothel Defendants, is manifest.

ERICKSON, THORPE &
SWAINSTON, LTD.

1   official capacity claims should be analyzed together with claims against the entity."

2   *Crema v. Las Vegas Metro. Police Dep't*, 2023 WL 6262556, at \*14 (D. Nev., Sept. 25,

3   2023).  "[B]ecause official capacity suits are considered another way of suing the local

4   government entity, official capacity suits necessarily fail, by implication, when a suit against

5   the local government entity has been foreclosed upon."  *Bogus v. City of Birmingham,*

6   *Alabama*, 2018 WL 1746527, at \*11 (N.D. Ala., Apr. 11, 2018).  Analyzing these two claims

7   together, because they are effectively two sides of the same coin, Storey County and hence

8   Commissioner Gilman in his official capacity have <u>both</u> been dismissed from this suit.  The

9   County Defendants simply wish to clarify this point in light of Plaintiff's recent footnote.

10  **III.    CONCLUSION**

11          Based on the foregoing, the District Court should certify that its dismissal of the

12  County Defendants (and the State Defendants) in this matter, made pursuant to the Order

13  (ECF No. 112) of August 16, 2024, is indeed a Final Judgment pursuant to FRCP Rule 54(b),

14  because all the claims against the Government Defendants have been dismissed in their

15  entirety, because the claims alleged against the Government Defendants are functionally

16  unrelated to those alleged against the remaining Brothel Defendants, and because there is no

17  just reason for delaying an Entry of Final Judgment in their favor.

18          DATED this 9th day of September, 2024.

19                                              ERICKSON, THORPE & SWAINSTON, LTD.

20

21                                              */s/ Brent Ryman*
                                                BRENT L. RYMAN, ESQ. (#008648)
22                                              PAUL M. BERTONE, ESQ. (#004533)
                                                ERICKSON, THORPE & SWAINSTON, LTD.
23                                              1885 South Arlington Ave., Suite 205
                                                Reno, Nevada 89509
24                                              Telephone: (775) 786-3930
                                                *Attorneys for Defendants Nye,*
25                                              *Elko and Storey Counties*

26

27

28

ERICKSON, THORPE &
SWAINSTON, LTD.

**CERTIFICATE OF SERVICE**

Pursuant to FRCP Rule 5, I certify that I am an employee of ERICKSON, THORPE & SWAINSTON, LTD. and that on this day I caused to be served a true and correct copy of the attached document by:

☐   U.S. Mail

☐   Facsimile Transmission

☐   Personal Service

☐   Messenger Service

X   CMECF

addressed to the following:

See CMECF service list.

DATED this 9ᵗʰ day of September, 2024.

_/s/ Brent Ryman_____
Brent Ryman

ERICKSON, THORPE &
SWAINSTON, LTD.

13