UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| JANE DOE, | Case No. 3:24-cv-00065-MMD-CSD |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| JOSEPH LOMBARDO, in his capacity as Governor of the State of Nevada, *et al.*, | |
| Defendants. | |

I.  **SUMMARY**

Anonymous Plaintiff "Jane Doe" filed a complaint alleging violations of the Thirteenth Amendment and the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591(A)(1)-(2), 1595, arising from her time working at four Nevada establishments licensed to sell sexual services. (ECF No. 1 ("Complaint").) Plaintiff originally asserted claims against those four establishments ("Brothel Defendants")[1], as well as their respective counties ("County Defendants"), and Nevada's Governor and Attorney General ("State Defendants"). (*Id.*) On August 16, 2024, the Court issued an order dismissing Plaintiff's claims against State and County Defendants—as well as Plaintiff's prospective relief claims against Brothel Defendants—for lack of standing. (ECF No. 112 ("August Order").) The Court further issued an order to show cause ("OSC") directing Plaintiff to demonstrate standing to bring her remaining damages claims against Brothel Defendants under the Thirteenth Amendment and the TVPRA. (*Id.*)

---

[1] Brothel Defendants are Western Best, Inc. d/b/a Chicken Ranch ("Chicken Ranch"); Desert Rose Club, LLC ("Desert Rose Club"); Hacienda Rooming House, Inc. d/b/a Bella's Hacienda Ranch ("Bella's Hacienda Ranch"); Mustang Ranch Productions, LLC d/b/a Mustang Ranch Lounge, LLC ("Mustang Ranch"), and Lance Gilman, owner of Mustang Ranch, in his individual capacity (collectively, "Mustang Ranch Defendants").

The Court now addresses Plaintiff's response to the OSC (ECF No. 115 ("OSC Response"))[2] and her motion for a protective order and leave to proceed pseudonymously (ECF No. 73 ("Motion for Protective Order"))[3]. As further explained below, the Court finds that Doe fails to demonstrate standing as to her remaining Thirteenth Amendment claims but satisfies the OSC as to her TVPRA claims. However, the Court denies the Motion for Protective Order and directs Plaintiff to disclose her identity if she wishes to proceed with her TVPRA claims. The Court also denies Plaintiff's motion to strike Defendant Bella's Hacienda Ranch's response regarding entry of default (ECF No. 135 ("Motion to Strike"))[4] and sets aside the Clerk's default (ECF No. 122).

**II.  BACKGROUND**

Plaintiff Doe is an anonymous individual residing in Nevada who alleges that she experienced sex trafficking while working at four separate licensed Nevada brothels over the course of six years. (ECF No. 1.) In her original Complaint, Doe asserted a Thirteenth Amendment constitutional claim against all Defendants (claim one) and statutory claims for perpetrating and benefiting from sex trafficking under 18 U.S.C. §§ 1591(A)(1) and 1595 of the TVPRA against County and Brothel Defendants (claims two and three), seeking both injunctive relief and damages. (*Id.* at 42-44.)

State, County and Brothel Defendants each filed motions to dismiss or strike the Complaint under, *inter alia*, Federal Rules of Civil Procedure 12(b)(1), 10(a), 12(b)(6), 8(a), and 12(f). (ECF Nos. 5, 6, 24, 43.) In its August Order, the Court granted State and County Defendants' motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), finding that Plaintiff lacked Article III standing to bring claims against the named

---

[2]Defendants Mustang Ranch and Lance Gilman, Desert Rose Club, and Bella's Hacienda Ranch responded to the OSC Response (ECF Nos. 123, 124, 127) and Chicken Ranch joined (ECF No. 138).

[3]Defendant Chicken Ranch responded (ECF No. 79), as did County Defendants (ECF No. 75). Desert Rose Club and Mustang Ranch Defendants joined County Defendants' response. (ECF Nos. 76, 78.) Plaintiff replied. (ECF Nos. 83, 85.)

[4]Bella's Hacienda Ranch responded (ECF No. 140).

government entities. (ECF No. 112.) The Court similarly dismissed Plaintiff's claims for prospective relief against Brothel Defendants for lack of standing, finding that Doe failed to demonstrate redressability and failed to properly assert third-party standing permitting her to advocate on behalf of "other similarly-situated survivors of sex trafficking." (*Id*.) The Court next turned to Plaintiff's claims for damages against Brothel Defendants. Because neither Plaintiff nor Brothel Defendants had directly addressed the damages claims at the time of the August Order—and given the particular significance of the jurisdictional standing threshold in this case—the Court directed Plaintiff to show cause as to her standing to bring the surviving claims. (*Id.*)

In light of its findings on standing and the OSC, the Court also denied Mustang Ranch Defendants' motion to strike the Complaint (ECF No. 6), declined to reach Defendants' other asserted bases for relief, and deferred ruling on other then-pending motions. (ECF No. 112.) In particular, the Court did not reach Defendants' argument that Plaintiff's use of a pseudonym violated Federal Rule of Civil Procedure 10(a), warranting dismissal as an independent threshold issue. And the Court similarly deferred ruling on Plaintiff's Motion for Protective Order, which largely addresses the same anonymity issue under Rule 10(a), and which Doe filed after Defendants submitted their dismissal motions.[5]

Plaintiff responded to the OSC on August 30, 2024. (ECF No. 115.) Three of the Brothel Defendants—Mustang Ranch and Lance Gilman, Desert Rose Club, and Bella's Hacienda Ranch—subsequently replied to Plaintiff's OSC Response, and Defendant Chicken Ranch joined. (ECF Nos. ECF Nos. 123, 124, 127. 138). Defendant Bella's

---

[5] On April 29, 2024, following a motion for more definite statement contesting Plaintiff's anonymity, Plaintiff and Brothel Defendant Chicken Ranch filed a stipulation to indefinitely continue Chicken Ranch's deadline to respond to the Complaint. (ECF No. 53.) On April 30, Magistrate Judge Craig Denney entered an order approving the stipulation and setting a deadline for Plaintiff to file and serve a motion for a protective order and leave to proceed pseudonymously. (ECF No. 58.) Plaintiff filed her Motion for Protective Order on May 30. (ECF No. 73.)

3

Hacienda Ranch responded after the Clerk entered default against it.[6] (ECF Nos. 122, 127.) A stay on discovery remains in place.

## III.   DISCUSSION

The Court addresses the Motion to Strike and then turns to Plaintiff's response to the OSC. Finding that Plaintiff satisfies the OSC as to her TVPRA damages claims against Brothel Defendants, the Court next addresses Plaintiff's Motion for Protective Order.

### A.   Motion to Strike

After entering a notice of appearance, Bella's Hacienda Ranch filed a response to Plaintiff's request for entry of default, asserting that it had not been properly served and thus that no deadlines to respond to the Complaint were triggered. (ECF No. 126.) Bella's Hacienda Ranch specifically asserted that the summons and Complaint were served on a bartender without authority to accept service. (ECF No. 126-1.) Plaintiff moves to strike Bella's response as untimely and moot because it was filed more than 14 days after the request for entry of default and four days after the Clerk entered default. (ECF No. 135.) Bella's Hacienda Ranch opposes the Motion to Strike, arguing that the response was not untimely. (ECF No. 140.)

The Court finds that even assuming Bella's Hacienda Ranch's response was untimely and construing the response as a request to set aside default, there is good cause to grant the request. *See* Fed. R. Civ. P. 55(c) (providing that a court "may set aside an entry of default for good cause"). "Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994) (quoting *Mendoza v. Wight*

---

[6]On August 29, shortly before responding to the OSC, Plaintiff requested entry of default against Defendant Bella's Hacienda Ranch, which had not yet filed an answer or made an appearance. (ECF No. 113.) The Clerk of Court entered default, although unsigned, on September 12. (ECF No. 122.) On September 16, a notice of appearance was filed (ECF No. 125) and Bella's Hacienda Ranch submitted a response to the entry of default (ECF No. 126), as well as its own opposition to Plaintiff's OSC response (ECF No. 127). Doe has now moved to strike Bella's response to the entry of default as untimely and moot. (ECF No. 135.)

4

*Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir.1986)). "[T]he district court should consider whether: (1) the plaintiff would be prejudiced by setting aside the default; (2) the defendant has a meritorious defense; and, (3) the defendant's culpable conduct led to the default." *Id.* Here, the Court's interest in deciding cases on their merits strongly weighs in favor of setting aside default, especially because other similarly-situated Brothel Defendants have demonstrated possible meritorious defenses. Prejudice to Plaintiff is minimal at this stage in the litigation. These factors weigh against a default even without considering Bella's Hacienda Ranch's service-of-process argument, but the Court also notes that good cause to set aside a default may exist even where that default resulted from a defendant's mistake or neglect. *See* Fed. R. Civ. P. 60(b) (providing that a default *judgment* may be set aside for "mistake, inadvertence, surprise, or excusable neglect," where the good-cause standard for setting aside a *default* under Rule 55(c) is even more liberal). *See also O'Connor*, 27 F.3d at 364.

Accordingly, the Court denies Plaintiff's motion to strike (ECF No. 126), sets aside the Clerk's default entered against Bella's Hacienda Ranch (ECF No. 122), and directs Bella's Hacienda Ranch to take appropriate action to defend in this lawsuit having now appeared.

### B.     Plaintiff's Response to the OSC

In its August Order, the Court directed Plaintiff to show cause why she has standing to bring damages claims against Brothel Defendants because the bulk of the parties' filings had so far centered on now-dismissed prospective relief claims, and because many of the standing arguments in State and County Defendants' motions applied only to government actors.[7] (ECF No. 112 at 18-20.) The Court also noted that Plaintiff appeared to rely on generic and non-particularized factual allegations about ranches and clubs' practices. (*Id.*) With this context in mind, the Court emphasized that Plaintiff must

---

[7]While several Brothel Defendants joined State and County Defendants' 12(b)(1) motions, none of the Brothel Defendants directly addressed the issue of Doe's standing to bring claims against private commercial establishments. State and County Defendants' standing arguments, meanwhile, primarily involved the unique attenuation of regulators.

establish concrete injuries in fact with regard to each Brothel Defendant and noted that in responding to the OSC, "Doe may not rely on third parties' injuries, or on potentially injurious practices that did not injure *Plaintiff specifically*, to bolster her own damages claims." (*Id.* at 19.) *See Arizona State Legislature v. Arizona Independent Redistricting Com'n*, 576 U.S. 787, 799-800 (2015) (injuries must constitute "invasions of legally protected interests"). Reviewing the parties' responses to the OSC, the Court dismisses Plaintiff's Thirteenth Amendment claim against Brothel Defendants (claim one) for lack of standing but finds that Plaintiff satisfies the OSC with regard to her TVPRA claims (claims two and three).

### 1. Thirteenth Amendment Claims

The Court concludes that Plaintiff fails to demonstrate standing to seek damages under the Thirteenth Amendment because there is no private right of action under the instant circumstances. Courts in the District of Nevada have generally recognized that plaintiffs may bring claims under statutes implementing the Thirteenth Amendment but may not seek direct relief under the Amendment without a statutorily-created cause of action. *See Simpson v. Agatone*, Case No. 2:15-cv-00254-RFB-CWH, 2018 WL 5074677, at *4 (D. Nev. Sept. 5, 2018) (quoting *Del Elmer v. Metzger*, 967 F. Supp. 398, 402 (S.D. Cal. 1997)) ("There is not a private right of action under the Thirteenth Amendment; rather, 'plaintiffs must instead base such claims on one of the statutes implementing [it].'"); *Flores v. City of Westminster*, 873 F.3d 739,753 (9th Cir. 2017) (permitting a claim under 42 U.S.C. § 1981 in part because "[t]he Civil Rights Act of 1866 implemented the Thirteenth Amendment"); *Johnson v. Lucent-Alcatel*, Case No. CV 19-575-DMG (ADSx), 2019 WL 4391121, at *2 (C.D. Cal. July 24, 2019) ("The Court is not aware of any case that has recognized a private right of action under the [Thirteenth] Amendment.").

Plaintiff may not assert her Thirteenth Amendment damages claims independently from any authorizing statute.[8] Moreover, the Victims of Trafficking and Violence

---

[8]Addressing government defendants' dismissal arguments in earlier filings, Plaintiff pointed to 42 U.S.C. §1983 as the relevant statute creating a private right of action to

Protection Act, H.R. 3244, 106th Cong. (2000), as reauthorized and amended by the TVPRA, was originally "passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (quoting *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014)). Thus, to the extent the Thirteenth Amendment provides a constitutional source for damages claims against Brothel Defendants, Plaintiff's TVPRA claims already take advantage of this avenue. Accordingly, Doe fails to satisfy the OSC as to her Thirteenth Amendment damages claims because there is no legally cognizable injury. *See Arizona State Legislature*, 576 U.S. at 799-800; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016). The Court dismisses these claims with prejudice, as amendment would be futile.

### 2. TVPRA Claims

The Court finds that Plaintiff satisfies the OSC with regard to her TVPRA claims. Under the TVPRA, which proscribes sex trafficking by "force, fraud, or coercion," anyone who knowingly "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person [for a commercial sex act]" or "benefits, financially or be receiving of anything of value, from participation in a venture [as described in this section]" may be liable. 18 U.S.C. §§ 1591(a)(1)-(2). Coercion means "threats of serious harm to or physical restraint against any person [,or] . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm . . . or physical restraint." 18 U.S.C. § 1591(e)(2)(A)-(B).

As detailed in response to the OSC, Plaintiff alleges that each of the four Brothel Defendants at minimum (1) implemented a fee and fine structure requiring payment of significant percentages of earnings to the establishment (including fines applied in the event of an early departure); (2) enforced constraints on movement and searches of personal belongings; (3) limited access to legal documents such as personal licenses; and (4) acted to discourage contact with law enforcement. (ECF No. 115 at 6-15.) At this

---

assert Thirteenth Amendment violations. (ECF No. 63 at 14-19.) Section 1983 does not apply to claims against private Brothel Defendants not acting under color of state law.

stage, these allegations are sufficiently concrete and particularized to meet the injury in fact requirement because they plausibly indicate that coercive conditions contributed to Doe's participation in commercial sexual transactions. *See* 18 U.S.C. §§ 1591(a)(1)-(2); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical.").

Brothel Defendants argue that Doe fails to demonstrate a cognizable injury because any allegedly coercive fees and fines are nothing more than the terms of a freely-entered independent contractor agreement, while constraints on movement and health screening procedures are merely legal requirements imposed by county codes. (ECF Nos. 123 at 5, 124 at 4-7, 127 at 2-3.) But the terms of a contractor agreement and Brothel Defendants' policies in relation to county codes are issues implicating the merits and merits-based defenses, and these issues rest in part on factual issues.[9] Brothel Defendants also note that Plaintiff references debt bondage without ever alleging actual debts owed. (*Id.*) But whether Doe owed a debt is not determinative under the TVPRA.[10] Brothel Defendants next argue that Plaintiff fails to comply with the OSC because she continues to reference a number of allegations about the establishments' treatment of other women, without asserting that practices impacted Doe in particular. For example, Doe alleges that at Mustang Ranch, some women were punished for using the panic button and denied permission to go outside, without alleging that she was ever subject to these punishments and denials herself. (ECF No. 124 at 4-7.) The Court has indeed emphasized that Plaintiff may not seek relief *for* other individuals' injuries. (ECF No. 112

---

[9]In a facial challenge to standing, the challenger attacks the sufficiency of the complaint. *See Safe Air for Everyone v. Myer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Accordingly, in evaluating the OSC, the Court assumes the factual allegations of the Complaint are true and draws all reasonable inferences in favor of Plaintiff without looking to other facts. *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

[10]In her OSC response, Plaintiff argues in a footnote that Brothel Defendants' conduct violates federal laws banning debt bondage such as the Peonage Act, 42 U.S.C. § 1994. (ECF No. 115 at 13 n. 2.) Plaintiff does not bring any claims under the Peonage Act and the Court does not consider it in its analysis of the TVPRA claims.

at 19.) But under the TVPRA, coercion into commercial sexual acts is a central cognizable harm. Here, for the purpose of standing, Doe's allegations as to the treatment of other individuals may plausibly go to whether she witnessed or believed a pattern of coercion existed and, in turn, whether she participated in commercial sexual transactions she would otherwise not have entered. *See* 18 U.S.C. § 1591(e)(2)(A)-(B) (defining coercion).

Plaintiff also satisfies the traceability requirement. The Court's concerns about attenuation in the context of claims against government defendants do not apply here, where claims against Brothel Defendants arise in relation to the conditions inside their own establishments. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)) (noting that while a showing of proximate cause is not required, a plaintiff must "establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'"). Finally, Doe has sufficiently established that damages would redress the alleged injuries. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 127 (1998); *Skyline Wesleyan Church v. California Dept. of Managed Health Care*, 968 F.3d 738, 749 (9th Cir. 2020) (finding the redressability requirement satisfied where nominal damages would redress an alleged injury "even if only to a minimal extent.")

Accordingly, the Court finds that Plaintiff has established standing to bring her TVPRA damages claims against Brothel Defendants. The Court turns to the pending Motion for Protective Order to consider whether Plaintiff may pursue these claims under a pseudonym.

### C. Motion for Protective Order (ECF No. 73)

Plaintiff filed this action anonymously and seeks a protective order permitting her to proceed under a pseudonym while also allowing Defendants to access her identity on a restricted basis once the current discovery stay is lifted. (ECF No. 73.) Because Plaintiff does not adequately justify a deviation from the bedrock standard that court cases are public events—especially considering the limited claims remaining—the Court will deny the Motion for Protective Order.

To the extent procedurally relevant, the Court notes that Doe filed her Motion for Protective Order in May 2024—nearly four months after filing the Complaint, and after Defendants submitted multiple motions to dismiss or strike which were by then fully or almost-fully briefed. In the filings preceding the Motion for Protective Order, Defendants argued for dismissal in part on the basis that Plaintiff failed to meet her burden to proceed anonymously under Federal Rule of Civil Procedure 10(a). (ECF Nos. 5, 6, 24.) The Court did not reach the question of Doe's anonymity in its August Order on the motions to dismiss, instead dismissing all claims against State and County Defendants for lack of standing and issuing the OSC. (ECF No. 112.) Nevertheless, because the pending Motion for Protective Order and responsive filings substantially repeat the Rule 10(a) arguments presented in the earlier dismissal motions, the Court considers that context where appropriate. Because courts in the Ninth Circuit do not require a party to obtain the Court's permission before filing a case anonymously, however, the Court does not find that Plaintiff's delay in moving for a protective order deprives the Court of jurisdiction to mandate dismissal on that basis.[11] In addition, given that all claims against government defendants have now been dismissed with prejudice, the Court will not consider County Defendants' opposition to the Motion for Protective Order (ECF No. 75) where the arguments therein apply specifically to the now-dismissed defendants.

Defendants first argue that the Motion for Protective Order is procedurally flawed because Plaintiff failed to make a formal attempt to meet and confer as required for discovery motions, and because the Motion is an improper sur-reply to County Defendants' motion to dismiss (ECF No. 5). (ECF Nos. 75, 79 at 3 n. 3.) *See* LR 26-6(c).

---

[11]"[D]istrict courts within the Ninth Circuit have concluded that dismissal for lack of jurisdiction is not warranted when the plaintiff files a motion to proceed under a pseudonym, even if that motion is filed after the defendant filed a motion to dismiss." *Doe v. Network Sols., LLC*, Case No. 07-cv-05115-JSW, 2008 WL 191419, at *3 (N.D.Cal. Jan. 22, 2008). *See also Doe v. Penzato*, Case No. 10-cv-5154-MEJ, 2011 WL 1833007, at *4 (N.D.Cal. May 13, 2011) ("Although some Circuits require plaintiffs to obtain leave of the court before filing an anonymous pleading, the Ninth Circuit does not."); *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1143-44 (N.D. Cal. 2016) (finding that a Doe plaintiff was not required to file a motion to proceed anonymously before filing a complaint or before a defendant files a motion to dismiss).

The Court agrees with Plaintiff that as a directed motion with a deadline set by the Court (ECF No. 58) addressing an underlying pleading issue, the Motion is not the usual kind of protective-order request subject to LR 26-6's guidelines on discovery filings. (ECF No. 83.) The Court also agrees with Plaintiff that the Motion is not an improper sur-reply. The Court will thus turn to the parties' substantive arguments under Rule 10(a).

Rule 10(a) generally requires the title of a complaint to name all parties. "Courts disfavor anonymity because it is contrary to the fundamental principle that courts and judicial records are open." *Discopolus, LLC v. City of Reno*, Case No. 3:17-CV-0574-MMD-VPC, 2017 WL 10900550, at *2 (D. Nev. Nov. 16, 2017) (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000)). A plaintiff may use a pseudonym, however, in "the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Id.* at 1068. When determining whether rare circumstances justify a plaintiff's anonymity, courts consider whether (1) the party's need for anonymity outweighs (2) the prejudice to the opposing party; and (3) the public's interest in knowing the party's identity. *See Advanced Textile Corp.*, 214 F.3d at 1068. Applying this balancing test, courts have allowed parties to proceed anonymously when: (1) identification creates a risk of retaliatory physical or mental harm; (2) anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature, or (3) the anonymous party is compelled to admit illegal conduct, risking prosecution. *Id*. "The Court must evaluate the precise prejudice plaintiffs' pseudonymity would cause defendants at each stage of the litigation." *4 Exotic Dancers v. Spearmint Rhino*, Case No. CV 08-4038ABCSSX, 2009 WL 250054, at *3 (C.D. Cal. Jan. 29, 2009) (citing *Advanced Textile*, 214 F.3d at 1068).

As to the first overarching factor—Plaintiff's need for anonymity—Plaintiff argues that she faces a risk of retaliation if her identity is publicly disclosed, as well as a legitimate fear for her safety and reputation. (ECF No. 73 at 2-5.) Defendants argue that Doe's fear of retaliation is unreasonable under the instant circumstances, and that conclusory

statements about Doe's vulnerability and stigma are inadequate. (ECF No. 79 at 4-6.) The Court is not convinced that Plaintiff demonstrates a reasonable fear of retaliation or a threat of any severe harm. *See Advanced Textile*, 214 F.3d at 1068 (cleaned up) (noting that in cases where "pseudonyms are used to shield the anonymous party from retaliation," the district court must evaluate: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation.") *See also Doe v. City of Las Vegas*, Case No. 2:19-CV-00382-GMN-BNW, 2019 WL 2601554, at *2 (D. Nev. June 25, 2019) (finding a fear of violent retaliation unreasonable when supported with only conclusory allegations). While Plaintiff insists that she needs to protect her information from misuse by Brothel Defendants, Brothel Defendants will become aware of her identity regardless under the terms of any protective order—and Doe does not make it clear exactly how she fears they will misrepresent her information to the public. *See Doe v. JBF RAK LLC*, Case No. 2:14-CV-00979-RFB-GWF, 2014 WL 5286512, at *4 (D. Nev. Oct. 15, 2014) (finding no reasonable fear of retaliation by defendants when a plaintiff's identity was already known to defendants regardless of any pseudonym). Plaintiff does not assert that she continues to work in the industry such that she fears retaliation from employers or other independent contractors.

The Court affords some weight to Doe's argument that disclosure of her identity will make her vulnerable to sex buyers hoping to track her down and that sex trafficking itself creates a "psychological vulnerability," but these are ultimately conclusory statements which apply broadly to anyone in the industry, regardless of the specifics of their claims. (ECF No. 73 at 4-5.) Plaintiff also argues that disclosure of her identity would cause "severe embarrassment." (ECF No. 73 at 5-6.) "[S]ome embarrassment or economic harm is not enough" to justify anonymity, although a risk of significant "social stigmatization" may weigh towards use of a pseudonym. *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 994 (N.D. Cal. 2015) (citing *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D.Cal.1981)). The Court recognizes that the commercial sex industry is a uniquely

sensitive arena, involving heightened social stigma, which may support pseudonymity in certain cases. But again, Plaintiff's assertions here are mostly generic and related to an unspecified risk of stigma all individuals bringing sexual exploitation claims face.

Cases in this circuit addressing pseudonymity for similarly-situated plaintiffs, while instructive, point in both directions. *See Sears v. Mid Valley Enterprises, LLC*, Case No. 2:19-CV-00532-APG-DJA, 2021 WL 8015628, at *1 (D. Nev. Dec. 8, 2021) (permitting a courtesan at a legal brothel to proceed anonymously in a collective action under the Fair Labor Standards Act because disclosure of their identity could result in harassment from brothel clients and prostitution "carries an immense social stigma," but also emphasizing that there was no prejudice to the public because *other* class members proceeded under their legal names); *Discopolus*, 2017 WL 10900550, at *2 (permitting an exotic dancer to proceed under a pseudonym because disclosure might impact future employment prospects). *But see 4 Exotic Dancers*, 2009 WL 250054, at *1 (finding that plaintiff exotic dancers could not proceed under a pseudonym because their fears of retaliation, including threats of termination and blacklisting, were not unique to the sensitive industry). In addition, Doe has not herself asserted that she used stage name or otherwise kept her identity private during her time as an independent contractor at Brothel Defendant establishments, while Brothel Defendants argue that independent contractors are usually clearly identified on their websites and on social media. (ECF No. 79 at 6.) *See SFBSC Mgmt.*, 77 F. Supp. 3d at 994 (noting that exotic dancers often use stage names to protect their identities).

The Court also agrees with Defendants that Plaintiff's actions to publicize her case, including through press conferences and online publications, weigh against her argued need for privacy. (ECF No. 79 at 5-6.) *See City of Las Vegas*, 2019 WL 2601554, at *2 (finding that while a videotape involving central to a plaintiff's claims "involve[d] personal and highly sensitive material, Plaintiff's steps to publicize the case and other actions she has endorsed are inconsistent with a desire to remain anonymous"). On the whole, the

Court finds that the factor accounting for Plaintiff's private interest in anonymity weighs at most mildly in Plaintiff's favor.

As to the public interest factor, the Court finds that the balance is neutral or weighs slightly in Defendants favor. There is a fundamental public interest in allowing society open access to criminal and civil proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599-600 (1980). Doe argues that there is also a strong countervailing interest in victims bringing cases against sex traffickers and their facilitators, and that this interest is furthered by permitting plaintiffs like Doe to use pseudonyms. (ECF No. 73 at 6-9.) She emphasizes that the public has an interest in seeing cases decided on their merits, which may be undermined when plaintiffs are afraid to pursue their claims. *See Advanced Textile*, 214 F.3d at 1073. Considering the nature of the remaining claims against Brothel Defendants, Plaintiff has not identified public interests which outweigh the presumption of open access. The public has an interest in assessing Doe's credibility, especially where the underlying claims arise in the context of a legal prostitution regime enacted by an elected legislature. While the public interest in access may be lessened because Plaintiff's injunctive relief claims have already been dismissed, the Court's dismissal of those claims also undercuts Plaintiff's position that the presence of government defendants weighs in favor of anonymity.

Finally, as to the prejudice factor, the Court again finds that the balance weighs towards Brothel Defendants. Doe argues that Defendants will not be prejudiced by Plaintiff's use of a pseudonym if they can access Plaintiff's identity under the terms of a protective order. (ECF No. 73 at 9-11.) Brothel Defendants respond that even if Plaintiff's identity is provided to them under restricted conditions, they would nevertheless be forced to litigate at a disadvantage by publicly defending themselves against salacious accusations without being able to reveal Plaintiff's identity. (ECF No. 79 at 7.) "[C]ourts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public." *Advanced Textile*, 214 F.3d at 1069. While the terms of

a protective order might substantially mitigate any prejudice to Defendants during discovery, the Court agrees with Defendants that even minimal remaining prejudice may be weighed under Rule 10(a). *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1045 (9th Cir. 2010) ("[T]he district court did not abuse its discretion in determining that plaintiff's fears do not outweigh possible prejudice to defendants—however minimal that prejudice might be—in light of the district court's conclusion that these fears are unreasonable."). Here, the fact that Doe has actively sought to litigate this case in the public eye—as part of a series of similar cases brought by the same attorneys—lends credence to Brothel Defendants' concern that a protective order limiting their ability to respond in the same public arena would be prejudicial.

In sum, the Court does not find that Plaintiff's interest in anonymity—supported primarily with non-specific contentions about sexual exploitation—outweighs the public's interest in open proceedings and the prejudice to Defendants which would result under a protective order. The Court therefore declines to permit Plaintiff to proceed under a pseudonym and denies the Motion for Protective Order. If Plaintiff wishes to proceed with her remaining claims, she is directed to file a notice disclosing her identity within 15 days from the date of this order. If Plaintiff fails to file such a notice, the Court will presume she does not wish to disclose her identity and will dismiss the case without prejudice.

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's motion to strike Defendant Bella's Hacienda Ranch's response to Plaintiff's request for entry of default (ECF No. 135) is denied.

The Clerk of Court is further directed to set aside the default entered against Bella's Hacienda Ranch (ECF No. 122). Bella's Hacienda Ranch is directed to take appropriate action to defend in this lawsuit having now appeared.

Case 3:24-cv-00065-MMD-CSD    Document 141    Filed 10/18/24    Page 16 of 16

It is further ordered that Plaintiff has failed to satisfy the Court's show-cause order (ECF No. 112) as to her damages claims against Brothel Defendants under the Thirteenth Amendment. Plaintiff's Thirteenth Amendment claims are dismissed as specified herein.

It is further ordered that Plaintiff has satisfied the Court's show-cause order as to her damages claims against Brothel Defendants under the TVPRA, as specified herein.

It is further ordered that Plaintiff's motion for a protective order and leave to proceed pseudonymously (ECF No. 73) is denied.

It is further ordered that Plaintiff must file a notice disclosing her identity for the public docket within 15 days from the date of this order if she wishes to proceed with her remaining TVPRA claims. If Plaintiff fails to timely file such a notice, the Court will presume she does not wish to disclose her identity and will dismiss the case without prejudice.

It is further ordered that remaining Brothel Defendants which have not answered the Complaint will have 15 days from the date on which Plaintiff files a notice disclosing her identity to file an answer or other responsive pleading. In that event, the Court defers to the Magistrate Judge to establish a scheduling order to allow this case to proceed.

DATED THIS 18th Day of October 2024.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE