Jason D. Guinasso (SBN #8478)
GUINASSO LAW, LTD.
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*guinassolaw@gmail.com*

Benjamin W. Bull (*admitted pro hac vice*)
Peter A. Gentala (*admitted pro hac vice*)
Dani Bianculli Pinter (*admitted pro hac vice*)
Christen M. Price (*admitted pro hac vice*)
Victoria Hirsch (*admitted pro hac vice*)
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

JANE DOE,

        Plaintiff,

vs.

JOSEPH LOMBARDO, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; NYE COUNTY; ELKO COUNTY; STOREY COUNTY; WESTERN BEST, LLC; DESERT ROSE CLUB, LLC; HACIENDA ROOMING HOUSE, INC. D/B/A BELLA'S HACIENDA RANCH; MUSTANG RANCH PRODUCTIONS, LLC D/B/A MUSTANG RANCH LOUNGE, LLC; LEONARD 'LANCE' GILMAN, in his official capacity; and LEONARD 'LANCE' GILMAN, in his individual capacity,

        Defendants.

Case No.: 3:24-cv-00065-MMD-CSD

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S OCTOBER 18, 2024 ORDER (ECF NO. 141)**

1

COMES NOW, Plaintiff Jane Doe (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby brings this Motion for Reconsideration of this Court's October 18, 2024 Order [ECF No. 141].

## **INTRODUCTION**

Plaintiff Jane Doe, who has sued the Brothel Defendants who sex trafficked her and who have otherwise threatened her, seeks relief from this Court's Order denying her privacy protections and requiring her to disclose her identity on the public docket.

On October 18, 2024, this Court issued an order setting aside the Clerk's entry of default as to Bella's brothel, finding that Plaintiff had sufficiently alleged standing against the Brothel Defendants as to her sex trafficking claims, and denying Plaintiff's request for privacy and safety protections. *See* ECF 141.

The instant motion for reconsideration or in the alternative for certification of interlocutory appeal concerns the Court's decision to deny Jane Doe the right to proceed under a pseudonym and protective order in this litigation, and its order that she disclose her name to the public within 15 days of the date of the order. ECF 141 at 16.

The Court was not "convinced that Plaintiff demonstrates a reasonable fear of retaliation or a threat of any severe harm," stating that Plaintiff could not reasonably fear retaliation from having her information made public if Brothel Defendants would be able to access her information under a protective order's terms, and suggesting retaliation was unlikely to occur if she was not still in prostitution. ECF 141 at 12.

The Court gave "some weight" to Plaintiff's fear of sex buyers tracking her down as well as her psychological vulnerability from being sex trafficked, but characterized these as "conclusory statements which apply broadly to anyone in the industry, regardless of the specifics

2

of their claims." ECF 141 at 12 (internal citations omitted). The Court also recognized that embarrassment and especially social stigma attach to persons who have been in the commercial sex trade, but said the Plaintiff's claims were "mostly generic and related to an unspecified risk of stigma all individuals bringing sexual exploitation claims face." ECF 141 at 12-13.

The Court stated that the relevant case law regarding use of a pseudonym went in both directions. Additionally, the Court found factors cut against her privacy interests, such as not asserting that she used a stage name in the brothels, and her "actions to publicize her case, including through press conferences and online publications." ECF 141 at 13. The Court concluded that "the factor accounting for Plaintiff's private interest in anonymity weighs at most mildly in Plaintiff's favor." ECF 141 at 14.

The Court found that the public interest factor was "neutral or weighs slightly in Defendants favor." ECF 141 at 14. The Court discounted the public's interest in victims coming forward and pursuing civil rights lawsuits, stating: "The public has an interest in assessing Doe's credibility, especially where the underlying claims arise in the context of a legal prostitution regime enacted by an elected legislature." ECF 141 at 14.

Finally, the Court stated that while a protective order might "substantially mitigate any prejudice to Defendants during discovery," any "minimal remaining prejudice" to the Brothel Defendants cut against a protective order, reasoning that because "Doe has actively sought to litigate this case in the public eye," a protective order limiting Brothel Defendants' public advocacy and ability to disclose Jane Doe's name "would be prejudicial" to them. ECF 141 at 14-15:

To support this Motion, Plaintiff Jane Doe has submitted a declaration affirming several facts alleged in the Complaint relating to the risks she faces from the Brothel Defendants, sex

buyers, and the public, Exh. A at ¶¶ 33-41, as well as new facts including some discovered after she filed her motion for a protective order. She has had at least one sex buyer subject her to abuse after she left the brothels, and she never used her real name, but a stage name for safety reasons while at the brothel. Exh. A at ¶¶ 34, 32. She also states that she is willing to offer further evidence, especially regarding the risk of legitimate physical danger, for in camera review should the Court wish it. Exh. A at ¶¶ 37.

For the reasons that follow, Plaintiff respectfully requests the Court reconsider its Order denying her motion to proceed under a pseudonym and a protective order. Alternatively, Plaintiff respectfully requests that the Court enter an order or amend its Order to allow her to seek interlocutory appeal. Plaintiff also requests that this court stay the deadline regarding her identity disclosure.

## **ARGUMENT**

Plaintiff argues that reconsideration is warranted under this district's rules regarding new facts, clear error, and manifest injustice. In the alternative certification for interlocutory review is warranted, because this case presents controlling questions of law on privacy protections for sex trafficking victims, with substantial ground for differences of opinion, and resolving the questions will advance this litigation.

### I.  **Reconsideration of the order denying Plaintiff Jane Doe privacy protections is warranted.**

Under the District of Nevada local rules, reconsideration is permitted in certain circumstances:

> A party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood. Changes in legal or factual circumstances that may entitle the movant to relief also must be stated with particularity. The court possesses the inherent power to reconsider an interlocutory order for cause, so long as the court retains jurisdiction.

> Reconsideration also may be appropriate if (1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.

LR 59-1(a). Additionally: "Motions for reconsideration must be brought within a reasonable time. Lack of diligence or timeliness may result in denial of the motion." LR 59-1(c). Jane Doe seeks reconsideration on three bases: new, relevant facts not available when she filed her motion for a protective order, clear error in considering factors outside the Ninth Circuit's standard, and manifest injustice.

**A. New facts about harms to Plaintiff support reconsideration**

"A party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood." LR 59-1(a). "Reconsideration also may be appropriate if… there is newly discovered evidence that was not available when the original motion or response was filed[.]" LR 59-1(a)(1).

First, as described in the attached declaration, Jane Doe's claims about vulnerability to abuse from sex buyers are not conclusory. Exh. A at ¶¶ 12, 14-17, 33-36. After Plaintiff filed her motion for a protective order, a sex buyer who heard about this lawsuit attempted to uncover her identity, exactly as she predicted. ECF 121 at 4. That evidence is already before the court in Mr. Greer's own filings, ECF 121 at 4, and was mentioned by Plaintiff in her response to Mr. Greer's request for judicial notice. ECF 132 at 6.[1]

---

[1] Plaintiff did not mention this in her motion for a protective order briefing, as Mr. Greer had yet to attempt to intervene.

Further, another sex buyer has also subjected her to further abuses since she left the brothel. Exh. A at ¶ 34. While at the brothel, she did not use her real name, but had a stage name, which further underscores the dangers that sex buyers pose to her. Exh. A at ¶ 32.

These are not conclusory claims. The number of these abusers is vast and given the nature of their abuse, there is no way to track down and determine with certainty who may or may not pose a threat, the way one might with a single perpetrator whose whereabouts are known to that victim. That other sex trafficking victims face similar circumstances because they experienced the same type of abuse does not make Plaintiff's fear of retaliation generalized, conclusory, unreasonable, or any less severe. If anything, it supports her argument that as a sex trafficking survivor, such threats are real and imminent.

Particularly given that the Court stated that the privacy factor slightly weighed in Plaintiff's favor and the public advocacy factors weighed slightly in Defendants' favor, these new facts even more clearly support the risks to Plaintiff and warrant the Court reconsidering its Order.

**B. Clear error in analyzing the pseudonymity factors warrants reconsideration**

Another basis for reconsideration includes instances of "clear error." LR 59-1(a) (2). "A party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood." LR 59-1(a).

The Court considered two factors that it ultimately found were determinative in the Defendants' favor, even though they are not part of the Ninth Circuit's standard. *See, generally, Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068, 1072-73 (9th Cir. 2000).

The first of these factors, public ability to assess the credibility of a sex trafficking victim, is not one of the factors in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068,

1072-73 (9th Cir. 2000); *see also* discussion in ECF 13 at 3. The public interest in openness and transparency of judicial proceedings is not the same as a public right to assess a litigant's credibility. Assessing credibility only becomes relevant to members of the public if there is a jury trial, which is limited by the Federal Rules of Evidence, further narrowing what kind of information the jury—not the press—can access. Trial publicity rules limit what can be publicly said about a case on the eve of trial, precisely because it could unfairly prejudice jurors against a litigant. *See, e.g.*, *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1033-34 (1991) (discussing the constitutionality and purposes of Nevada's pretrial publicity rule).

And as the Supreme Court has explained, the main value behind having open legal proceedings is the public's ability to scrutinize the *government*, not the litigants. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980) (cleaned up) ("[O]pen trials are bulwarks of our free and democratic government: public access to court proceedings is one of the numerous checks and balances of our system, because contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power[.]"); *see also Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." (cited with approval in *Advanced Textile Corp.*).

The second factor, public discussion of a civil rights case, is similarly outside the relevant standard. The press conference that the court referenced, ECF 141 at 13, not only does not contain any identifying information about the Plaintiff, it barely discusses the Plaintiff's story at all, relying almost entirely on the Complaint's claims about Nevada's systemic legalized

prostitution regime, *see* ECF 85 at 8. The Ninth Circuit's standards do not mandate denying privacy protections to plaintiffs who have not publicly disclosed identifying information.

If the defendants are worried about facing negative press in the public realm, then the solution is to have a mutual protective order that protects them as well, such as was entered in another sex trafficking case, *Doe # 1 v. MG Freesites*, LTD, 676 F.Supp.3d 1136 (N.D. Ala., 2022), but they have not asked for that. In any event, it is not clear how a plaintiff proceeding under a pseudonym stops the Brothel Defendants from engaging in their own media campaign to defend themselves in the court of public opinion.

Second, the Court also effectively sets aside a stipulation between Plaintiff Jane Doe and Chicken Ranch in which they agreed to stay Chicken Ranch's response deadline until a protective order was entered. *Compare* ECF 141 at 9-16 *with* ECF 85 at 3. There is a specific standard that applies to setting aside stipulations, and the court did not mention, let alone analyze it. *See* ECF 85 at 3.

Accordingly, the Court committed clear error by weighing factors not in the standard and overriding a stipulation without any cause.

### C. Refusing any privacy protections for a sex trafficking victim is a manifest injustice warranting reconsideration

Manifest injustice in a decision can also be a basis for reconsideration. LR 59-1(a)(2). The Court's order pits Jane Doe's desire to seek justice for herself against her safety. As will be described further below, the balance of cases protect trafficking with very few exceptions, thus, while pseudonymity is not a standard remedy in ordinary litigation, in this case, it is the court's denial that is extraordinary.

It is also against public policy to penalize or otherwise make it difficult for victims of civil rights abuses to seek redress. "[A]s the Supreme Court has recognized, fear of . . . reprisals

will frequently chill [a person's] willingness to challenge . . . violations of their rights." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000) (citing *Mitchell v. De Mario Jewelry*, Inc., 361 U.S. 288, 292 (1960)). Measures that may have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *Id.* Put another way, "If Plaintiffs are not permitted to proceed under a pseudonym, they may be discouraged from pursuing their claims and the public may be deprived a resolution of the case on the merits." *Fleites v. MindGeek S.A.R.L.*, No. CV2104920CJCADSX, 2021 WL 2766886, at *2 (C.D. Cal. June 28, 2021). This ruling has potentially catastrophic implications for victims bringing cases especially against systemic forms of abuse.

The court drew exactly the wrong inference from the systemic nature of the claims in the Plaintiff's lawsuit. If a person is challenging an abusive social structure, she faces potentially greater retaliation than someone who is just going after an individual person or even a single corporation. Therefore, more protection is warranted, not less.

To do otherwise is manifestly unjust and inconsistent with federal public policy, which not only encourages sex trafficking victims seek recourse through civil courts under 18 U.S.C. § 1595(a), but also contains explicit protections for crime victims, including their privacy, 18 U.S.C. § 3771(a)(8) ("The right to be treated with fairness and with respect for the victim's dignity and privacy."). Like the suit in *Advanced Textile Corp.* this case is premised on a federal statute designed to encourage victims to come forward and seek redress in federal court. *Cf.* 214 F.3d at 1073 (finding pseudonymity served the public interest where claim was premised on FLSA).

Particularly, as there was no hearing or request for further evidence in the nearly 7 months between the plaintiff's filing and the court's order, requiring the Plaintiff to disclose her identity without any privacy protections in place is manifestly unjust.

**D. Plaintiff's motion for reconsideration is timely**

"Motions for reconsideration must be brought within a reasonable time. Lack of diligence or timeliness may result in denial of the motion." LR 59-1(c). This motion for reconsideration is brought within a reasonable time, only a few days after the decision at issue, and before the disclosure deadline set by the Court. Plaintiff submits this motion only 10 days after she was served with the Court's order. *See* ECF 141. Accordingly, this motion for reconsideration is timely.

**II. Alternatively, the Court should certify the order for interlocutory appeal.**

A district court may certify an order for interlocutory appeal under § 1292(b) if it: (1) involves "a controlling question of law"; (2) on which there is "substantial ground[s] for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).[2]

Certification is merited here, where A) there are controlling questions of law at issue regarding whether sex trafficking victims can access privacy protections in litigation; B) substantial ground difference of opinion exists given the consistent privacy protections federal

---

[2] A district court has the authority to consider a request for certification for interlocutory appeal in the alternative to a motion for reconsideration. *See*, *e.g.*, *Doe v. Twitter, Inc.*, No. 21-CV-00485-JCS, 2021 WL 12285614, at *1 (N.D. Cal. Oct. 26, 2021).

courts give sex trafficking victims; and C) certifying these questions will materially advance the ultimate termination of the litigation.

**A. There are controlling questions of law at issue regarding whether sex trafficking victims can access privacy protections in litigation**

To be certified for interlocutory appeal, an order must "involve[] a controlling question of law[.]" 28 U.S.C. § 1292(b). A controlling question of law is one that would materially affect a case's outcome. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). The question need not determine who will prevail on merits to be controlling. *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 319 (9th Cir. 1996), *as amended* (July 5, 1996).

To establish a "controlling" question under Section 1292(b), "all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust*, 673 F.2d at 1026. A question can also be controlling if it could cause the litigation to take a clearly different path. *See Brickman v. Facebook, Inc.,* 2017 WL 1508719, at *2, 5 (N.D. Cal. Apr. 27, 2017) (granting motion to certify order denying motion to dismiss because if reversed, "the litigation could completely end or take a decidedly different path").

There are at least two controlling questions of law present here: 1) whether, as a general matter, persons alleging that they have been sex trafficked within prostitution or other aspect of the sex trade have the right to proceed under a pseudonym and protective order, and) 2) whether the two factors the Court found dispositive here should be part of the balancing at all, let alone determinative – namely, the public's ability to assess a victim's credibility and the defendants' ability to defend themselves in the court of public opinion (as opposed to this court). *See* ECF 141 at 13-15.

These latter two factors are not part of the Ninth Circuit's standard either for evaluating pseudonyms overall nor retaliation, *see Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068, 1072-73 (9th Cir. 2000), nor are they interests protected by Rule 10(a).

These questions are controlling because Jane Doe cannot proceed with this litigation if she has no protection, and the Order indicates that the Court will dismiss the case if she does not identify herself within 15 days of its date. ECF 141 at 16. Thus, how they are resolved on appeal would "materially affect" this case's outcome.

Accordingly, there are at least two controlling questions of law: whether sex trafficking victims should generally be permitted to proceed pseudonymously and under a protective order, and whether the public advocacy factors the Court relied on should be part of any balancing analysis.

## B. Substantial ground difference of opinion exists given the consistent privacy protections federal courts give sex trafficking victims

To merit interlocutory appeal, there must be "substantial ground for difference of opinion" on the controlling question of law.  28 U.S.C. § 1292(b). Moreover, where an order "involves a new legal question or is of special consequence," a district court "should not hesitate to certify an interlocutory appeal[.]" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.").

In this case, there is "substantial ground for difference of opinion" on the weight given to sex trafficking victims' safety and privacy concerns, as federal courts almost always permit sex trafficking victims to proceed under a pseudonym. *See, e.g., A.D. v. Cavalier Mergersub LP*,

No. 22-CV-095-JES-NPM, 2022 WL 4354842, at *2 (M.D. Fla. Sept. 20, 2022) (permitting sex trafficking victim to use pseudonym in public pretrial filings); *C. S. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-639-JES-MRM, 2021 WL 7448060, at *15 (M.D. Fla. June 11, 2021) (same); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 19CV120, 2020 WL 5269758, at *3 (E.D. Va. Mar. 20, 2020), order clarified, No. 19CV120, 2020 WL 8639343 (E.D. Va. July 30, 2020) (same). *Doe v. Penzato*, No. 10-cv-5154-MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011); *Doe v. Steele*, No. 3:20-cv-01818-MMA-MSB, 2020 WL 6712214 at *5 (S.D. Cal. Nov. 16, 2020); *Doe v. Dabbagh*, No. 15-cv-10724, 2015 WL 13806540 at *1 (E.D. Mich., 2015); *Doe (M.H.) v. G6 Hospitality LLC*, No. 4:22-CV-198-SDJ, 2022 WL 2532489 (E.D. Tex. 2022); *Doe #1 v. MG Freesites, Ltd.*, No. 7:21-cv-00220-LSC, 2021 WL 2556009 at *2 (N.D. Ala. 2021); *Florida Abolitionist, Inc. v. Backpage.com LLC*, No. 4:22-CV-198-SDJ, 2018 WL 2017535 at *2 (M.D. Fla. 2018); *Doe v. Baram*, No. 20 Civ. 9522 (ER), 2021 WL 3423595 at *3 (S.D. N.Y. 2021); *A.T.P. v. MTR Hotels LLC*, No. 6:21-cv-647-TMC, 2021 WL 5772826 at *2 (D.S.C. 2021); *A.D. v. Wyndham Hotels and Resorts, Inc.*, No. 4:19cv120, 2020 WL 5269758 at *3 (E.D. Va. 2020), order clarified, 2020 WL 8639343 (E.D. Va. 2020).

This is true in the Ninth Circuit, including in this district. *Humphries v. Button*, No. 2:21-cv-01412-APG-EJY, 2022 WL 744483 at *3-4 (D. Nev., 2022); *See, e.g., Doe v. Penzato*, No. 10-cv-5154-MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011); *Doe v. Steele*, No. 3:20-cv-01818-MMA-MSB, at *5 (S.D. Cal. Nov. 16, 2020); *Doe v. WebGroup Czech Republic*, A.S., 93 F.4th 442, 447 (C.A.9 (Cal.), 2024).

Within the District of Nevada, as Plaintiff noted, even where plaintiffs do not allege sex trafficking, the stigma of being in the sex trade, especially in the brothels and the danger posed by sex buyers, is enough to merit privacy protections. *See, e.g., Sears v. Mid Valley Enterprises*,

LLC, No. 19-CV-00532-APG-DJA, 2021 WL 8015628 (D. Nev. Dec. 8, 2021) (allowing plaintiffs to pseudonymously sue a Nevada brothel for failing to pay minimum wage and overtime wages).[3]  The plaintiff in *Sears* also indicated she would reveal her name to defendants, and that she would rather withdraw her opt-into the class action "than be named. This only legitimizes her concerns." *Sears v. Mid Valley Enterprises, LLC*, No. 219CV00532APGDJA, 2021 WL 8015628, at *3 (D. Nev. Dec. 8, 2021). There is no indication that she provided extensive proof supporting her fears, and the court even said it was "not inclined to find that a party must identify an abuser … to justify a pseudonym." *Id*. The Court relied on this case to reach essentially the opposite conclusion regarding the Plaintiff's need for protection, even though she also faces the same stigma and dangers and is moreover a sex trafficking victim.

As this Court's order is an outlier, there is indeed substantial ground for different opinions – most courts have had different opinions from this one. Plaintiff found only a handful of cases where a plaintiff bringing TVPRA claims was not allowed to proceed under a pseudonym at least until trial; one was a factually unusual case involving workplace sexual harassment and domestic abuse committed by an individual perpetrator and did not implicate the stigma of prostitution, *Fan v. Jiang*, No. 3:21-CV-00458-RCJ-CLB, 2023 WL 5846861 (D. Nev., 2023), and another, *Ramsbottom v. Ashton*, 2021 WL 2651188 (M.D. Tenn. 2021), was decided under a different standard, not an overall balancing test, but a rule that the plaintiff's privacy concerns must "*substantially outweigh* the presumption of open judicial proceedings."

---

[3] As Plaintiff also noted, ECF 73 at 3, the case the court chose to rely on instead concerned strip clubs, didn't address trafficking, and the privacy protections were sought because of concerns of economic retaliation, not safety or even stigma. *4 Exotic Dancers v. Spearmint Rhino*, No. CV 08-4038ABCSSX, 2009 WL 250054, at *4 (C.D. Cal. Jan. 29, 2009). Doe v. JBF, which the Court also relied on, is distinguishable as well, as it did not concern sex trafficking or prostitution, but intimate partner violence. *See Doe v. JBF RAK LLC*, No. 2:14-CV-00979-RFBGWF, 2014 WL 5286512, at *2 (D. Nev. Oct. 15, 2014).

*Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2021 WL 2651188, at *2 (M.D. Tenn. June 28, 2021) (emphasis in original) (internal citations omitted).  It was not clear that either case involved sex trafficking, and they certainly did not involve persons in prostitution or otherwise in the sex trade.

Given that many courts, including this district, have overwhelmingly permitted sex trafficking victims permission to proceed under a pseudonym, there is "substantial ground for difference of opinion" on the controlling questions of law.

### C. Certifying these questions will materially advance the ultimate termination of the litigation

The final prong of the interlocutory appeal standard is that the proposed interlocutory appeal "may materially advance the ultimate termination of the litigation[.]" 28 U.S. Code § 1292(b). *See also, In re Cement Antitrust Litig.*, 673 F.2d at 1026.

The material advancement requirement does not mean that the appeal outcome must have the potential to end the litigation altogether.  *See Reese*, 643 F.3d at 688 (finding interlocutory certification appropriate) ("Neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it may materially advance the litigation.") (cleaned up).

Avoiding the delays, costs, or other inefficiencies of a later appeal, such as duplicative discovery, suffices to meet this factor. *See, e.g., Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103, 1143 (S.D. Cal. 2015), aff'd, 860 F.3d 1193 (9th Cir. 2017) (finding that "resolution of this issue would materially advance the ultimate termination of this litigation" because if the defendant later "successfully appealed this Court's determination regarding the lack of subject matter jurisdiction" the parties would have wasted time and money.). The Ninth Circuit rejects a "rigid approach" to section 1292(b), favoring instead a "flexible approach,"

"wisely targeted to avoid . . . undesirable consequences" such as "unnecessary, protracted litigation and a considerable waste of judicial resources." *Reese*, 643 F.3d at 688 n.5.

In this instance, resolving the questions at issue will either have a dispositive effect on the litigation, or materially advance it by avoiding delay or expense. If the Ninth Circuit concludes that Jane Doe cannot proceed under a pseudonym and a protective order, the most likely outcome is that this Court, given the instant Order, ECF 141 at 16, will dismiss the entire lawsuit.

Alternatively, if Jane Doe were to disclose her identity and proceed with discovery, there are likely to be numerous, expensive, time-consuming discovery disputes due to her being required to protect herself from harassing requests piecemeal, rather than wholesale, under the terms of one protective order.

Thus, given that the protective order issue will either dispose of the whole case or result in protected discovery disputes, resolving the controlling questions above would materially advance the ultimate termination of this case. Additionally, if Jane Doe reveals her identity now, she cannot undo the consequences with a later appeal, a principle which the Ninth Circuit has noted when considering interlocutory appeals on pseudonymity, as even interlocutory orders denying pseudonymity are "effectively unreviewable on appeal from final judgment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1066 (9th Cir. 2000) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)). *See also Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 66 (1st Cir. 2022) (discussing interlocutory appeal in the context of pseudonymity denial: "Once the litigant's true name is revealed on the public docket, the toothpaste is out of the tube and the media or other interested onlookers may take notice in a way that cannot be undone[.]"); *Doe v. College of New Jersey*, 997 F.3d 489, 494 (3rd Cir. 2021)

(granting interlocutory appeal in part as court "cannot anonymize a litigant's already publicized identity with a new trial. That bell cannot be unrung.").

Therefore, given the controlling questions of law on the standard for granting sex trafficking victims privacy protections, the substantial grounds for disagreement on them given the numerous decisions permitting sex trafficking victims to proceed pseudonymously, and that resolving them would materially advance the ultimate termination of this litigation, this court should certify its order for interlocutory review, particularly given the flexible approach the Ninth Circuit favors regarding extraordinary appeals.

**III.    The Court should stay the deadline require Plaintiff to publicly disclose her identity in the meantime**

It is within the discretion of the Court to grant an extension of time. *See, e.g., Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010).

The Court's order denying Plaintiff's motion to proceed under a pseudonym and for a protective order requires Plaintiff to disclose her identity within 15 days. ECF 141 at 16.

As Plaintiff here seeks reconsideration, or in the alternative, to appeal the Order, there is good cause to extend her time to respond or stay that deadline until any appeal is resolved. It would, of course, defeat the point of the relief Plaintiff seeks were she required to disclose her identity in the meantime.

Accordingly, Plaintiff respectfully requests this Court stay the identity disclosure deadline until this motion is resolved.

### CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court reconsider its Order. Alternatively, Plaintiff respectfully requests that the Court enter an order or amend its Order to

allow her to seek interlocutory appeal. Plaintiff also requests that this court stay the deadline regarding her identity disclosure.

Respectfully submitted,

Dated: November 1, 2024

*/s/ Christen M. Price*
Christen M. Price
(*admitted pro hac vice*)
Benjamin W. Bull (*admitted pro hac vice*)
Peter A. Gentala (*admitted pro hac vice*)
Dani Bianculli Pinter (*admitted pro hac vice*)
Victoria Hirsch (*admitted pro hac vice*)
NATIONAL CENTER ON SEXUAL
EXPLOITATION

Jason D. Guinasso (SBN #8478)
GUINASSO LAW, LTD.
*Attorneys for Plaintiff*

18

## ELECTRONIC CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that on this 1st day of November, 2024, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S OCTOBER 18, 2024 ORDER (ECF NO. 141)**was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List.

*/s/ Jennifer Johnson*