# EXHIBIT A

**O'MARA**
**LAW FIRM, PC**

311 E. LIBERTY STREET
RENO, NEVADA 89501
(TEL) 775-323-1321
(FAX) 775-323-4082
DAVID@OMARALAW.NET

September 13, 2024

<u>HAND DELIVERED</u>

Mr. Jason D. Guinasso
5371 Kietzke Lane
Reno, Nevada 89511

Re:   *Doe v. Desert Rose, LLC et al,* Case No.: (3-23-cv-003407-ART-CDS)

Dear Jason,

 Enclosed for your review and consideration is the motion for rule 11 sanctions against Jane Doe and her counsel with the National Center on Sexual Exploitation.

 As you can see from the motion, it appears that either Jane Doe is not telling you and her other attorney's the truth, or the attorneys with the National Center on Sexual Exploitation are playing fast and loose with the trust. Regardless, the motion for rule 11 sanctions clearly sets forth the reasons why the complaint and response are frivolous and not supported by any evidence.

 As you know, the delivery of this motion starts the safe harbor provisions of Rule 11. If you would like to discuss this case further during this time, please let me know.

 Thank you for your cooperation on this matter. If you have any questions, please do not hesitate to contact me.

Very truly yours,

*/s/ David C. O'Mara*
David C. O'Mara

THE O'MARA LAW FIRM, P.C.
DAVID C. O'MARA, ESQ. (NEVADA BAR NO. 8599)
311 East Liberty St.
Reno, Nevada 89501
775-323-1321
775-323-4082 (fax)
david@omaralaw.net

*Attorney for Desert Rose Club, LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JANE DOE; | Case No. 3:24-cv-00065-MMD-CLB |
| Plaintiffs, | |
| v. | **DEFENDANT DESERT ROSE CLUB, LLC's RULE 11 MOTION FOR SANCTIONS** |
| JOSEPH LOMBARDO, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; NYE COUNTY; ELKO COUNTY; STOREY COUNTY; WESTERN BEST, INC. D/B/A CHICKEN RANCH; WESTERN BEST, LLC; DESERT ROSE CLUB, LLC; HACIENDA ROOMING HOUSE, INC. D/B/A BELLA'S HACIENDA RANCH; MUSTANG RANCH PRODUCTIONS, LLC D/B/A MUSTANG RANCH LOUNGE, LLC' LEONARD "LANCE" GILMAN, in his official capacity; and LEONARD "LANCE" GILMAN, in his individual capacity. | |
| Defendants. | |

- 1 -

1    Defendant, Desert Rose Club, LLC ("Desert Rose") by and through their counsel of record,
2 hereby moves for an order awarding sanctions pursuant to Federal Rule of Civil Procedure 11
3 against JANE DOE and her attorneys at the National Center on Sexual Exploitation, Benjamin W.
4 Bull, Peter A Gentala, Dani Bianculli Pinter, Christen M. Price and Victoria Hirsch. Desert Rose
5 seeks in award of reasonable attorneys' fees and costs expended in responding to the frivolous and
6 malicious complaint filed by Jane Doe as well as other sanctions sufficient to deter the petition of
7 such conduct or comparable conduct by others similarly situated. This motion is brought pursuant to
8 Federal Rule of Civil Procedure 11, all pleadings on file, the attachment memorandum and points of
9 authority and exhibits thereto.

10    **I.    Factual background**

11    On February 8, 2024, Jane Doe filed the complaint against Desert Rose for the following
12 claims for relief (1) VIOLATINIG THE THIRTEENTH AMENDMENT BAN ON SLAVERY, and
13 (2) VIOLATIONG 18 U.S.C. §§ 1591(A)(1) AND 1595 BY PERPETRATING SEX
14 TRAFFICKING.

15    Desert Rose makes this motion on the grounds that had counsel made even the most cursory
16 review of existing law and the facts and circumstances of this case, counsel would have realized,
17 before filing the Complaint, that Jane Doe's causes of action are meritless and have no evidentiary
18 support. Instead, Jane Doe and counsel filed suit against using the pseudonym, Jane Doe, to avoid
19 having to disclose Plaintiff's real name, allow Desert Rose to be able to confront its accuser and
20 provide evidentiary support disputing the false and meritless allegations.

21    Desert Rose alleges that Jane Doe and her lead counsel with the National Center on Sexual
22 Exploitation, which is associated with the complaint, were aware of several misrepresentations
23 alleged against Desert Rose which have no evidentiary support.

24    Jane Doe alleges that "Desert Rose took 50% of the fees that Jane Doe and the other women
25 got from the sex buyers." *See* Complaint ¶ 236. Upon conducting a cursory review, or setting forth
26 the full truth of what Desert Rose provided Jane Doe, the attorneys would have known that every sex
27 worker is made aware of the 50% booking payout system before they begin work with Desert Rose,
28 as the sex workers execute an independent contractor agreement that states the revenue split. A

1  cursory investigation would have also provided that all sex workers also receive 100% of their tips
2  for sexual services, and 100% of their private dance tips with small reduction for the credit card
3  processing fees. The sex workers also receive a 50% commission on all bar drinks the promote from
4  the clients and Dessert Rose provides the women with bottled water, non-alcoholic beverages and
5  some complementary bar drinks.

6    Jane Doe alleges that "Dessert Rose did not offer food and charged Jane Doe the other
7  women $50 a week for cleaning fees, even though the women themselves had to do the cleaning."
8  *Id* at ¶ 237. A cursory investigation would have shown this allegation is another false and
9  misrepresentation of the circumstance that occurred during Jane Doe's employment. Indeed, Desert
10 Rose has a common area maintenance fee (CAM) of $50 per week that contributes to the utilities
11 (gas & electric), water % sever, trash removal and internet services which each worker utilizes. If
12 the worker does not work a full week or has a low-booking week, then they are not charged the
13 CAM. Additionally, Desert Rose provides housekeeping services that clean the common areas,
14 hallways, restrooms, steam shower room kitchen, laundry room and the women's workspace. While
15 the women are required to provide their own food, as in most business, Desert rose only request that
16 workers clen up after themselves when using the kitchen and request they keep their personal
17 workspace presentable.

18   Jane Doe alleges that "Desert Rose required Jane Doe and the other women to "work" from 4
19 pm to 4 am each day, amounting to 72 hours per week. *Id* at ¶ 238. Women who were at Desert
20 Rose long term were allowed a weekly day off. *Id.* Again, this allegation is simply a
21 misrepresentation of the facts surrounding Jane Doe's employment as counsel certainly has text
22 messages between Jane Doe and owners/management at Desert Rose asking and receiving time off
23 to leave the premises. Additionally, Desert Rose does not force workers to work. Prior to signing the
24 independent contractor agreement, the women are provided the Desert Rose Workers Policy that sets
25 forth the business's open work hours of 4 p.m. to 4 a.m. Workers select days and weeks they wish to
26 work. When a worker is not scheduled for a shift, the women are free to leave the premises during
27 non-open hours. Desert Rose gives workers the time off they request, days off, sick leave, vacations
28 and personal time away. Workers are not required to provide services when they don't feel

comfortable with a prospective client, and a bar host or other person will assist the worker who can excuse herself from the situation.

Jane Doe alleges that "Desert Rose sent Jane Doe and the other woman into local bars and town events to find sex buyers, coaching them on how to avoid explicitly discussing prostitution before they were back at the brothel." *Id* at ¶ 239. Again, Desert Rose does not send the workers into town, let alone coach the women in how to avoid discussing prostitution.

Jane Doe alleges that she "had 3 minutes to respond to a lineup call" and that Desert Rose eventually instituted a $100 fine for missing or being late to a lineup." *Id* at ¶ 240. Again, Desert Rose does not, nor has it ever implemented fines on any workers.

Jane Doe has alleged that "Desert Rose has imposed a very specific dress code" including the requirement of wearing high heels." *Id* at ¶ 241. Again, Desert Rose does not have a dress code that requires the women to wear high heels. Instead, the lenient dress code only askes the women to not be bare footed or in sandals and are presentable. The ladies at Desert Rose can wear all types of boots, shoes and high heels, whichever the ladies prefer.

Jane Doe has alleged she, and the other women, were charged "$90 a week for STI testing and $110 for the test that were required monthly." *Id* at ¶ 242. Desert Rose does not charge contractors for medical testing as these tests are required by Elko PD for the women to obtain their work permit. This fee is paid to the clinic that does the testing and is part of the women's licensing and their business expenses.

Jane Doe alleges that "Desert Rose maintained a barbed wire fence around the brothel." Clearly, a cursory review of the property would have uncovered the fact that Desert Rose does not, nor has it ever had a barbwire fence around the brothel." *Id* at ¶ 243. Again, a cursory investigation would uncover that Desert Rose does not, nor has it ever, had a barbwire fence around the property.

Jane Doe alleges that Gabe Ornelas, the individual who runs the Desert Rose was very violent and would brandish his gun and even shoot at people, that he nearly shot one of the women in 2022, and Elko County simply warned him not to do it. *Id*. at 244-245. Jane Doe further alleges that Gabe bragged about paying money under the table to Elko officials to protect his brothel and

that Desert Rose permitted members of organized crime in the brothel. *Id*. at 246 and 248.[1] Again, counsel has failed to undertake even a cursory investigation in regard to these allegations, which are fabrications, misrepresentation and an incident that Jane Doe was not a witness to. There has never been an incident at the Desert Rose where owners or customers have brandished guns, nor was there any incident where one of the women was almost shot. Jane Doe's attorneys have simply embellished and fabricated an allegation to make it seem like an incident occurred at the Desert Rose when no incident at the location occurred. Desert Rose, nor its agents have paid money under the table, nor have they permitted organized crime in the brothel.

      Jane Doe alleges that she "was required to sign a non-disclosure agreement and agree to not say negative things about them." *Id* at ¶ 249  The non-disclosure agreement does not prohibit the women from talking negative about the brothel.

      Jane Doe alleges that she "owed Desert Rose money as a result of these practices" and that "most women at Desert Rose went into debt after being there." *Id* at ¶ 250-251. Again, Jane Doe does not owe money to Desert Rose, and contrary to the allegations, most women make very good money. No women is indebted to Desert Rose.

      Jane Doe alleges that "Desert Rose bullied Jane Doe when she wanted to go to the police and threatened her with their lawyers." *Id* at ¶ 252. Again, Desert Rose never threatened anyone to stop them from doing anything they wanted to do, certainly there was no threat if Jane Doe wanted to go to the police. Desert Rose did not threaten Jane Doe with their lawyers as Desert Rose did not have an attorney until after it was sued in this litigation.

      Jane Doe alleges that she was "threatened by Ornelas, was contacted by people with gang affiliations, and received indications that people were watching her." *Id* at ¶ 253. Again, there were no threats made by Ornelas and Jane Doe and her counsel have the text message communications between Ornelas and Jane Doe, and based on those text messages, would have seen that Jane Doe was not threatened in any way. Jane Doe does not provide any information about these so-called

---

[1] As to the allegations in paragraph 247, the Elko County Police department conducts a vetting process of every women pursuant to local ordinances and they specifically ask questions related to whether the women are being trafficked or have been trafficked in the past.

contacts with gang affiliations, (no name, gang affiliation), just fabricated statements of events that did not happen. As to her indication that people were watching her, Desert Rose has no involvement with having her watched, if that even occurred.

On August 30, 2024, Jane Doe filed a Plaintiff's Response to Court's Order to Show Cause, and again, Jane Doe made the same misrepresentations and fabricated allegations that were included in the Complaint. However, Jane Doe goes a step further and misrepresents and modifies her original allegations in an attempt to save its frivolous claims. Jane Doe alleges in the Complaint that Jane Doe "owed Desert Rose money as a result of these practices," yet in the recent response, now claims that "Jane Doe went into debt due to Desert Rose's policies. *See* ECF 115 (9:6). Jane Doe has never been indebted to Desert Rose.

Accordingly, Jane Doe and her attorneys and law firms violated FRCP 11 by filing a pleading that is unwarranted by existing law and lack evidence support.[2]

## II.  Argument

### A. *Statutory basis for sanctions*

Rule 11 of the Federal Rules of Civil Procedure provides, in part, that in presenting any document to the court, an attorney certified that to the best of his or her knowledge, information, and belief, and "after any inquiry, reasonable under the circumstances," the document is not being filed for an improper purpose, "the claims, defenses, and other legal contentions there are warranted by existing law," and the allegations and other factual contentions have evidentiary support. *See* Fed. R. Civ. P. 11(b)(1)-(3). If after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the court has discretion to impose sanctions on the attorneys' law firms or parties responsible for the violation. *See* Fed. R. Civ. P. 11(c)(2). The sanctions that are imposed, should be sufficient to deter the offender from engaging in similar frivolous claims in the future, and may include in addition to non-monetary sanctions and penalties and order directing

---

[2] Pursuant to FRCP 11, Desert Rose served Jane Doe and her attorneys with this motion 21 days before filing it in order to give plaintiff and her counsel the opportunity to voluntarily dismiss it complaint.

- 6 -

1  payment to the moving party of the reasonable attorney's fees, and other expenses incurred as a
2  direct result of the violation. *See* Fed. R. Civ. P. 11(c)(2).

3  Where, as here, the complaint and subsequent response to the Court's order to show cause are
4  the primary focus of rule 11 proceedings, a district court must conduct a two-prong inquiry to
5  determine one whether the complaint is legally or factually "baseless" from an objective perspective,
6  and to that the attorney has conducted "a reasonable and competent inquiry before signing and
7  filing." *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted). Indeed,
8  an "attorney has a duty prior to filing a complaint, not only to the conduct a reasonable factual
9  investigation, but also to perform adequate legal research that confirms whether the theoretical
10 underpinnings of the complaint are 'warranted by existing law or a good faith, argument for an
11 extension, modification or reversal of existing law.'" *Id.* An attorney's signature on a complaint is
12 tantamount to a warranty that the complaint is well grounded in an existing law. *See id.*

13 A court considering a motion pursuant to Rule 11 must do two things: (1) decide whether a
14 Rule 11 violation has occurred, and (2) decide whether to impose sanctions. *See McMahon v. Best*,
15 2000 WL 1071828 at 7 (N.D. Cal. 2000), *citing Warren v. Guelker*, 29 F.3d 1386, 1389.

16 The main objective of 11 is to deter baseless filings and curb litigation abuses. When a
17 complaint and other legal pleading is at issue with a Rule11 motion "a district court must conduct a
18 two-prong inquiry to determine, (1) whether the complaint [and other documents] is legally or
19 factually baseless from an objective perspective and (2) if the attorney has conducted "a reasonable
20 and confident inquiry before signing and filing in." *See Christian v. Mattel*, Inc., 286 F.3d 1118,
21 1127 (9th Cir. 2002) (citation omitted).

22 Jane Doe's complaint and responsive pleading are unwarranted by existing law and lack
23 evidentiary support, making sanctions pursuant to rule 11 proper.

24 Here, the National Center on Sexual Exploitation, on behalf of Jane Doe, filed the complaint
25 asserting two causes of actions that are clearly frivolous considering existing law and the facts and
26 circumstances of this case. In fact, even the most cursory review of the existing law and the facts of
27 this case would have revealed that each and every claim asserted by Jane Doe is a misrepresentation
28 and/or fabrication of the true facts and circumstances of this case.

1   Ms. Doe's complaint and responsive pleading to the Court's Order to show cause lacks
2   evidentiary support for the asserted causes of action. Thus, the complaint filed on behalf of Jane Doe
3   is not only legally frivolous, but factually frivolous as well. A reasonable and competent inquiry by
4   the attorneys at the National Center on Sexual Exploitation would have revealed that the allegations
5   by Jane Doe were false, fabricated or a misrepresentation. Jane Doe's counsel obviously failed to
6   undertake any meaningful investigation. Accordingly, and award of attorneys' fees, in favor of
7   Desert Rose, in addition to any sanction the court teams just improper, is appropriate.

8       III.    **Conclusion**,

9   Jane Doe's claims are clearly meritless. Counsel for Jane Doe, the attorneys with the
10  National Center of Sexual Exploitation, were given the opportunity, pursuant to Rule 11(c)(1)(a)(2)
11  to voluntarily dismiss the complaint. The Safe Harbor provision of Rule 11(c)(1)(a) would have
12  allowed Jane Doe to withdraw the meritless pleading and escape sanctions. *See, e.g. Barber v.*
13  *Miller*, 146 F.3d 707 (9th Cir. 1998). Counsel for plaintiff declined to dismiss the complaint and
14  made no effort to correct or amend the claims after being served with a Rule 11 motion. Counsel
15  for Jane Doe filed the complaint and responsive pleading without performing adequate legal research
16  or factual investigation to confirm whether the theoretical underpinnings of the complaint were
17  warranted by existing law or based upon a good faith argument for the extension, modification or
18  reversal of existing law. A reasonable and competent inquiry would have revealed that Jane Doe's
19  allegations were untrue, fabricated, misrepresented and baseless. Because Jane Doe and her attorneys
20  failed to withdraw the complaint after being provided with a copy of the motion for 11 sanctions,
21  their failure warrants the appropriate sanctions, including but not limited to an award of attorneys
22  fees and or precluding Jane Doe and her attorneys from filing any additional actions without first
23  showing a prima facie case, with supporting evidence.

24  Dated: September 13, 2024        THE O'MARA LAW FIRM, P.C.

25

26          /s/ David C. O'Mara, Esq.
            DAVID C. O'MARA, ESQ.
27          311 E. Liberty St
            Reno, NV 89501
28          775.323.1321
            david@omaralaw.net

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, I served the foregoing document by hand delivery and U.S. Mail.

The following parties were served via Hand Delivered:

Jason D. Guinasso
5371 Kietzke Lane
Reno, Nevada 89511

By Mail:

NATIONAL CENTER ON SEXUAL EXPLOITATION
Dani Binaculli Pintar
Victoria Hirsch
1201 F. Street, NW Ste 200
Washington, DC 20002

*Pro Hac Vice attorneys for Plaintiff*

Dated: September 13, 2024               /s/ David O'Mara
                                        David O'Mara