1  \*
   BRENT L. RYMAN, ESQ. (#008648)
2  PAUL M. BERTONE, ESQ. (#004533)
   ERICKSON, THORPE & SWAINSTON, LTD.
3  1885 South Arlington Ave., Suite 205
   Reno, Nevada 89509
4  Telephone: (775) 786-3930
   *Attorneys for Defendants*
5  *Nye, Elko and Storey Counties*

6

7

8

9

10            IN THE UNITED STATES DISTRICT COURT

11                FOR THE DISTRICT OF NEVADA

12

13

14  JANE DOE;
                                    Case No.: 3:24-cv-00065-MMD-CSD
15        Plaintiffs,
                                    **THE COUNTY DEFENDANTS'**
16  vs.                             **MOTION FOR ATTORNEY'S FEES**

17  JOSEPH LOMBARDO, Governor of Nevada,
    in his official capacity; AARON FORD,
18  Attorney General of Nevada, in his official
    capacity; NYE COUNTY; ELKO COUNTY;
19  STOREY COUNTY; WESTERN BEST, INC.
    D/B/A/ CHICKEN RANCH; WESTERN
20  BEST, LLC; DESERT ROSE CLUB, LLC;
    HACIENDA ROOMING HOUSE, INC.
21  D/B/A BELLA'S HACIENDA RANCH;
    MUSTANG RANCH PRODUCTIONS, LLC
22  d/b/a MUSTANG RANCH LOUNGE, LLC;
    LEONARD "LANCE' GILMAN, in his
23  official capacity; and LEONARD 'LANCE'
    GILMAN, in his individual capacity,
24
          Defendants.
25  _____/

26        COME NOW, Defendants, NYE COUNTY, ELKO COUNTY and

27  STOREY COUNTY (hereinafter, "the County Defendants," which includes the official

28  capacity suit against Defendant Storey County Commissioner Lance Gilman), by and through

ERICKSON, THORPE &
SWAINSTON, LTD.

1

1  their Attorneys of Record, ERICKSON, THORPE & SWAINSTON, LTD., BRENT L.
2  RYMAN, ESQ., and PAUL M. BERTONE, ESQ., and hereby file this motion seeking an
3  award of attorneys' fees pursuant to 28 U.S.C. § 1927 and 42 U.S.C. § 1988, as well as the
4  inherent power of this District Court to award such fees as sanctions.   Each of the County
5  Defendants therefore seeks an award for their total incurred attorney's fees to date, in the
6  amount of **$29,193.75 for Elko County, $34,548.75 for Storey County, and $27,190.00**
7  **for Nye County, for a total of $90,932.50, along with an additional $532.19 for travel**
8  **expenses,** as set forth in the supporting Declaration of Counsel and discussed below.[1]

9      The County Defendants' Motion for Attorneys' Fees is made and based upon all of
10 the pleadings and papers on file herein, as well as the following Memorandum of Points &
11 Authorities, and the arguments of counsel to be offered at the hearing of this matter.

12              **MEMORANDUM OF POINTS & AUTHORITIES**
13 **I.      BRIEF SUMMARY OF ACTION AND INSTANT MOTION**

14     Plaintiff, a former prostitute suing as "Jane Doe," sought to challenge Nevada's
15 system of legalized prostitution through claims against various Nevada state and county
16 defendants, and to also pursue claims for damages against the legal brothels where she plied
17 her chosen trade.  Following full briefing upon a series of motions to dismiss, the district
18 court issued an Order (ECF No. 112) dismissing all claims against all the public entity
19 Defendants, including these County Defendants.  While the action continues against the
20 brothel defendants, the District Court recently granted these County Defendants' motion for
21 certification of final judgment pursuant to Rule 54(b).  (*See*, ECF No. 158, p.6, ll. 11-13).
22 With that in mind, Defendants now seek an award for their total incurred attorney's fees to
23 date, in the amount of **$29,193.75 for Elko County, $34,548.75 for Storey County,**
24 **and $27,190.00 for Nye County, for a total of $90,932.50, along with an additional**
25 **$532.19 for travel expenses,** as set forth in the supporting Declaration of Counsel and
26 discussed below.  (*See*, Ryman Decl, ¶¶ 4-5).

27 _____

28     [1]. The undersigned's Declaration of Counsel in Support of Motion for Attorney's Fees, which includes this law firm's redacted invoices upon which fees are requested for each of the County Defendants, is attached hereto as "Exhibit 1."

ERICKSON, THORPE & SWAINSTON, LTD.

2

1    To that end, the County Defendants will demonstrate that with this third dismissal

2    from a repetitive series of near identical or hauntingly similar suits, there is now a sufficient

3    basis in the record to properly determine that this latest action in particular was completely

4    frivolous as to all the government defendants. Moreover, there is now a sufficient historical

5    record for this District Court to cast back a critical and discerning look over the various

6    dockets, and conclude that this entire series of suits, "a trilogy of sorts," each recast with

7    minor revisions from the ruins of the last, amounts to a inexcusable and vexatious campaign

8    of harassment against these governmental defendants. *See, Doe v. Lombardo*, 2024 WL

9    3886299, at *3 (D. Nev., Aug. 16, 2024) (comparing the procedural histories and similarities

10   in this trilogy of suits). As such, attorneys fees can and should be awarded via the Court's

11   choice of procedural and substantive vehicles, including 28 U.S.C. § 1927, 42 U.S.C. § 1988,

12   and/or the inherent power of court to award fees as sanctions.

13   **II.    STATEMENT OF FACTUAL AND PROCEDURAL HISTORY**

14   This suit represents the third in a series of related actions challenging Nevada's system

15   of legalized prostitution. All three suits sought to undermine and destroy that system, despite

16   the fact that Nevada's voters have repeatedly rejected attempts to end Nevada's half-century

17   long experiment in controlling this vice through licensing and regulation, brought by

18   common plaintiffs' counsel. In the latest incarnation of this unfolding effort, the still

19   anonymous Plaintiff "Jane Doe," a former prostitute, alleged violations of the Thirteenth

20   Amendment and the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Such

21   claims all derive from past employment at several brothels where, pursuant to license, she

22   legally provided sexual services to paying customers. (*See*, Pl's Compl. (ECF No. 1)).

23   In this most recent suit, Plaintiff brought her claims against three readily-divisible sets

24   of defendants, including (1) Nevada state government officials; (2) several Nevada counties

25   with licensed, operating brothels; and (3) the legal brothels (or related businesses) at which

26   Plaintiff worked. Doe also asserted third-party standing on behalf of all individuals

27   "currently being sex trafficked within legal brothels in Nevada," and as such sought

28   declaratory and injunctive relief preventing all defendants from implementing and enforcing

ERICKSON, THORPE &
SWAINSTON, LTD.

1   numerous prostitution-related Nevada state and local laws, as well as damages.  (*See*, Pl's
2   Compl. (ECF No. 1), pp. 45-46).  The County Defendants learned they had been sued from
3   press releases issued by Plaintiff's attorneys, apparently timed to coincide with the NFL
4   Super Bowl's appearance in Nevada to seek maximum notoriety for their latest filings.  The
5   County Defendants then sought and retained undersigned defense counsel – still defending
6   Nye County in the ongoing *Williams* case against these same attorneys – to provide a joint
7   defense against these frivolous and harassing claims, either directly or through their
8   membership in the Nevada Public Agency Insurance Pool.  (*See*, Ryman Decl, ¶¶ 2-3).

9       After briefing, the Court granted Motions to Dismiss from both the Nevada State and
10  County Defendants' (collectively the "government Defendants") under Rule 12(b)(1),
11  asserting a lack of subject matter jurisdiction over those respective governmental entities.
12  *See, Doe v. Lombardo*, 2024 WL 3886299 (D. Nev., Aug. 16, 2024).  As such, all claims
13  against the government defendants were dismissed, and with prejudice due to futility of
14  amendment.  *Id*., at 12.  Specifically, the decision to end this matter was based on the
15  Complaint's twin failures to (1) allege facts supporting claims that Doe's injuries were "fairly
16  traceable" to the government defendants' conduct, and (2) establish redressability as to the
17  claims for prospective relief as against those same defendants.  *Id*., at 8-10.

18      These County Defendants then moved for Certification and Entry of Final Judgment
19  Pursuant to FRCP Rule 54(b).  (*See*, Defs' Mot. (ECF No.120)).  The State defendants
20  joined (ECF Nos. 130 & 134), and final judgment status has now been certified as per
21  Rule 54(b).  (*See*, Order, ECF No. 158, p. 6, ll. 11-13).[2]  The time for these County
22  Defendants to seek attorneys' fees is now ripe as a result.  The County Defendants will
23  therefore illustrate that there was never any realistic hope of winning the claims against the
24  governmental defendants, as it was already soundly established by the prior two suits that
25  Article III constitutional standing was never going to be established.  Again, this inability to
26  establish standing was due to inability to plead traceable injuries back to the governmental

27

28      [2].  The District Court further clarified that judgment included Plaintiff's claims against
Defendant Lance Gilman in his official capacity as a Storey County Commissioner, as against
plaintiff Jane Doe.  (ECF No. 159).

defendants, and to establish redressability as to those same government defendants. *See*, *Charleston v. Nevada*, 423 F.Supp.3d 1020 (D. Nev. 2019), aff'd, 830 F.App'x 948 (9th Cir. 2020); *Williams v. Sisolak*, 2022 WL 2819842 (D. Nev. July 18, 2022), aff'd, 2024 WL 194180 (9th Cir., Jan. 18, 2024), cert. denied sub nom. *Williams v. Lombardo*, ___ U.S. ___, 2024 WL 3014535 (June 17, 2024).  Indeed, it was the very role which these governmental defendants played, as mere regulators in the overall architecture of the system of legalized prostitution, which assured that standing would never be afforded.  In both *Charleston* and *Williams*, the Ninth Circuit had already twice affirmed dismissal based on this exact lack of standing.  This suit should never have followed.

As will be illustrated herein, artfully removing reference to third-party culprits (panderers and racketeers) within the Complaint of the instant matter, or throwing in scant allegations about a county commissioner who also happened to own a brothel, were never going to overturn the results of the prior two suits.  And as will be further illustrated, and in detail, this action was filed *ab initio* in bad faith, and the prosecution of this matter was conducted throughout, unreasonably and vexatiously, so as to multiple the proceedings.  Moreover, this action was always more about generating press coverage in plaintiff's counsels' veritable crusade against legalized prostitution, than in actually winning any type of victory against these government defendants.  Finally, Defendants will demonstrate that the requested fee award is reasonable, justified and necessarily incurred in defense of Plaintiff's frivolous claims here.  (*See*, Ryman Decl, ¶¶ 1-7).

///
///
///
///
///
///
///
///


ERICKSON, THORPE & SWAINSTON, LTD.

1    **III.    LEGAL ARGUMENT**

2         **A.    Plaintiff's attorneys have unreasonably and vexatiously multiplied**
                  **proceedings so as to subject themselves to an award of sanctions, in the**
3                 **form of attorney fees, under 28 U.S.C. § 1927.**

4         This is a rare occasion upon which the County Defendants are forced to seek an award

5    of fees (technically sanctions) against opposing counsel, personally, under 28 U.S.C. § 1927,

6    in addition to their request for fees to be imposed against their anonymous client.[3]   As

7    distasteful as this request is to drafting counsel, Jane Doe's attorneys keep bringing the same

8    suit which they have already lost.  Seeking fees under Section 1927 – as a form of sanction –

9    permits the award of sanctions to be levied against counsel personally.  These Defendants

10   view an award of fees under 28 U.S.C. § 1927, or even the threat of such an award, as the

11   most effective means available to prevent the wasteful recycling of these same claims.

12        As such, 28 U.S.C. § 1927 provides that:

13                 Any attorney or other person admitted to conduct cases in any
                   court of the United States or any Territory thereof who so
14                 multiplies the proceedings in any case unreasonably and
                   vexatiously may be required by the court to satisfy personally
15                 the excess costs, expenses, and attorneys' fees reasonably
                   incurred because of such conduct.
16

17   *Id*.

18        "Section 1927 is the chief statutory tool by which a court can hold individual attorneys

19   liable for misconduct."  *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th

20   Cir. 2024).  "Courts wishing to impose sanctions under § 1927 must make a finding that the

21   attorney to be sanctioned acted with 'subjective bad faith.'"  *Id*.  "The monetary sanctions

22

23   ───────────────

24        [3].  This is not a request that undersigned counsel makes regularly, or takes lightly.  As a
     practical matter, since these County Defendants have again been dismissed before learning the
     identity of the National Center on Sexual Exploitation's current anonymous litigant, any award
25   must also be entered as judgment against her attorneys or it will not be worth the paper upon
     which it is written.  It seems increasingly likely that Jane Doe's identity will never be revealed.
26   Consequently, the County Defendants feel the need to request that any attorney's fee award be
     entered in the form of a judgment against Plaintiff and each of her attorneys, as well as the
27   National Center on Sexual Exploitation, jointly and severally.  This is especially appropriate in
     light of the fact that the National Center on Sexual Exploitation's "law center" continues to
28   solicit public donations through their website touting both this case and the *Williams* suit, with
     absolutely no related indication that these suits have been dismissed.  *See*,
     https://endsexualexploitation.org/nevada-is-not-safe-for-women/

ERICKSON, THORPE &
SWAINSTON, LTD.

1  may take the form of an award of attorney's fees to opposing counsel." *ADO Fin., AG v.*

2  *McDonnell Douglas Corp.,* 938 F. Supp. 590, 595 (C.D. Cal. 1996).

3      Most courts that have explicitly and directly addressed the issue of the timeliness of

4  a fee request under § 1927 have determined that such requests are best made at the close of

5  litigation, for a variety of reasons. *See, e.g., Vandeventer v. Wabash Nat. Corp.,* 893 F. Supp.

6  827, 845-46 (N.D. Ind. 1995); *see also, Home Gambling Network, Inc. v. Piche,* 2015 WL

7  1734928, at *19 (D. Nev., Apr. 16, 2015) ("§ 1927 motions must be made within a

8  'reasonable time' or 'as expeditiously as possible' after the entry of judgment, and should not

9  be 'unnecessarily or unreasonably delayed.'") (citations omitted).  As such it is perfectly

10  appropriate to request fees under §1927 concomitantly with any putative claim for fees under

11  42 U.S.C. § 1988, as the County Defendants do now.

12      Regarding the scope of available sanctions under § 1927, there is some authority

13  which suggests that initial filing of a complaint may not sanctioned under § 1927. *See, e.g.,*

14  *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 435 (9th Cir. 1996) ("The filing of a

15  complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not

16  be sanctioned pursuant to § 1927."); *In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 101 (3d

17  Cir. 2008) (§ 1927 explicitly covers only the multiplication of proceedings, and since the

18  proceedings in a case cannot be multiplied until there is a case, sanctions do not apply to

19  filing of initial complaint).   However, one of the recognized exceptions to this rule

20  concerning the inapplicability of §1927 to initial pleadings is the tactic of repeatedly filing

21  what is arguably the same case, involving the same issues which have already been

22  dismissed.   This is exactly what the defendants are contending here, and in such

23  circumstances, then even those initial complaints in the abusive "repeat" suits are subject to

24  the censure of § 1927. *See, e.g., Salley v. Truckee Meadows Water Auth.,* 2015 WL 1414038,

25  at *5 (D. Nev., Mar. 27, 2015) (where an attorney persists in pressing the same deficient

26  allegations in multiple complaints, he unreasonably and vexatiously multiplies the

27  proceedings within the meaning of Section § 1927); *Wages v. I.R.S.,* 915 F.2d 1230, 1235

28  (9th Cir. 1990) (by attempting to file an amended complaint that did not materially differ

ERICKSON, THORPE &
SWAINSTON, LTD.

7

1   from one which the district court had already concluded did not state a claim, plaintiff's

2   counsel violated §1927).

3          Here these County Defendants contend that the very filing of the complaint in this

4   *Doe v. Lombardo* action reflected the type of subjective bad faith needed to satisfy and justify

5   an award under §1927.  As will be show in greater detail below, the instant complaint was

6   a near mirror image of the complaint filed in *Williams v. Sisolak*, a previous action whose

7   dismissal had only been affirmed by the Ninth Circuit about three weeks prior to the

8   initiation of the current matter.  As such, attorney's fees should be assessed from the moment

9   the County Defendants began to defend this newest suit.  *See, e.g., Goodyear Tire & Rubber*

10  *Co. v. Haeger*, 581 U.S. 101, 110 (2017) ("If a plaintiff initiates a case in complete bad faith,

11  so that every cost of defense is attributable only to sanctioned behavior, the court may again

12  make a blanket award.").

13         With an eye toward this law, and the repetitive nature of these suits, let us now

14  examine the inherently abusive nature of this third and final suit, in particular.  To do this

15  will require some historical perspective, beginning with the similarity of the respective

16  complaints, and in the ensconced result of dismissal for lack of standing as to the

17  governmental defendants,  now plainly illustrated by all three suits.

18              **1.    Plaintiffs cannot keep bringing the same failed claims.**

19                  **a.    The *Charleston* allegations and dismissal.**

20         As has been discussed throughout this case, the attorneys involved in this litigation

21  are believed to have first pursued similar claims starting with the First Amended Complaint

22  in *Charleston v. Nevada*, 3:19-cv-00107-MMD-WGC (ECF No. 12) (filed 03/18/19).  There

23  the named plaintiffs made allegations under a variety of federal statutes designed to thwart

24  sex trafficking, and maintained that such federal statues preempted Nevada state law

25  legalizing and regulating prostitution.  Plaintiffs also proffered claims under 42 U.S.C. §1983

26  for various violations of the Fourteenth Amendment, and sought declaratory and injunctive

27  relief.  *Id*.  And while the *Charleston* amended complaint seems to contain its fair share of

28  surplusage chronicling the salacious evils of commercialized prostitution, neither these

ERICKSON, THORPE &
SWAINSTON, LTD.

8

County Defendants nor these moving counsel were involved in this suit. And because that suit is believed to represent these attorneys' first attack on legalized prostitution in Nevada, the movants are loathe to attribute any sort of "bad faith" to its drafting or filing.

Nonetheless, the fact remains that this District Court dismissed the action against those State Defendants for lack of subject matter jurisdiction, and this result was eventually affirmed on appeal. More specifically, the District Court determined that "[t]o survive a motion to dismiss for lack of Article III standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than attenuated." *Charleston v. Nevada*, 423 F.Supp.3d 1020, 1027 (D. Nev. 2019). This the plaintiffs failed to do. "[T]hat Plaintiffs were unlawfully forced into prostitution and sex trafficked in Nevada and other states is not sufficiently traceable to Nevada laws permitting legal prostitution as opposed to other factors, namely the illicit behaviors of private bad actors." *Id.*, 423 F.Supp. at 1028. Moreover, another fatal component of constitutional standing was not met. "Plaintiffs allege [sic] do not demonstrate a likelihood that the primary relief Plaintiffs request – declaratory relief and injunction concerning legal prostitution in Nevada – will redress their alleged injuries as a result of being illegally forced into prostitution and being sex trafficked." *Id.*

And of course this end result was affirmed on appeal. "To have standing '[t]o seek injunctive relief, a plaintiff must show that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical . . . .'" *Charleston v. Nevada*, 830 F.App'x 948, 949 (9th Cir. 2020) (*quoting, Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Appellants fail to show they are under threat of an actual and imminent injury. . . . Because Appellants fail to show injury, we do not reach the remaining requirements for standing." *Charleston v. Nevada*, 830 F.App'x at 949.

///

///

///



### b.    The *Williams* allegations and dismissal.

To the second action's credit, the Fist Amended Complaint for Declaratory and Injunctive Relief in *Williams v. Sisolak*, 2:21-cv-01676-APG-VCF, filed 09/10/21 (ECF No. 1) (later amended to add a second "Jane Doe") involved a fairly substantial rewrite from its immediate predecessor in the prior action, and attempted to establish liability against the government defendants based on at least one arguably new theory.  Nye County was a Defendant in that suit, represented by undersigned counsel.  The *Williams* suit sought to eliminate legalized prostitution by contending that the same violated the constitutional ban on slavery under the 13th Amendment, as well as again relying on federal laws prohibiting sex trafficking, specifically 18 U.S.C. §§ 1591(A)(1)&(2) and 1595.  (*See*, Pls' Am. Compl. (ECF No. 49), pp. 50-53, ll. 4-20).  The *Williams* suit also sought various declaratory relief ending legalized prostitution.  (Pls' Am. Compl. (ECF No. 49), pp. 54-55, ll. 3-8).

Unfortunately, this new charging document was absolutely chocked-full of irrelevant "studies" and other academic articles chronicling the evils of prostitution, over a course of centuries and spanning the globe.  This necessarily forced any unfortunate reader of this charging document to endure 50 pages, and hundreds of irrelevant averments, before finally reaching even the first claim for relief.  But none of these questionable drafting issues mattered in the least as far as saving the action from its inherent core flaw, namely that subject matter jurisdiction could not be extended to these government defendants because Article III standing could not be established.  As determined by the District Court in response to numerous motions to dismiss,

> Nevada's legal system of prostitution is, at best, an attenuated cause of the plaintiffs' alleged injuries.  The plaintiffs reference numerous third-party actors throughout the First Amended Complaint "whose independent decisions collectively [had] a significant effect on the plaintiffs' injuries."
>
> *    *    *
>
> Because numerous third parties and their independent actions collectively impacted the plaintiffs in a significant way, and because the out-of-state origins and continuations of the plaintiffs' trafficking further attenuate Nevada's role in their respective ordeals, the plaintiffs' alleged causal chain is too weak to support standing against the City and State Defendants.

1           *See, Charleston v. Nev.*, 423 F.Supp.3d 1020, 1027-28 (D. Nev.
2           2019) (dismissing comparable action, including some identical
          parties, for lack of standing), aff'd, 830 F.App'x 948 (9th Cir.
3           2020). Consequently, I dismiss with prejudice the plaintiffs'
          claims against Clark County, Nye County, the City of Las
4           Vegas, Steve Sisolak, and Aaron Ford.

5   *Williams v. Sisolak*, 2022 WL 2819842, at \*4 (D. Nev., July 18, 2022) (Gordon, J.).

6       The Ninth Circuit found this reasoning sound, and ultimately the United States

7   Supreme Court declined to grant certiorari, or otherwise disturb the final result:

8           The district court correctly concluded that plaintiffs lack Article
          III standing to sue the government defendants because plaintiffs'
9           injuries are the result of allegedly illegal third-party conduct in
          Nevada's commercial sex industry. While the government
10           defendants have various roles in regulating that industry, the
          injuries plaintiffs suffered were allegedly inflicted by the
11           "independent action[s]" of third parties, *Lujan*, 504 U.S. at
          560 – namely, the traffickers, escort agencies, strip clubs, and
12           brothels who were also named in their complaint. Plaintiffs'
          allegations are therefore insufficient to support traceability
13           under Article III.

14   *Williams v. Sisolak*, 2024 WL 194180, at \*2 (9th Cir., Jan. 18, 2024), cert. denied sub nom.

15   *Williams v. Lombardo*, 144 S.Ct. 2659, 219 L.Ed.2d 1285 (2024).

16              **c.**    **The *Doe* allegations and dismissal.**

17       Which leads this analysis to the "third strike" (so to speak), the third complaint and

18   the charging document in the instant action, and the one which best represents a real abuse

19   of judicial process. Exactly 21 days – a mere three weeks – after the Ninth Circuit confirmed

20   a lack of subject matter jurisdiction over these government defendants, these defendants,

21   including Nye County but now also adding Storey (with County Commissioner Lance

22   Gilman in his official capacity) and Elko Counties, were again facing the same claims, as if

23   the immediately prior suit had never happened. (*See, Doe v. Lombardo*, No. 3:24-cv-00065,

24   filed 02/08/24 (ECF No. 1)). And if this Court harbors any doubt as to the mirror image

25   quality between these two respective suits, it is invited to review the chart prepared by these

26   defense counsel in support of their motion to dismiss, wherein 148 common or identical

27   allegations between the two suits are explicitly delineated in support of this common identity.

28   (*See*, County Defs' Motion to Dismiss, Exh. 1 (ECF No. 43-1), pp. 2-6).



1    Moreover, almost all of the seventy-plus footnotes are identical between the respective

2    complaints (only the numbering is different).  And from their very first appearance in this

3    suit, these county defendants were bemoaning the travesty of forcing these public entities to

4    litigate the same suit all over again, and the fact that it did not take a crystal ball to anticipate

5    the end result would be exactly the same.

6         Before addressing any other topic, indeed before even turning
         the focus to the particular "Jane Doe" in this matter,
7         Defendantsfeel compelled to inform this Court of what they
         rightfully view as the glaring, substantive defect present in this
8         litigation, at least as against these County Defendants. The
         majority of Plaintiff's Complaint (ECF No. 1) is literally a
9         mirror image – with large swaths of the document lifted
         allegation for allegation, and even reflecting identical claims for
10        relief – of a prior failed suit, filed in this very District Court, by
         these same Plaintiff's attorneys. That failed suit also employed
11        "Jane Does" as party Plaintiffs, casting near-identical allegations
         of purported wrongdoing against certain governmental
12        Defendants, including but not limited to Nye County, who is
         again present in this current suit. Defendants bring this to the
13        attention of the District Court because that prior suit was
         dismissed for lack of subject matter jurisdiction as against those
14        governmental Defendants, and the current County Defendants
         respectfully submit there is no reason for this suit to end any
15        differently.

16   (*See*, County Defs' Motion to Dismiss re: Pseudonym (ECF No. 5), p. 2, ll. 16-28).

17        But cutting right to the chase here, it was eventually determined that there were

18   exactly two pertinent differences between the respective second and third complaints.  To

19   wit: First, the third complaint artfully omitted reference to the third-party bad actors (the

20   pimps, panderers and racketeers directly responsible for plaintiff's alleged injuries), as if this

21   drafting omission would remove them from the equation or the court's consideration.  And

22   second, the third complaint added Storey County Commissioner Lance Gilman, in his official

23   and individual capacity, as a Defendant based on his brothel ownership, which Plaintiff

24   apparently believes should preclude him from holding public office.

25        In briefing, the County Defendants contended omitting reference to the pimps was

26   nothing but artful pleading, and an unmitigated was a waste of everyone's time:

27   ///

28   ///


ERICKSON, THORPE &
SWAINSTON, LTD.

12

> [I]t cannot be that by simply not naming the undisclosed pimps who purportedly coerced this Plaintiff into her sordid state of affairs within the initial caption of the Complaint, that she has now discovered a magical means by which to confer standing over these County Defendants where otherwise there is none. Whether named or not, those independent criminal actors in this equation are still out there, and still serve to weaken any connection to the County Defendants.

(*See*, County Defs' Reply Brief (ECF No. 62), p.7, ll. 9-14).

And though Plaintiff maintained that naming Mr. Gilman in the instant matter was a game-changer as far as establishing standing, these Defendants demonstrated that the *Williams* complaint had contained allegations aimed at a local brothel owner who was also a county commission and who sat on the local brothel board – even if it failed to name Mr. Gilman specifically – and those allegations had not prevented that action from being readily dismissed.  (*See*, Reply Brief re: Pseudonym (ECF No. 16), p.6, ll. 4-28); (*see also*, County Defs' Mot. Dismiss (ECF No. 43), pp. 15-16, ll. 11-22); (County Defs' Reply Brief (ECF No. 62), pp. 8-9, ll. 7-7 (both offering further argument on the uselessness of naming Commissioner Gilman toward establishing standing).

And as anticipated, the eventual order of dismissal, in addition to finding what were by now the *pro forma*, usual pleading failures in establishing standing (*i.e.,* not fairly traceable and no redressability), also confirmed that these two pleading tactics brought Plaintiff's counsel no closer to success:

> To start, it is true that unlike in *Williams*, Doe generally avoids directly listing or naming third parties responsible for illegal or abusive conduct. But Plaintiff does not erase third parties from the picture merely by attempting to redact references to them. Where Plaintiff asserts that Government Defendants themselves "facilitated" and "enabled" trafficking, her underlying factual allegations nevertheless rely on the existence of independent decision-makers – including brothels, their owners, and clients.

*See, Doe v. Lombardo*, 2024 WL 3886299, at *6 (D. Nev., Aug. 16, 2024).

///

///

///

ERICKSON, THORPE &
SWAINSTON, LTD.

1
2
3
4
5
6

> Finally, Plaintiff makes much of Defendant Lance Gilman's status as both Mustang Ranch's owner and Storey County Commissioner, as well as member of the County Brothel Licensing Board, and asserts that Storey County "perpetrates" sex trafficking through this relationship. (ECF No. 52 at 12.) But simply alleging that Gilman's dual role creates a conflict of interest does nothing to bolster traceability with regard to Storey County, let alone other counties. And to the extent Plaintiff asserts that "Commissioner Gilman would require the women to break various prostitution laws," this again does not implicate the county in any causal chain.

7   *Id*., at *8 (internal citation omitted).

8        Omitting reference to the third-party bad actors and actually naming Commissioner

9   Gilman are the only relevant differences between the *Williams* and the *Doe v. Lombardo*

10  complaints.  Otherwise this Plaintiff (who presumably is not one of the same "Jane Does"

11  from the prior suit) levied the same theories in the third suit which had already been rejected

12  in the second (and in a broader sense in the first as well).  Whether this minor revision was

13  sufficient to take the instant matter out of the realm of complete frivolousness or bad faith

14  is of course left to the sound discretion of the Court.  But the above-described pleading

15  tactics can easily fall into those cases cited above (*Salley v. Truckee Meadows Water Auth*

16  and *Wages v. I.R.S.*) prohibiting counsel from refiling the same failed case, using the same

17  recycled, failed claims with only minor revisions, and thus harassing a common defendant

18  on some vague prayer of a different result.  *See also*, *DNA Sports Performance Lab, Inc. v.*

19  *Major League Baseball*, 2020 WL 6290374, at *7-8 (N.D. Cal., Oct. 27, 2020), aff'd sub

20  nom., *Nix v. Major League Baseball*, 2022 WL 4482455 (9th Cir., Sept. 27, 2022) (where

21  after dismissal, plaintiff simply developed new theories and filed suit all over again,

22  amounting to a veritable crusade and entrenched campaign of harassment against defendant,

23  §1927 sanctions for all defense fees are appropriate); *Aldini AG v. Silvaco, Inc*., 2023 WL

24  7308079, at *1 (N.D. Cal., Nov. 6, 2023) ("A party's history of repeatedly filing suits arising

25  out of the same original circumstances may constitute evidence of harassment sufficient to

26  impose sanctions.");  *Davey v. Dolan*, 453 F.Supp.2d 749, 757 (S.D.N.Y. 2006), aff'd, 292

27  F.App'x 127 (2d Cir. 2008) (where attorney keeps bringing the same suit which was already

28  lost, effectively recycling claims, this conduct violates §1927).

ERICKSON, THORPE &
SWAINSTON, LTD.

14

1  **2.    Even if the Court determines this third action was not completely**
2  **frivolous, Plaintiff's counsel engaged in abusive tactics, justifying**
    **an award of fees.**

3       Under 28 U.S.C. § 1927, even if this latter action is not deemed completely frivolous

4  by this District Court, many of Plaintiff's counsels' questionable pleading and other litigation

5  tactics may be attacked as "unreasonably multiplying pleadings." Here the Court is presented

6  with a target-rich environment, where there are several such tactics to choose from.

7       To start, the Complaint (ECF No. 1) includes hundreds of averments and dozens of

8  footnotes of useless historical surplusage (again going back centuries and traversing

9  continents) on the evils of slavery and prostitution, so as to render answering it, or even

10 understanding it, exceedingly difficult. In other words, it is a classic "shotgun" pleading.

11 And the use of such pleading tactics violates §1927. *See, e.g., Squitieri v. Nocco*, 2022 WL

12 1136885, at *5 (M.D. Fla., Apr. 18, 2022) (use of shotgun pleadings which mirror claims

13 already identified as not affording relief, 1927 fees awarded); *Physicians Care All., LLC v.*

14 *All Day Beauty*, LLC, 2019 WL 176782, at *2 (D. Ariz., Jan. 11, 2019) ("Shotgun pleadings

15 are pleadings that overwhelm defendants with an unclear mass of allegations and make it

16 difficult or impossible for defendants to make informed responses to the plaintiff's

17 allegations."); *Sibille v. Davis*, 2014 WL 12738934, at *2 (M.D. Ala., June 10, 2014) (noting

18 that the use of shotgun pleadings inevitably leads to "discovery goat rodeo[s]").

19      These County Defendants felt strongly in the success of their motions to dismiss, and

20 determined no need to attack the complaint on its "shotgun pleading" style, since it was

21 already fatally flawed on standing issues. But other defendants, particularly defendants who

22 might be called upon to actually answer that confusing tome, and who might ultimately face

23 the inevitable discovery goat rodeo to follow, rightfully objected to the uselessness of much

24 of its verbiage. (*See, e.g.*, Mustang Ranch's MTD re: Rule 8(a) (ECF No.6)). That motion

25 was perfectly proper, and easily anticipated in view of the Complaint's glaring pleading

26 errors.[4]

27

28      [4]. Defendants who made such attacks could conceivably be entitled to fees under § 1927,
    because there is at least some authority suggesting that as soon as vexatious behavior multiplies
    the proceedings, then a request for fees as sanctions under 1927 may become ripe. *See, e.g.,*

ERICKSON, THORPE &
SWAINSTON, LTD.

1    Next, let us turn Plaintiff's counsels' rather questionable decision to ignore the

2   procedural requirements for being admitted *pro hac vice*.  Under local rule, prospective pro

3   hac vice counsel enjoy fourteen (14) days from their "first appearance" in the case to comply

4   with <u>all</u> provisions of the rule.  *See*, LR IA 11-2(e).  Instead, they simply ignored the local

5   rules and waited for almost five months to get even the first of these requests for admission

6   on file.  (*See, e.g.*, Pro Hac Vice Apps. (ECF Nos. 87, 88, 89)).  Such conduct could be seen

7   to demonstrate bad faith and ulterior, nefarious motives.

8    Aware this case involved foreign counsel bent on filing the same sham litigation over

9   and over against their varying clients, defense counsel endeavored to bring Plaintiffs'

10  counsel's failures to the attention of the Court via motions contesting said admission.  (*See,*

11  *e.g.*, Motion Deny PHV Admission (ECF No. 11); Reply (ECF No. 23); Opp. to Petitions

12  (ECF No. 90)).  These motions raised various procedural and substantive issues, especially

13  noting the inherent abuse of conducting a media publicity tour attempting to generate animus

14  toward Defendants (and to of course generate more donations to NCOSE and to thus fund

15  the continuing cause of eliminating legalized prostitution in Nevada), all undertaken before

16  plaintiffs' counsel was even admitted in the matter, in glaring violation of NRPC Rule 3.6.

17  (*See*, (ECF No. 11), pp. 8-13, ll. 5-10; (ECF No. 23), pp. 11-12, ll. 5-2).

18   But the most revealing discovery regarding the *pro hac vice* failings must be credited

19  to counsel for Western Best, who uncovered that both Ms. Price and Mr. Gentala had failed

20  to disclose in their application materials and in their sworn statements multiple prior actions

21  wherein they had been admitted in Nevada, pro hac vice.  (*See*, Opp. Mots to Practice (ECF

22  No. 92), p. 4, ll. 13-21).  These omissions were material based on the following passage in

23  the applicable local rule: "Absent special circumstances and a showing of good cause,

24  repeated appearances by any attorney under this rule will be cause for denial of the attorney's

25

26  *Kelly v. TD Bank USA, N.A.*, 2022 WL 4791981, at *12 (D. Or., Sept. 6, 2022), report and

27  recommendation adopted, 2022 WL 4776347 (D. Or., Oct. 3, 2022) (no need to question whether
    a party is eligible for a fee award as a prevailing party, since § 1927 does not require a prevailing

28  party analysis); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980) ("§ 1927 does not
    distinguish between winners and losers . . . [i]t is concerned only with limiting the abuse of court
    processes.").

ERICKSON, THORPE &
SWAINSTON, LTD.

verified petition. (1) It is presumed in civil and criminal cases that more than five appearances by any attorney granted under this rule in a three-year period is excessive use of this rule." *See*, LR IA 11-2(f) & (f)(1). Such omissions could therefore be seen as attempts to keep counsel's options open for future attacks on Nevada legalized prostitution, which will require future pro hac vice admission. And if nothing else, these omissions in sworn statements lend themselves to the appearance on impropriety.

It was certainly within this District Court's discretion to overlook these failings and admit counsel for NCOSE. *See*, (ECF Nos. 106, 107, 108, 118 and 119). Yet Plaintiff's counsels' refusals to obey local rules spawned its own viciously contested motion mini-war, and that conduct unreasonably and vexatiously multiplied proceedings so as to justify fees under Section 1927.

**B.    Even if this action was not filed in subjective bad faith, it was unreasonable, frivolous and without foundation, justifying an award under of fees under 42 U.S.C. § 1988.**

Should this Court determine the action was not filed in subjective bad faith, an award of fees is still appropriate under 42 U.S.C. §1988 against Plaintiff, since this action against these County Defendants was facially frivolous, without foundation and unreasonable, and never had the slightest chance of success against these Defendants.

Generally, attorney's fees should only be awarded to a prevailing defendant under 42 U.S.C. § 1988 when the court finds that a plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. *See, e.g., Holmes v. Liberty Dialysis Grp., LLC*, 2022 WL 22872024, at *1 (D. Nev., July 11, 2022). "Section 1988 is asymmetrical, awarding attorney's fees to civil rights plaintiffs if they are prevailing parties, but awarding attorney's fees to prevailing civil rights defendants only if plaintiffs' claims are frivolous." *Merry v. Sandoval*, 2019 WL 6332159, at *3 (D. Nev., Nov. 8, 2019), *report and recommendation adopted*, 2019 WL 6329333 (D. Nev., Nov. 25, 2019). Though it is an uphill climb to access an award of fees against a plaintiff in a civil rights suit, it is appropriate here. Because unless Plaintiff suffers some sanction for her abuse of the court system, her counsel will unquestionably again conduct some minor rework of the complaint,

and we will all find ourselves right back here in a year or two, wrestling with the resurrected ghost of a suit which government defendants have thrice buried.

"Federal courts have the inherent power to punish conduct which abuses the judicial process, including accessing attorneys' fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Wang v. Nevada Sys. of Higher Educ.*, 2022 WL 95428, at *4 (D. Nev., Jan. 10, 2022), *rev'd in part*, 2022 WL 17336215 (9th Cir., Nov. 30, 2022). The policies underlying fee awards should not be interpreted so as to immunize plaintiffs with potentially unfounded claims from the usual rules that govern litigants. *Id*. "As the Ninth Circuit has observed, '[t]he only purpose served by awarding attorneys' fees to a prevailing defendant is to **discourage frivolous litigation**.'" *Id.*, (emphasis added). "A claim is frivolous for purposes of 42 U.S.C. § 1988, only when the result is obvious or the . . . arguments of error are wholly without merit. A claim may also be deemed frivolous if it is without legal foundation or if its outcome is predetermined by a review of relevant law." *McCracken v. Reg'l Transportation Comm'n of S. Nevada*, 2020 WL 13610761, at *2 (D. Nev., Apr. 13, 2020) (internal citations and quotations omitted).

"By frivolous, the court means that the litigation must be meritless in the sense that it is groundless or without foundation. In other words litigation is frivolous if the result is obvious or the arguments are wholly without merit." *Quinn v. Thomas*, 2012 WL 3516516, at *1 (D. Nev., Aug. 15, 2012).

> The American Rule instructs that each party in litigation bears its own attorneys' fees in the absence of a rule, statute, or contract authorizing an award of fees. Under 42 U.S.C. § 1988, district courts have the discretion to award fees to the prevailing party in federal civil-rights cases. But attorneys' fees should only be awarded to a prevailing defendant when the court finds that the plaintiffs' action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. An action becomes frivolous when the result appears obvious or the arguments are wholly without merit, and a defendant can recover if the plaintiff violates this standard at any point during the litigation, not just at the inception.

*Branch-Noto v. Sisolak*, 2022 WL 2955108, at *2 (D. Nev., July 26, 2022).

///



18

1    "Under . . . Section 1988, a Court may award attorney's fees if a plaintiff's suit

2    includes both frivolous and non-frivolous claims, but a defendant 'is not entitled to any fees

3    arising from these non-frivolous charges.'" *Friedmann v. Franklin Pierce Pub. Sch.*, 2025

4    WL 254817, at *3 (W.D. Wash., Jan. 21, 2025) (*quoting, Fox v. Vice*, 563 U.S. 826, 834

5    (2011)). Here, all claims brought against these government defendants are frivolous, as their

6    dismissal was the obvious result of this suit.  Hence there is no need to parse fees with

7    legitimate claims.  And "[a] litigant's duty to avoid frivolous litigation is a continuing

8    obligation.  Even if the complaint was not initially frivolous, continuing with such claim in

9    bad faith provides an even stronger basis for an award of attorneys' fees." *Spangler v. Cnty.*

10   *of Ventura*, 2018 WL 5304767, at *2 (C.D. Cal., Oct. 24, 2018).

11        Most critically for our purposes here, in determining the propriety of a fee award

12   against a plaintiff, courts may also consider whether the plaintiff has a history of bringing

13   baseless and frivolous claims, of wasting both litigants resources as well as judicial

14   resources, and whether previous fee awards have been levied.  *Garmong v. Tahoe Regional*

15   *Planning Agency*, 2022 WL 2093475, at *1-2 (D. Nev., May 19, 2022) (given the frivolous

16   nature of the current case and plaintiff's habit of raising frivolous claims, court awarding

17   defendants' requested fee under 42 U.S.C. § 1988(b) and NRS 18.010).

18        "[T]he district court must resist the understandable temptation to engage in *post hoc*

19   reasoning and find that the action was without foundation simply because a plaintiff has

20   unsuccessfully pursued a claim." *Schwartz v. Clark Cnty., Nev.*, 2014 WL 4541230, at *1

21   (D. Nev., Sept. 11, 2014).  Nonetheless, "attorney's fee provisions are intended to protect

22   defendants from litigation having no legal or factual basis." *Id.*  "Finally, a prevailing party

23   is entitled to fees arising from pursuit of a motion for fees." *Schneider v. Elko Cnty. Sheriff's*

24   *Dep't*, 17 F.Supp.2d 1162, 1164 (D. Nev. 1998).

25        Where cursory research would have revealed the frivolous nature of the claims,

26   attorney's fees have been awarded to prevailing defendants.  This is a case that should have

27   never been filed – and certainly should not have been filed twice, or even three times. *See,*

28   *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998) (if reasonable inquiry into applicable

1   facts and law have been conducted, plaintiff would have discovered the insufficiency of his
2   civil rights claim, hence claim was frivolous and meritless and justified award to prevailing
3   defendant); *Shields v. Shetler*, 120 FRD 123, 128 (D. Colo. 1988) (even the most cursory of
4   research would have revealed that under the facts, no claims were stated under statutes relied
5   upon, hence attorney's fees appropriate to prevailing defendant in civil rights action which
6   was dismissed on motion).

7       Here, it is the weak attempt at artful pleading delineated above (in the section on 1927
8   fee request) which best reveals the frivolous and unreasonable of this instant suit.  Three
9   weeks after the dismissal of the *Williams* matter was affirmed by the Ninth Circuit, Plaintiff's
10  counsel saw fit to file a near-identical complaint, lodging identical claims for relief,
11  apparently with the intent of issuing a timely press release seeking notoriety attendant to the
12  Las Vegas Super Bowl.  And the "tweaks" added to this Plaintiff's complaint further show
13  this litigation to be a sham, intended only for publicity.

14      As for the claim against the county commissioner based on his "dual role" of
15  maintaining ownership interest in a brothel, had counsel undertaken a little research, they
16  may have uncovered that "[a]n indirect theory of traceability requires that the government
17  cajole, coerce, command." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021).  Instead of
18  attempting to carefully tailor the complaint with some allegations which might actually afford
19  eventual liability against Mr. Gilman and confer constitutional standing against the
20  government defendants, plaintiff was far more interested in generating potential media bites
21  chronicling Mr. Gilman's purportedly dissolute character, bemoaning that "Mr. Gilman
22  exploits women to make money.  Indeed, the women are objects to be bought, sold, and
23  disposed of for men's entertainment." (*See*, *e.g.*, Compl., *Doe v. Lombardo*,
24  3:24-cv-00065-MMD-CLB, filed 02/08/24 (ECF No.1), p. 26, ll. 8-9).

25      Read any and all of the allegations against Gilman in that charging document, and the
26  priorities of plaintiff's counsel will become abundantly clear.  The more one reads, the more
27  plain it becomes that the animus behind drafting that document was wholly concerned with
28  mud-slinging, and cared nothing for establishing Article III standing.  This conclusion was

ERICKSON, THORPE &
SWAINSTON, LTD.

1  bolstered by the Court's conclusion that "simply alleging that Gilman's dual role creates a

2  conflict of interest does nothing to bolster traceability with regard to Storey County, let alone

3  other counties." *Doe v. Lombardo*, 2024 WL 3886299, at *8 (D. Nev., Aug. 16, 2024). And

4  even if this court is inclined view this claim against Mr. Gilman as something slightly more

5  than frivolous, the claim only pertains and relates to Storey County, and bore no hope of

6  establishing standing against Nye or Elko Counties.

7       Nor was the attempt to remove references to the culpable third-parties (the pimps and

8  panderers) in the instant complaint ever going to serve to successfully shift blame from those

9  third-parties and to the government entities. And after a series of these types of rulings: "The

10 district court correctly concluded that plaintiffs lack Article III standing to sue the

11 government defendants because plaintiffs' injuries are the result of allegedly illegal

12 third-party conduct in Nevada's commercial sex industry." *Williams v. Sisolak*, 2024 WL

13 194180, at *2. By this third suit, it was plain where culpability for injury to these former

14 prostitutes (if any) actually lay: At the feet of criminal actors. This attempt to remove

15 reference to the real culprits was based, at most, on wishful thinking, because it certainly had

16 no basis in law, which was confirmed by this court's dismissal of the government defendants.

17 After recognizing that the court in *Williams* had actually emphasized the attenuating impact

18 external traffickers, this court concluded that "[l]ike in *Williams*, generic allegations against

19 Government Defendants which rest on their mere failure to intervene in otherwise illegal

20 behavior are not, by themselves, adequate to establish traceability." *Doe v. Lombardo*, 2024

21 WL 3886299, at *6 (D. Nev., Aug. 16, 2024).

22      It was obvious that such slight changes were never going establish standing. Mere

23 artful pleading tactics will never rob these governmental defendants of the "attenuation of

24 regulators." *Doe v. Lombardo*, 2024 WL 3886299, at *10. And as such, this suit was

25 frivolous, unreasonable and without foundation, and Plaintiff, or at least her counsel, knew

26 it doomed to fail. Naming these government defendants was always more about generating

27 publicity, or slinging mud, because Plaintiff's counsel knew these claims had already been

28 rejected twice, and had to know that they would be rejected again.

ERICKSON, THORPE &
SWAINSTON, LTD.

21

**C.    The County Defendants' fee request is reasonable and supported.**

This fee request is made in compliance with FRCP Rule 54(d)(2)(B) and LR 54-14(a) & (b).  As set forth in the supporting Declaration of Counsel, each of the County Defendants seeks an award for their separately-incurred attorney's fees to date, in the amount of **$29,193.75 for Elko County, $34,548.75 for Storey County, and $27,190.00 for Nye County, for a total of $90,932.50, along with an additional $532.19 for travel expenses**.  These bills were reasonably and necessarily incurred in defense of this case, and this firm's redacted invoices are attached.  (*See*, Ryman Decl., ¶¶ 2-8).  Since this litigation remains ongoing, and of course because potential similar cases are expected to appear in the future, redaction of attorney-client and proprietary material was required and simply cannot be revealed to Plaintiff's counsel; however, should the District Court wish to review any of the redacted invoices *in camera* the County Defendants will certainly adhere to any Order for the same.

Under any fee analysis, the benchmark for an award of attorney's fees under § 1988 is "reasonableness."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In determining attorney's fees under Section 1988, the district court "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  To make the determination of reasonableness, court may use either current or historical prevailing market rates, and rely upon its own familiarity with the local legal market.  *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 908 (9th Cir.1995); *Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011).  However, it is well established that "by and large, the court should defer to the winning lawyer's professional judgment as to how much time was required to spend on the case. . . ."  *See, Moreno,* 564 F.3d at 1112.

Here, undersigned counsel humbly submits that the actions undertaken to defend this case were extremely reasonable and necessary, and that the fees to the Pool and Nye County in this matter are appropriate.  (*See*, Ryman Decl., ¶¶ 7-8).

///



22

**D.     The Court enjoys power to award fees for any perceived abuse.**

To whatever extent that the court may determine that full fees are not appropriate under § 1927 or § 1988, the County Defendants would point out that the Court retains the ability to award fees under its inherent powers. *See, e.g., Femino v. NFA Corp.*, 2007 WL 2012396, at *2 (D.R.I., June 6, 2007), report and recommendation adopted, 2007 WL 1988460 (D.R.I., June 29, 2007) (plaintiff accused of "repeatedly rais[ing] identical or similar claims making only slight changes at each pass," yet could not be sanctioned under § 1927, instead sanctioned under court's inherent power). And it would be appropriate to award partial fees or other lesser sanction against Plaintiff's counsel for repetitively bringing this same suit over and over again, without a realistic hope of a different result, to discourage such practice.

"The Court's inherent authority to levy sanctions, including attorney fees, where a party has acted in bad faith, vexatiously or for oppressive reasons is clear." *Hussein v. Dugan*, 2010 WL 2674637, at *1-2 (D. Nev., June 30, 2010). The County Defendants would caution however that any such award does require a finding of colorable "bad faith," which is supported here by the above record. "Sanctions imposed under a district court's inherent powers require a bad faith finding, since they are intended to compensate." *MILOedu, Inc. v. James*, 2022 WL 3648565, at *2 (N.D. Cal., Aug. 24, 2022).

Regarding that conclusion, the County Defendants would again point to the National Center on Sexual Exploitation's current website, and specifically the "law center" page. This incredibly misleading advertisement actually seeks public donations based on the existence of this suit, along with the *Williams* matter. While both have links to click on a pop-up version of the Complaints, neither indicates that these suits were completely unsuccessful as against the governmental Defendants. Quite to the contrary, both instead claim a "DESIRED OUTCOME" that would, in part, "void any state or local laws that permit or enable prostitution . . . ." And the page includes various links to give the organization funding these attorneys more money, on that misleading basis.[5] Sanctions, in the form of the requested award of attorney's fees, are surely warranted.

---

[5]. *See*, https://endsexualexploitation.org/nevada-is-not-safe-for-women/

## IV.   CONCLUSION

While undersigned counsel has always been loathe to seek any kind of sanction against opposing counsel, this is the rare circumstances that justifies such a request.  And it is well within the District Court's discretion to grant that request.  With that in mind, as set forth in the supporting Declaration of Counsel, each of the County Defendants respectfully requests an award for their separately-incurred attorney's fees to date, in the amount of **$29,193.75 for Elko County, $34,548.75 for Storey County, and $27,190.00 for Nye County, for a total of $90,932.50, along with an additional $532.19 in costs**.

DATED this 28th day of February, 2025.

ERICKSON, THORPE & SWAINSTON, LTD.

_/s/ Brent Ryman_
BRENT L. RYMAN, ESQ. (#008648)
PAUL M. BERTONE, ESQ. (#004533)
ERICKSON, THORPE & SWAINSTON, LTD.
1885 South Arlington Ave., Suite 205
Reno, Nevada 89509
Telephone: (775) 786-3930
_Attorneys for Defendants Nye,_
_Elko and Storey Counties_

ERICKSON, THORPE & SWAINSTON, LTD.

1     <u>**CERTIFICATE OF SERVICE**</u>

2

3          Pursuant to FRCP Rule 5, I certify that I am an employee of ERICKSON, THORPE &

4     SWAINSTON, LTD. and that on this day I caused to be served a true and correct copy of the

5     attached document by:

6     ☐     U.S. Mail

7     ☐     Facsimile Transmission

8     ☐     Personal Service

9     ☐     Messenger Service

10     X     CMECF

11

12     addressed to the following:

13

14          *See* CMECF service list.

15

16          DATED this 28th day of February, 2025.

17

18                                             */s/ Brent Ryman*
                                           Brent Ryman
19

20

21

22

23

24

25

26

27

28

ERICKSON, THORPE &
  SWAINSTON, LTD.