Jason D. Guinasso (SBN #8478)
GUINASSO LAW, LTD.
5371 Kietzke Lane
Reno, NV 89511
(775) 853.8746
*jason@guinassolaw.com*

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
Victoria Hirsch*
NATIONAL CENTER ON SEXUAL EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
(202) 393.7245
*cprice@ncoselaw.org*
*dpinter@ncsoelaw.org*
*Admitted pro hac vice
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JANE DOE, | Case No.: 3:24-cv-00065-MMD-CSD |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO THE COUNTY DEFENDANTS' MOTION FOR ATTORNEY'S FEES [ECF NO. 160]** |
| JOSEPH LOMBARDO, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; NYE COUNTY; ELKO COUNTY; STOREY COUNTY; WESTERN BEST, LLC; DESERT ROSE CLUB, LLC; HACIENDA ROOMING HOUSE, INC. D/B/A BELLA'S HACIENDA RANCH; MUSTANG RANCH PRODUCTIONS, LLC D/B/A MUSTANG RANCH LOUNGE, LLC; LEONARD 'LANCE' GILMAN, in his official capacity; and LEONARD 'LANCE' GILMAN, in his individual capacity, | |
| Defendants. | |

1

COMES NOW, Plaintiff Jane Doe (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby submits her response to Defendants, Nye County, Elko County, and Storey County's (hereinafter "the County Defendants") Motion for Attorney's Fees [ECF No. 160], filed on February 28, 2025.

## **INTRODUCTION**

This case, filed by sex trafficking survivor Jane Doe, is brought based on the way the Brothel Defendants, enabled and even assisted by these County Defendants, exploited her in prostitution. Before this case was filed, Plaintiff's counsel were engaged in litigation in this same district on behalf of other Jane Doe Plaintiffs who were similarly sex trafficked through Nevada's legalized brothel system, in spite of and because of practices of various Counties and Brothels. An ecosystem of exploitation is what led to their harm and to these lawsuits being filed on their behalf. Plaintiffs have properly engaged in this case since its inception, and Plaintiff's counsel have brought these cases in good faith, rooting their arguments in fact and law.

The County Defendants' motion is not only substantively flawed but strategically timed to chill Plaintiff's exercise of her appellate rights. Filing this motion immediately after Rule 54(b) certification—while Plaintiff's time to appeal remains active—reveals the motion's true purpose: to intimidate Plaintiff and her counsel with the specter of substantial financial penalties before she can fully vindicate her rights through the appellate process. The Supreme Court has cautioned against precisely this type of deterrent effect. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). In this regard, the Court reasoned that the term "meritless" is to be understood as meaning:

> … groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him. … it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

This Court should recognize this tactical maneuver for what it is and, at minimum, defer ruling until Plaintiff's appellate remedies have been exhausted.

For the reasons that follow, attorneys fees should not be awarded to the Defendants.

## **ARGUMENT**

Defendants' motion for fees is a rambling journey reiterating, once again, their theory of this case, that this lawsuit is the "third in a trio" of "vexatious" litigation. They base this in part on their own contrary positions on issues this Court has already resolved, specifically by arguing against Plaintiffs counsel's *pro hac vice* admissions for the third time. They also complain about the way the Complaint is structured. But none of this is enough to establish their right to obtain attorneys' fees under 28 U.S.C.A. § 1927, 42 U.S.C. § 1988, or under the court's inherent ability to grant such relief. Their motion falls woefully short of proving that plaintiff acted frivolously, vexatiously, or in bad faith in this litigation, and as such, they are not entitled to an award of attorneys' fees.

**I. The *Charleston, Williams,* and *Lombardo* cases are wholly separate cases with similar legal theories.**

In *Williams v. Sisolak*, Plaintiffs brought claims against various State, County, Brothel, and individual Defendants, alleging federal sex trafficking violations and challenging the legalized prostitution scheme in Nevada as a violation of the Thirteenth Amendment's ban on

3

slavery. *Williams v. Sisolak*, Case No. 2:21-cv-01676-APG-VCF, 2022 WL 2819842 (D. Nev. July 18, 2022).

The *Lombardo* case is different from the Williams case for numerous reasons, the first being the Defendants. Plaintiff filed suit on February 8, 2024, alleging various federal causes of action against County Defendants Nye County, Elko County, and Storey County, in addition to Storey County Commissioner Lance Gilman in his individual and official capacities, Government Defendants Attorney General Ford, Governor of Nevada Joseph Lombardo,[1] and Brothel Defendants: Chicken Ranch (Western Best, Inc.), Desert Rose Club, Bella's Hacienda Ranch, Mustang Ranch Lounge, LLC. ECF 1. Although Defendants would like to paint this case as a "mirror image" of *Williams*, the only overlap in parties between the *Williams* and *Lombardo* cases are Nye County, the State of Nevada, the Attorney General of Nevada, and Western Best, LLC. All other parties, including County Defendants, are different.

Defendants suggest that the similarities between the complaints means it was frivolous or made in bad faith, but according to the Ninth Circuit, the "textual and factual similarity of a plaintiff's complaints, standing alone, is not a basis for finding a party to be a vexatious litigant." *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007) (finding vexatious litigation occurred when a litigant filed about 400 lawsuits, sought damages of $4,000 per day, and because the allegations were contrived and not credible). "[T]here is nothing inherently vexatious about using prior complaints as a template," especially when the cases address similar issues. *Id.* at 1061. Regardless of the similarities of the complaints in *Williams* and *Lombardo*,

---

[1] Government Defendants were dismissed from this case at the same time as County Defendants. ECF 158.

4

this is insufficient to show vexatious litigation, particularly as the Williams complaint was never found to be frivolous, nor was it dismissed for failure to state a claim. The parties in the *Williams* case are currently engaged in discovery as to the claims against Chicken Ranch brothel, which is also a defendant in this case, on a similar legal theory.

The County Defendants' reliance on *Molski v. Evergreen Dynasty Corp.* is particularly misplaced, as this case actually undermines rather than supports their position. In *Molski*, the Ninth Circuit explicitly held that 'the textual and factual similarity of a plaintiff's complaints, standing alone, is not a basis for finding a party to be a vexatious litigant.' 500 F.3d 1047, 1061 (9th Cir. 2007). The court recognized that 'there is nothing inherently vexatious about using prior complaints as a template,' especially when addressing similar legal issues. *Id.*

Unlike in *Molski*, where the plaintiff filed approximately 400 highly similar lawsuits seeking identical damages with allegations that were deemed 'contrived and not credible,' *id.*, Plaintiff here has participated in only three related cases brought on behalf of different trafficking survivors with distinct experiences of harm. Each successive complaint was deliberately crafted to address specific standing concerns identified by the Court in previous litigation. This represents the ordinary evolution of complex civil rights litigation, not the type of abusive pattern condemned in *Molski*.

The County Defendants' attempt to weaponize *Molski* against Plaintiff ironically ignores the Ninth Circuit's explicit warning against labeling plaintiffs as vexatious based merely on textual similarities in their complaints. Indeed, *Molski* stands for the proposition that courts should focus on the substance and good faith of the claims rather than superficial similarities between related cases. The County Defendants' misapplication of this precedent only highlights the weakness of their position.

Further, the *Lombardo* complaint was literally crafted in response to what the Court advised in *Williams* about satisfying traceability and standing. *See Williams v. Sisolak*, Case No. 2:21-cv-01676-APG-MDC, 2022 WL 2819842 (D. Nev. July 18, 2022), aff'd, Case No. 22-16859, 2024 WL 194180 (9th Cir. Jan. 18, 2024), cert. denied sub nom. On appeal, the Ninth Circuit issued a non-precedential, unpublished opinion, that did not address whether this case could be re-filed. The Court issued a short analysis that suggested Plaintiff needed to allege more to support traceability under Article III. *Williams v. Sisolak*, Case No. 22-16859, 2024 WL 194180 (9th Cir. Jan. 18, 2024). When *Lombardo* was filed, Plaintiffs in *Williams* were seeking certiorari review by the Supreme Court, and believed that due to the utter lack of analysis by the Ninth Circuit, parties were in good faith relying on what the *Williams* Court said before cert was denied on June 17, 2024. Around the time of the appeal, other courts were wresting with the same question of the relationship between independent third-party actions and causation within the context of TVPRA beneficiary liability. *Doe 1 v. Apple Inc.*, 96 F.4th 403, 405-12 (D.C. Cir. 2024) (finding sufficient allegations to create a causal chain within the meaning of the TVPRA). The existence of a circuit split on this narrow issue shows Plaintiff engaged in this litigation in good faith as it is not a settled area of law.

Denial of certiorari has no bearing on the merits of a case. The Supreme Court has stated "again and again what the denial of a petition for writ of certiorari means and more particularly what it does not mean. Such a denial, it has been repeatedly stated, 'imports no expression of opinion upon the merits of the case.'" *Agoston v. Com. of Pa.*, 240 U.S. 844, 844 (1950) (quoting *United States v. Carver*, 26 U.S. 482, 490 (1923)). Plaintiffs in good faith appealed that non-precedential Ninth Circuit ruling, and should not now be punished simply because certiorari was denied.

Third, Plaintiff specifically added allegations against new defendants, like Lance Gilman in his individual and official capacities, to address and satisfy the Ninth Circuit and this court's previous issue with traceability. ECF 1 at ¶¶ 146-163. In *Williams*, the Ninth Circuit ruled that Plaintiffs failed to sufficiently allege Article III standing as to Government Defendants, treating co-defendants as independent third parties in its causation analysis, and interpreting traceability to exclude claims for enabling and benefitting from sex trafficking. *Williams v. Sisolak*, Case No. 2:21-cv-01676-APG-MDC, 2022 WL 2819842 (D. Nev. July 18, 2022), aff'd, Case No. 22-16859, 2024 WL 194180 (9th Cir. Jan. 18, 2024), cert. denied sub nom. Defendants misrepresent Plaintiff's intentions – claiming that she purposefully did not include third-party traffickers when suing in *Lombardo*. But to cure the standing issue, Plaintiff alleges that the Brothel Defendants, including Lance Gilman, *were* her direct traffickers. *See e.g.* ECF 1 at ¶¶ 324, 325 (Alleging in Count II: "County Defendants knowingly harbored and/or maintained Plaintiff, knowing or in reckless disregard of the fact that force, fraud, and/or coercion were being used to induce Plaintiff to engage in commercial sex acts"; "Brothel Defendants knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiff, knowing or in reckless disregard of the fact that force, fraud, and/or coercion were being used to induce Plaintiff to engage in commercial sex acts."). It is untrue to suggest that Plaintiff's pleadings conveniently did not include third-party traffickers just to make the pleadings work.

**II. Defendants motion for attorneys' fees under 28 U.S.C. § 1927 and 42 U.S.C.A. § 1988 should be denied because they fail to meet any of the elements under the rules that would entitle them to fees.**

    **A. Defendants are not entitled to fees under 28 U.S.C. § 1927 because they cannot prove Plaintiffs multiplied the pleadings unreasonably and vexatiously.**

Plaintiffs dispute Defendants' request for fees in its entirety. Defendants improperly bring this motion under 28 U.S.C. § 1927, and this court should deny it because they fail to demonstrate Plaintiff's attorneys multiplied the proceedings unreasonably and vexatiously. Section 1927 provides that attorneys who "multipl[y] the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The standard for imposing sanctions requires a showing of recklessness or bad faith. The moving party must show that counsel – not the client – acted recklessly in order to justify an award for fees under § 1927. *Tamares Las Vegas Properties, LLC v. Travelers Indemnity Company*, 696 F.Supp.3d 930, 951, 953 (D. Nev. 2023) (denying a request for attorneys' fees where no recklessness was found).

The County Defendants' request for sanctions under § 1927 fails at its most fundamental level—they cannot establish the subjective bad faith that is the sine qua non of such sanctions. The Ninth Circuit has consistently held that § 1927 sanctions require 'subjective bad faith,' which exists only when an attorney 'knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.' *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002). The record here is devoid of evidence that Plaintiff's counsel knowingly pursued objectively frivolous claims or acted with an improper purpose. Rather, counsel diligently sought to address the standing concerns identified in prior litigation by adding new allegations and parties specifically designed to establish the requisite causal connection. That these well-considered legal strategies ultimately proved unsuccessful does not transform good-faith advocacy into sanctionable conduct. The exceedingly high threshold for finding subjective bad faith simply has not been met.

"While recklessness may be the standard under § 1927, it is an insufficient basis for sanctions under a court's inherent power." *In re Keegan Management Co.*, 78 F.3d 431, 436 (9th Cir. 1996). While the court has inherent power to sanction for bad faith, it "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "Mere recklessness, without more, does not justify sanctions under a court's inherent power." *Chambers*, 501 U.S. at 993-94. Instead, the court is required to make an "explicit finding that the sanctioned party's conduct 'constituted or was tantamount to bad faith,'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–50 (9th Cir. 1997)) "which requires proof of bad intent or improper purpose." *Id.* The Ninth Circuit and Supreme Court have found bad faith occurs "when a party acts for an improper purpose" or if there is a "willful abuse of judicial process." *Id.* at 951.

The Ninth Circuit has expressly held, "§ 1927 cannot be applied to an initial pleading." *In re Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996); *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ("Section 1927 does not apply to initial proceedings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed."). "Section 1927 applies broadly to unnecessary filings and tactics once a lawsuit has begun." *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 528 (C.D. Cal. 2022).

Defendants continue to beat the proverbial drum that the main issue as to why they felt compelled to move for fees is the filing of this "third" lawsuit as a whole — they do not point to specific vexatious conduct or filings that were multiplied once this lawsuit began. But disagreement with a complaint is not appropriate for seeking fees under Section 1927. *See In re Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996). In fact, if Defendants claim they incurred

unreasonable costs, perhaps it is because they repeatedly and baselessly opposed non-substantive motions that were made in good faith, such as Plaintiffs' filing of routine *pro hac vice* applications. ECF No. 11.

County Defendants moved to dismiss this case for the first time on February 25, 2024, ECF No. 5, and for a second time on April 12, 2024, ECF No. 43. County Defendants were served with civil summons on February 14, 2024, which gave them until March 6, 2024, to respond. ECF No. 4. On March 1, 2024, before Plaintiffs had filed their requests to be admitted *pro hac vice*, County Defendants filed a premature motion to deny their requests for admission. ECF No. 11. Plaintiffs opposed, citing the fact that the motion was non-actionable because County Defendants asked the Court to deny a motion that had not yet been sought. ECF No.15 at 3. Once Plaintiffs did file their pro hac applications, County Defendants, once again opposed Plaintiff's motion. ECF No. 90. Plaintiffs had to reply to the duplicitous opposition. ECF No. 98. Ultimately, the Court agreed with Plaintiffs, denying County Defendants' motion to deny anticipated *pro hac vice* applications because they improperly sought preemptive relief, and because the court found that Plaintiff's pro hac vice applications complied with LR 11-A. ECF No. 104. The Court further denied the motion on the merits. ECF No. 104. It is ironic for County Defendants to complain about how Plaintiff has "multiplied proceedings," when they have raised their opposition to Plaintiff's pro hac admissions three separate times, including even now in their motion for fees, when the Court clearly disposed of the issue in its July 25, 2024, order. ECF No. 104.

Defendants cite to *Salley v. Truckee Meadows Water Auth.* to argue that in some circumstances, repeatedly filing "what is arguably the same case" involving issues that have already been dismissed is subject to § 1927. 2015 WL 1414038, at *5 (D. Nev., Mar. 27, 2015),

ECF No. 160 at 7. But *Salley* involved a Plaintiff who failed to file an amended complaint until after Defendants moved to dismiss, re-filed the exact same complaint and only added one additional cause of action, failed to respond to the motion to dismiss, and let the deadline to amend the complaint pass again, even after the Court provided specific instructions on how to cure defects within the pleading within fourteen days. *Salley*, 2015 WL 1414038, at *6 (D. Nev., Mar. 27, 2015). This required Defendants to file a third motion to dismiss, to which Plaintiff requested an extension of time, and filed their SAC and opposition to Defendants' motion – in direct violation of the Court's order that any amendments were to occur within fourteen days. *Id.* That case is markedly different from this case. First, *Salley* dealt with re-filing the same complaint in the same case, and failing to follow the court's instructions on how to cure defects. Here, the cases Defendants complain about are wholly separate, aside from the fact that they share a few facts as to certain defendants. Second, in filing the *Lombardo* case, Plaintiffs were in good faith relying on the direction of the Court in *Williams* when attempting to cure issues of traceability. They did not violate the Court's order by making this filing, and were actually following its instructions as to how to plead certain arguments. Defendants do not point to any actions after the complaint was filed that could be reasonably construed as "vexatious," and in fact themselves multiplied the proceedings with unnecessary and premature filings. None of Plaintiff's actions can be properly understood as "vexatiously multiplying proceedings" within the definition given in Section 1927.

    The County Defendants' characterization of the Complaint as a 'shotgun pleading' filled with 'useless historical surplusage' fundamentally misunderstands both the nature of the claims presented and the legal necessity of establishing their historical and sociological context. Far from being extraneous, the historical information regarding slavery, trafficking, and prostitution

11

was essential to establishing the constitutional and statutory frameworks that underpin Plaintiff's Thirteenth Amendment and TVPRA claims.

Courts have recognized that complex civil rights claims often require substantial contextual background. *See, e.g., Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (pleadings in civil rights cases should be judged by the substantive sufficiency of their allegations rather than by formalistic standards). The Complaint's historical content was directly relevant to demonstrating the systematic nature of exploitation that the Thirteenth Amendment and TVPRA were designed to combat. Moreover, at no point did the County Defendants move for a more definite statement under Rule 12(e) or indicate any actual confusion about the nature of the claims against them. Instead, they demonstrated their clear understanding of the allegations by filing substantive motions to dismiss addressing the merits. Their belated complaint about the Complaint's structure appears to be an attempt to manufacture grounds for fees rather than a genuine grievance about their ability to respond to Plaintiff's allegations. This type of post hoc rationalization for a fee award is precisely what courts have cautioned against. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

Defendants cannot satisfy the requirements under 28 U.S.C.A. § 1927 and should not be entitled to attorneys fees under it.

### B. Defendants are not entitled to fees under 42 U.S.C.A. § 1988 because they cannot show Plaintiffs have engaged in frivolous litigation.

Under 42 U.S.C.A. § 1988, fees can only be awarded to a prevailing defendant if the plaintiff's action was frivolous, unreasonable, or without foundation, even if not brought in bad faith. Therefore, if Plaintiff's claims had any reasonable basis in law or fact, the motion for attorney's fees should be denied.

The County Defendants fundamentally conflate unsuccessful claims with frivolous ones. Here, Plaintiff's claims were grounded in emerging legal theories regarding liability under the TVPRA, supported by detailed factual allegations, and informed by judicial guidance from previous iterations of litigation. That the Court ultimately found these efforts insufficient to establish standing does not render them 'frivolous, unreasonable, or without foundation'—it merely confirms that civil rights litigation often involves complex and evolving legal standards that may not yield success in every case. Awarding fees here would contravene the Supreme Court's clear direction that fee awards to defendants should be reserved for truly egregious cases, not merely unsuccessful ones.

"Section 1988 is asymmetrical, awarding attorney's fees to civil rights plaintiffs if they are prevailing parties, but awarding attorney's fees to prevailing civil rights defendants only if plaintiffs' claims are frivolous." *Merry v. Sandoval*, 2019 WL 6332159, at *3 (D. Nev. Nov. 8, 2019), *report and recommendation adopted*, 2019 WL 6329333 (D. Nev. Nov. 25, 2019). As the Supreme Court has stated, "[w]hen a plaintiff succeeds in remedying a civil rights violation…he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (internal citations and quotations omitted). "A claim is frivolous for purposes of 42 U.S.C. § 1988, only when the result is obvious or the . . . arguments of error are wholly without merit. A claim may also be deemed frivolous if it is without legal foundation or if its outcome is predetermined by a review of relevant law." *McCracken v. Reg'l Transportation Comm'n of S. Nevada*, 2020 WL 13610761, at *2 (D. Nev. Apr. 13, 2020) (internal citations and quotations omitted). Obtaining attorneys' fees under Section 1988 in a civil rights suit is not merely an uphill climb, it is a trek to Mount Everest, and inappropriate in this case.

The Supreme Court has noted that district courts "must resist the 'understandable temptation to engage in post hoc reasoning' and find that the action was without foundation simply because a plaintiff has unsuccessfully pursued a claim." *Schwartz v. Clark Cnty., Nev.,* 2014 WL 4541230, at *1 (D. Nev. Sept. 11, 2014) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978)). None of the claims brought against the County Defendants were frivolous, regardless of the fact that they were dismissed.

After laying out the rules at length, Defendants cannot point to any single action by Plaintiffs that rises to the high level of "frivolous." They point to the filing of this partially-similar complaint as a whole, but the Ninth Circuit has already said, "there is nothing inherently vexatious about using prior complaints as a template," especially when the cases address similar issues. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007). There are no past findings by the Court that the plaintiff in this case has a history of bringing frivolous claims or of wasting judicial resources. Simply because Plaintiffs unsuccessfully pursued their claims against County Defendants does not mean the claims were frivolous to begin with. As the Supreme Court has said, unsuccessful pursuit of a claim does not mean the action was frivolous. *See Schwartz v. Clark Cnty., Nev.,* 2014 WL 4541230, at *1 (D. Nev. Sept. 11, 2014). And this case is still active against five defendants, one of whom was sued as an individual brothel owner and as a County Defendant because he held both roles simultaneously when he trafficked Jane Doe.

Defendants point to no case law that says timing a lawsuit to be filed at the same time as current events, or even publicly speaking about a lawsuit, rises to the level of frivolousness. A lawsuit is considered frivolous if it lacks a reasonable basis in law or fact, or if it is brought for an improper purpose such as harassment or to impose unnecessary costs on the defendant. *Molski*,

14

500 F.3d at 1051. The First Amendment protects the right to petition one's government for redress of grievances, including filing lawsuits. U.S.C.A. Const. Amend. I. Assembly clause; Petition clause. Plaintiffs did not bring this suit for the purpose of gaining publicity, but even if they had, publicizing one's case does not satisfy a showing of frivolousness.

If anything, Plaintiff's "tweaks" to the lawsuit show it was not filed solely for the purposes of publicity. Given his dual role as brothel owner and Storey County Commissioner, Defendant Lance Gilman was added to resolve the previous traceability issue to establish Article III standing. Plaintiffs allege that the Counties' own actions amount to trafficking, in addition to benefitting from trafficking. ECF 1, ¶ 324 ("County Defendants knowingly harbored and/or maintained Plaintiff, knowing or in reckless disregard of the fact that force, fraud, and/or coercion were being used to induce Plaintiff to engage in commercial sex acts."). Gilman's dual role strengthens that connection as to Storey County.

Defendants spend pages re-arguing that Plaintiffs did not have enough to satisfy standing requirements. But once again, failure to successfully pursue a claim does not rise to the level of having a frivolous filing. Plaintiffs maintained a well-grounded factual basis for filing the *Lombardo* case that was rooted in law and fact. Even though County Defendants have been dismissed, the case will continue against the remaining defendants.

County Defendants do not show that Plaintiffs engaged in frivolous litigation, and thus cannot be awarded attorneys fees under 42 U.S.C. § 1988. *See, e.g., Chachas v. City of Ely, Nev.*, 2009 WL 3049214, at *1 (D. Nev. 2009) (finding Defendants were not entitled to fees under 42 U.S.C. § 1988 where the complaint was based on an incorrect, but reasonable interpretation of the laws Plaintiff was challenging).

**III. Defendants cannot obtain attorneys' fees because they do not satisfy any of the required elements of the statutes under which they bring their claims, but even if they could, they would still not be entitled to a judgement in their favor because Plaintiffs and the Court are prevented from meaningfully evaluating the reasonableness of the invoices.**

As the Ninth Circuit has explained, a request for fees must contain "sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service and the reasonable fees to be allowed." *United Steelworkers of Am. V. Ret. Income Plan For Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008). Making a fair evaluation of the fees is impossible from the current invoice. The Court, and Plaintiffs, are wholly prevented from determining whether Defendants were properly billing because the invoices are heavily redacted.

A heavily redacted invoice for attorneys' fees is generally not considered to be made in good faith, as it prevents the court from fulfilling its duty to review the fees for reasonableness and necessity. Redacted billing entries hinder the ability of the court to determine whether the fees are reasonable or necessary, and thus, such fees may be disallowed. *In re Las Vegas Monorail Co.*, 429 B.R. 770 (D. Nev. 2010).

For example, they included entries such as, "Continue drafting [redacted]", "Continue preparation of [redacted]", "Work in [redacted]", "Continue [redacted]," and "Research to [redacted]." *See* ECF 160, Exh. A at 7-8. Plaintiffs and the Court are left fully in the dark as to what these activities are, and therefore cannot evaluate whether the requested fees for those activities are reasonable. Seeking fees under these circumstances, especially when the Court is deprived from meaningfully reviewing what their billing is for, is not reasonable or made in good faith, and were made in bad faith to avoid proper scrutiny. While privileged information may be redacted, transparency in billing records is required to ensure a meaningful opportunity to review

16

and litigate the merits of the fee award. County Defendants request for fees should be disallowed because it was not made in good faith and does not contain sufficient detail to evaluate the reasonableness of their claims.

While the judge has discretion to determine the reasonableness of fees, Defendants are even using this fee request to harass Plaintiff's civil rights counsel a second time, in addition to attempting to prevent their involvement in this case from the outset. They claim their "actions undertaken to defend this case were extremely reasonable and necessary," ECF No. 160 at 22, but took harassing and unnecessary actions far beyond "defense" of this case, as highlighted above.

Further, Defendant's request is not reasonable because plaintiff is still within time to file for an appeal of the dismissal as of right, ECF 158. Although the District Court granted County Defendants' motion for certification of final judgment under Rule 54(b), it is reasonable and will preserve judicial economy to wait to rule on the instant motion until, at the earliest, the time to file for appeal has passed. Plaintiff's intent and ability to still make an appeal weights against Defendants' arguments that this case was brought in bad faith or for a frivolous purpose. Thus, ruling on Defendants' request for fees should be delayed.

## **CONCLUSION**

If Defendants' request for fees is granted, it will have a profound chilling effect on trafficking survivors' willingness to litigate these cases, as well as on attorneys willing to represent them. The TVPRA was specifically designed to provide trafficking victims with a civil remedy against those who benefit from their exploitation, yet awarding fees in this case would effectively punish Plaintiff for attempting to vindicate not just her own rights, but those of other vulnerable individuals trapped in systems of exploitation. The precedent set would be

particularly harmful in areas of law, like TVPRA beneficiary liability, where legal standards are still evolving and circuit splits exist.

Plaintiff brought this case in good faith, deliberately modifying her allegations to address standing concerns identified in previous litigation. That her efforts ultimately did not satisfy this Court's interpretation of Article III requirements does not render her claims frivolous, vexatious, or brought in bad faith. Courts have consistently recognized that unsuccessful civil rights litigation is not synonymous with sanctionable conduct.

Moreover, the County Defendants' motion is premature, as Plaintiff is still within her time to appeal the dismissal. Judicial economy and fairness dictate that, at minimum, any ruling on fee requests should be deferred until appellate remedies have been exhausted. To decide otherwise would risk deterring Plaintiff from pursuing a potentially meritorious appeal out of fear of escalating financial penalties.

Based on the foregoing, Plaintiff respectfully requests that the Court deny the County Defendants' Motion for Attorney's Fees in its entirety. Alternatively, should the Court be inclined to consider any award, Plaintiff requests that such consideration be deferred until after the appeal period has concluded or any appeal is resolved, and that the Court require the County Defendants to provide unredacted billing records that would allow for meaningful review of the reasonableness of their fee request.

Respectfully submitted,

Dated: March 14, 2025   */s/ Christen M. Price*
Christen M. Price
(*admitted pro hac vice*)
Benjamin W. Bull (*admitted pro hac vice*)
Peter A. Gentala (*admitted pro hac vice*)
Dani Bianculli Pinter (*admitted pro hac vice*)

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Victoria Hirsch (*admitted pro hac vice*)
NATIONAL CENTER ON SEXUAL EXPLOITATION

Jason D. Guinasso (SBN #8478)
GUINASSO LAW, LTD.
*Attorneys for Plaintiff*

**ELECTRONIC CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on this 14th day of March, 2025, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO THE COUNTY DEFENDANTS' MOTION FOR ATTORNEY'S FEES [ECF NO. 160]** was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List.

*/s/ Jennifer Johnson*