*
BRENT L. RYMAN, ESQ. (#008648)
PAUL M. BERTONE, ESQ. (#004533)
ERICKSON, THORPE & SWAINSTON, LTD.
1885 South Arlington Ave., Suite 205
Reno, Nevada 89509
Telephone: (775) 786-3930
*Attorneys for Defendants*
*Nye, Elko and Storey Counties*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JANE DOE;<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH LOMBARDO, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; NYE COUNTY; ELKO COUNTY; STOREY COUNTY; WESTERN BEST, INC. D/B/A/ CHICKEN RANCH; WESTERN BEST, LLC; DESERT ROSE CLUB, LLC; HACIENDA ROOMING HOUSE, INC. D/B/A BELLA'S HACIENDA RANCH; MUSTANG RANCH PRODUCTIONS, LLC d/b/a MUSTANG RANCH LOUNGE, LLC; LEONARD "LANCE' GILMAN, in his official capacity; and LEONARD 'LANCE' GILMAN, in his individual capacity,<br><br>Defendants.<br>_____/ | Case No.: 3:24-cv-00065-MMD-CSD<br><br>**THE COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES (ECF No. 160)** |

COME NOW, Defendants, NYE COUNTY, ELKO COUNTY and STOREY COUNTY (hereinafter, "the County Defendants," which includes the official capacity suit against Defendant Storey County Commissioner Lance Gilman), by and through

1

1  their Attorneys of Record, ERICKSON, THORPE & SWAINSTON, LTD., BRENT L.
2  RYMAN, ESQ., and PAUL M. BERTONE, ESQ., and hereby file this Reply Brief in support
3  of their Motion for Attorney's Fees (ECF No. 160).  As outlined below, while Plaintiff has
4  filed an Opposition Brief (ECF No. 161), the arguments presented either grossly
5  mischaracterize Defendants' motivations (*i.e.*, claiming the motion was timed to intimidate
6  when the filing deadline was dictated by local rules), swing and miss (again attempting to
7  distinguish this mirror-image complaint from her attorneys' prior failed cases), or rail against
8  an irrelevant standard within authority Defendants never cited (wasting pages complaining
9  about "[t]he County Defendants' attempt to weaponize *Molski* against Plaintiff . . . .").
10 Defendants' reply arguments are presented below, and fees should be awarded.

11  Like their initial Motion (ECF No. 160), the County Defendants' Reply is made and
12 based upon all of the pleadings and papers on file herein, as well as the following
13 Memorandum of Points & Authorities, and the arguments of counsel to be offered at the
14 hearing of this matter, if any.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.  BRIEF SUMMARY OF MOTION AND OPPOSITION ARGUMENTS**

17  The County Defendants' Motion for Attorney's Fees (ECF No. 160) illustrated why
18 there was never any realistic hope of winning the claims against the governmental
19 defendants.  Specifically, because these governmental defendants were mere regulators in
20 the overall architecture of the system of legalized prostitution, as previously decided and
21 affirmed in both *Charleston* and *Williams*, standing could never be afforded for such claims
22 and this suit was filed *ab initio* in bad faith.  *See*, *Charleston v. Nevada*, 423 F.Supp.3d 1020
23 (D. Nev. 2019), aff'd, 830 F.App'x 948 (9th Cir. 2020); *Williams v. Sisolak*, 2022 WL
24 2819842 (D. Nev., July 18, 2022), aff'd, 2024 WL 194180 (9th Cir., Jan. 18, 2024), cert.
25 denied sub nom. *Williams v. Lombardo*, ___ U.S. ___, 2024 WL 3014535 (June 17, 2024).
26 Defendants' Motion (ECF No. 160) further outlined how the prosecution of this matter was
27 conducted throughout with the intention of generating press coverage instead of actually
28 winning any type of victory against these government defendants.

   Instead of demonstrating some merit to this litigation or explaining why she might have some hope of overturning the District Court's well-reasoned Order (ECF No. 112) if she eventually appeals, Plaintiff has doubled down with additional unreasonable assertions within the Opposition Brief (ECF No. 161). To that end, Plaintiff advances several specious arguments, the first being that Defendants' Motion is somehow "strategically timed to chill Plaintiff's exercise of her appellate rights." (*See*, Pl's Opp. Brief (ECF No. 161), p. 2, ll. 16-18). The simple response to that argument, of course, is that any request for fees had to be filed within two weeks of judgment based on the rules outlined below.

   Plaintiff's Opposition Brief (ECF No. 161) also strangely advances a theory that "[t]he County Defendants' reliance on *Molski v. Evergreen Dynasty Corp.* is particularly misplaced, as this case actually undermines rather than supports [the County Defendants'] position." (*See*, Pl's Opp. Brief (ECF No. 161), p. 5, ll. 6-7). But this opposition argument presents at least two obvious flaws. The first glaring problem is that the County Defendants never cited, or otherwise relied upon *Molski* in their Motion for Attorney's Fees. The second flaw, which is perhaps more worthy of discussion than the misplaced straw-man error, is that *Molski* discusses an entirely different standard from that applicable here: *Molski* was issued in the context of a vexatious litigant analysis as opposed to this request for attorney's fees.

   Casting aspersions about the timing of this motion for fees and wasting pages on irrelevant authority never cited with its pages are not good faith arguments, no matter how vociferously Plaintiff frames them as some form of malicious harassment. Plaintiff also attempts to rationalize the filing of this third unsuccessful complaint by distinguishing it from the recently-dismissed *Williams* case despite the mirror-image similarity of its shotgun allegations. The failings of those arguments will receive a response below, where Defendants will again illustrate that Plaintiff's claims were never drafted with the intention of winning against these governmental Defendants, but were instead meant to generate press coverage and elict donations to NCOSE. Defendants will also address Plaintiff's attempts to cast aspersions on the work expended by defense counsel and show why this fee request is reasonable and supported.

## II. LEGAL ARGUMENT

### A. The timing of this request for fees is perfectly appropriate.

Plaintiff first accuses these County Defendants of "strategically tim[ing]" the filing of this motion for fees "to chill the plaintiff's exercise of her appellate rights." (*See*, Pl's Opp. Brief (ECF No. 161), p. 2, ll. 13-18). Plaintiff also claims the timing of this filing, made immediately after Rule 54(b) certification and while the time to appeal remains active, "reveals the motion's true purpose: to intimidate Plaintiff and her counsel with the specter of substantial financial penalties before she can fully vindicate her rights through the appellate process." (Pl's Opp. Brief (ECF No. 161), p. 2, ll. 18-22).

In response, Defendants offer a more rational explanation for the timing of this motion: *i.e.*, it was filed during the short period allowed by the FRCP. Specifically, pursuant to FRCP Rule 54(d)(2)(B)(i), unless a statute or court order provides otherwise, a motion for attorney fees must be filed no later than 14 days after the entry of judgment. *Id*. Judgment for these Defendants was entered on February 21, 2025, and their motion was filed seven days later (since undersigned counsel was slated to be out of the office the following week). Here, compliance with the time requirements of Rule 54(d) cannot by any stretch of the imagination be considered probative evidence of sinister motive, or design to harass. In fact, "one of the purposes of the fourteen day filing requirement for attorney's fee motions . . . 'is to assure that the opposing party is informed of the [fee] claim before the time for appeal is lapsed[.]'" *Blissett v. Casey*, 969 F.Supp.118, 123-24 (N.D.N.Y. 1997), aff'd, 147 F.3d 218 (2d Cir. 1998) (*quoting*, Advisory Committee Notes for Rule 54's 1993 Amendments). And had the fee request been made outside the 14-day window provided by Rule 54(d), Plaintiff surely would argue it was belated and thus waived.[1]

---

[1]. No doubt there is some authority to the effect that claims for fees under §1927 may <u>not</u> be subject to the 14 day requirement, but instead must merely be made within a "reasonable time" or "as expeditiously as possible" after the entry of judgment. *Home Gambling Network, Inc. v. Piche*, 2015 WL 1734928, at *19 (D. Nev. Apr. 16, 2015). But fee requests under § 1988 are definitely subject to the 14 day limitation. *See, e.g., Slader v. Pearle Vision Inc.*, 199 F.R.D. 125, 126 (S.D.N.Y. 2001) (applying mandatory 14-day limit for seeking attorneys' fees under § 1988 and observing that such limit should not be lightly disturbed). Therefore it made perfect sense, in terms of everyone's economy, to bring the claims for fees under both §1927 and § 1988 (and the court's inherent power) together at the same time, and within the window of time provided by FRCP 54(d)(2)(B)(i).

ERICKSON, THORPE & SWAINSTON, LTD.

### B. Defendants never cited *Molski*, which is inapplicable in any event.

Next, as part of her effort to highlight purported differences among the three suits at issue, Plaintiff expends great effort excoriating the County Defendants' "reliance" upon *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007). (*See*, Pl's Opp. Brief (ECF No. 161), pp. 4-5, ll. 15-28). This line of argument is misplaced, however, since these County Defendants never once cited the decision. Defendants can only guess the argument has been "cut and pasted" from a different brief – likely defending against a vexatious litigant determination – which was erroneously included. *Id.*, 500 F.3d at 1050-52 (*Molski* had nothing to do with seeking attorney fees, but instead involved a plaintiff and a law firm who were declared vexatious litigants after filing approximately 400 bogus personal injury lawsuits).

While the decision has nothing to do with standards for awarding attorney fees, Plaintiff uses *Molski's* vexatious litigant analysis to conjure an argument that textual and factual similarities between complaints "standing alone" are not an indication of vexatiousness, nor is the use of prior complaints as a template for new ones. (*See*, Pl's Opp. Brief (ECF No. 161), p. 4, ll. 15-24). This argument is a red herring not only because Defendants never cited *Molski*, but also because Defendants have not requested a vexatious litigant declaration against Plaintiff or her attorneys, which would be adjudicated under a higher standard. *See*, *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057-58 (9th Cir. 2007) (reviewing the various tests for vexatious litigant determination). These arguments should be given no weight by the District Court in deciding the instant motion.

### C. This third suit was drafted not with an aim toward victory over the County Defendants, but instead to generate attention in the press and donations to NCOSE.

The subjective bad faith alleged against Plaintiff's counsel should be adjudged not just upon a pair of mirror-image complaints "standing alone," but instead on the "totality of the circumstances." *See, e.g., In re Engle Cases*, 283 F.Supp.3d 1174, 1225 (M.D. Fla. 2017) ("In determining whether an attorney acted in bad faith, a court may rely on the totality of the circumstances. . . . Even if discrete instances of an attorney's conduct would not have been

5

1  sanctionable, a court may nevertheless find bad faith based on the attorney's
2  conduct 'considered as a whole.'") (*quoting, In re Prudential Ins. Co. Am. Sales Practice
3  Litig. Agent Actions*, 278 F.3d 175, 189-90 (3d Cir. 2002)); *SunEarth, Inc. v. Sun Earth Solar
4  Power Co.*, 2017 WL 9471951, at *2 (N.D. Cal., July 19, 2017) (examining totality of the
5  circumstances when deciding whether to award attorneys' fees under 28 U.S.C. § 1927 or
6  court's inherent authority); *Arthur the Dog v. U.S. Merch. Inc.*, 2007 WL 2493427, at *11
7  (E.D.N.Y., Aug. 29, 2007) (carefully examining the record and the totality of the
8  circumstances to determine whether there was a sufficient showing of bad faith to warrant
9  the imposition of sanctions or attorneys' fees).

10        Here, viewing the wider totality of theses circumstances, the Court faces a haunting
11  similar Complaint being filed exactly three weeks after the Ninth Circuit affirmed the
12  dismissal of the last, and with prejudice. That dismissal (the second in a series of dismissals)
13  was again based on the government defendants being too far removed from the fray of the
14  everyday business of prostitution, because there were no fairly traceable injuries or
15  redressable remedies leading back to them. And so along comes this third complaint, for all
16  intents and purposes the exact same suit, right down to the involvement of another "Jane
17  Doe." Plaintiff argues this case should be viewed differently because she removed obvious
18  reference to some of the independent third-parties (the criminal pimps), and instead sought
19  to focus the "hands on" type blame at the feet of the brothels. However, this artful pleading
20  tactic, an ever-so-slight change in focus, did not get Plaintiff any closer to laying direct blame
21  for liability upon the government defendants. Not surprisingly, the end results of this latest
22  suit should by now sound like a foregone conclusion: "Government Defendants' actions and
23  inactions in this case . . . bear at best an attenuated relationship to Doe's alleged injuries
24  behind the cover of evocative references to slavery and servitude." *Doe v. Lombardo*, 745
25  F.Supp.3d 1109, 1119 (D. Nev. 2024).
26  ///
27  ///
28  ///



Yet Plaintiff maintains this third suit was crafted as part of the "ordinary evolution" of complex civil rights litigation. (*See*, Pl's Opp. Brief (ECF No.161), p. 5, ll. 18-21). However, Defendants respectfully suggest these slight changes in the initial charging pleading were not designed to prevail over the County Defendants, nor to even get closer to establishing substantive jurisdiction over them. Instead, they were designed merely to provide an arguable basis to avoid Rule 11 sanctions, while gaining maximum publicity. The filing of these same already-failed claims, against the same class of government defendants, for a third time, never had an objectively reasonable basis of victory. Indeed, the mirror-image complaint only makes sense when viewed as an attempt to generate exponentially-increased media attention coinciding with the NFL's Super Bowl being held in Las Vegas. And donations to the NCOSE were the ultimate goal and the strategic objective of all these efforts. These actions beg an award of fees.

Nor should the fact that the Ninth Circuit deemed not to publish its order affirming dismissal with prejudice, and "did not address whether this case could be re-filed" affect this District Court's analysis. (*See*, Pl's Opp. Brief (ECF No. 161), p. 6, ll. 5-7). The appellate authority remains persuasive. "[W]e must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority." *Animal Legal Def. Fund v. Veneman*, 490 F.3d 725, 733 (9th Cir. 2007) (*citing*, 9th Cir. R. 36-3(b)). That constitutional standing cannot be established against these government defendants, "the Ninth Circuit caselaw at issue persuasively explains, with citation to well-established law . . . ." *Peters v. Colvin,* 2015 WL 8539911, at *7 (W.D. Wash., Dec. 11, 2015). In all prior suits, the claims against the government defendants were dismissed for lack of constitutional standing by the district court, and these results were affirmed by the Ninth Circuit, whether by published opinion or not. Declaring that serial suits may not be considered abusive unless and until one of those dismissals is affirmed by a published opinion from the local United States Court of Appeals would impede any effort to curb the abuse of harassing, repetitive suits such as these, and hence rob 28 U.S.C. §1927 of much of its efficacy.

///

1           Plaintiff's citation to *Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024), does nothing
2   as far as establishing some fiercely-contested split in authority making injuries inflicted by
3   independent third-parties somehow "fairly traceable" back to government entities and
4   regulators. (*See*, Pl's Opp. Brief (ECF No. 161), p. 6, ll. 13-19). In *Apple Inc*, the causal
5   chain for injuries only led back to certain technology companies who had the misfortune of
6   purchasing cobalt through the global supply chain, which mineral may have originally been
7   mined using child labor in the Democratic Republic of Congo. Those child workers
8   eventually alleged injuries incurred through mining accidents. *Id.*, 96 F.4th at 405-8. The
9   tech companies ultimately were not responsible for the child workers' injuries. "The
10  plaintiffs have not adequately alleged the Tech Companies participated in a venture because
11  there is no shared enterprise between the Companies and the suppliers who facilitate forced
12  labor." *Id*., 96 F.4th at 415.
13          In short, the reasoning employed in *Apple Inc.* does not cast doubt on the validity of
14  the two prior detailed decisions finding that constitutional standing could not be
15  accomplished over mere governmental regulators, who had presided over a system of
16  legalized prostitution, for injuries alleged to be inflicted upon those legalized prostitutes by
17  independent third-parties. *See, Charleston v. Nevada*, 423 F.Supp.3d 1020 (D. Nev. 2019),
18  aff'd, 830 F.App'x 948 (9th Cir. 2020); *Williams v. Sisolak*, 2022 WL 2819842 (D. Nev.,
19  July 18, 2022), aff'd, 2024 WL 194180 (9th Cir., Jan. 18, 2024), cert. denied sub nom.
20  *Williams v. Lombardo*, ___ U.S. ___, 144 S.Ct. 2659, 219 L.Ed.2d 1285 (June 17, 2024).
21  Both those decisions (the entire series of decisions) were unquestionably known to Plaintiff's
22  counsel, and both those decisions should have prevented even the most zealous of counsel
23  from changing a few words around and once again filing the same complaint, against the
24  same class of governmental defendants.
25  ///
26  ///
27  ///
28  ///



8

1    Nor was Defendant Lance Gilman's presence in the this suit, even as an alleged
2 "direct trafficker" sufficient to establish constitutional standing over these County
3 Defendants. (*See*, Pl's Opp. Brief (ECF No. 161), p. 7, ll. 1-22). The mere fact that
4 Mr. Gilman had an ownership interest in a house of prostitution could not inherently interfere
5 with his concomitant duties and loyalties to the citizens of Storey County while acting as a
6 commissioner, and that "dual role" alone was never going to assist in making injuries "fairly
7 traceable" back to the governmental Defendants. And while Plaintiff's Complaint is replete
8 with scandalous allegations, Nevada has many laws and regulations designed to prevent the
9 exact type of conflicts of interests Plaintiff has alleged. *See, e.g.*, NRS 281A.420 (imposing
10 requirements on public officers to disclose conflicts of interest and to abstain from voting for
11 certain types of conflicts); *see also, Stanley v. Univ. of Tex. Med. Branch*, 296 F.Supp.2d
12 736, 739 (S.D. Tex. 2003) (Title VII plaintiff and his attorney would be sanctioned for failing
13 to conduct adequate pre-filing inquiry, where even minimal investigation would have
14 revealed abject frivolity of claims)*; McGhee v. Sanical County*, 934 F.2d 89, 93 (6th Cir.
15 1991) (holding denial of Rule 11 sanctions was error where reasonable investigation would
16 have revealed defamation claim was not supported under Michigan law)*; Atakapa Indian de
17 Creole Nation v. Louisiana*, 2019 WL 1050405, at *1 (W.D. La., Mar. 5, 2019) ("Where a
18 reasonable amount of research would have revealed to the attorney that there was no legal
19 foundation for the position taken, Rule 11 sanctions will be imposed.").
20    For all the same reasons delineated above, Plaintiff's claims were always groundless
21 and frivolous, and therefore fees may also be awarded under 42 U.S.C. §1988 and the
22 inherent power of the Court.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///



**D.  Plaintiff's counsel's conduct unreasonably multiplied proceedings.**

With respect, while Defendants argued against the decision, it was unquestionably within the District Court's sound discretion to admit these foreign attorneys, even if they did not follow the rules in making their request. But from these Defendants' perspective, every time these attorneys return to Nevada, they drain public resources to defend these frivolous claims designed only to solicit organizational donations. So now that they have been admitted, NCOSE and its counsel should face the consequences of their actions. While Plaintiff maintains a legal necessity of painting claims within historical and sociological context – and points to the importance of rendering historical information on slavery, trafficking and prostitution, as essential to establishing the constitutional and statutory framework that underpins her claims – the shotgun nature of this scandalous pleading is obvious. (*See*, Pl's Opp. Brief (ECF No. 161), pp. 11-12, ll. 24-2). The Complaint was not drafted to impart a short and plain statement of claims to the defendants charged therein, but instead was drafted to "educate" and otherwise enrage the visitors to NCOSE's website. Such actions, and others as described in the County Defendants' Motion for Attorney's Fees (ECF No. 160), unreasonably multiplied the proceedings.

**E.  The fee request is reasonable and supported.**

Plaintiff complains that redactions impede the ability to adjudge the reasonableness of the fee request. (*See,* Pl's Opp. Brief (ECF No. 161), p. 16-17, ll. 13-4). However, the motion work on the docket of this matter should go a long way toward justifying the reasonable fees sought. In awarding fees, it is proper for a district court to rely on its own familiarity with the legal market. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). "[J]udges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Id*. "Courts are experts as to the reasonableness of attorney fees and award may be based on court's own experience." *Id*.

///

///

///



Should the Court nevertheless need additional detail, these Defendants would gladly supply unredacted entries of billings for *in camera* review, or however the court instructs. *See, e.g.*, *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 670 (9th Cir. 2018) ("[R]edactions in time entries to preserve secrecy of work product are permissible as long as they 'do not impair the ability of the court to judge whether the work was an appropriate basis for fees.'") (*quoting, Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004)); *Perez v. World Fin. Grp.*, 2022 WL 18863863, at *1 (D. Nev., July 14, 2022) ("Appropriate redactions from billing records for attorney client privilege or work product may be made for the public filing with non-redacted copies of such records filed under seal.").

### III. CONCLUSION

The County Defendants request fees from this District Court to temper the sheer audacity necessary to draft and file what was effectively a mirror-image of the same claims which had just been dismissed (and affirmed by the Ninth Circuit), against the exact same class of government defendants. It was almost as if Plaintiff's counsel was attempting to deny reality, and turn a completely blind eye to the previous decisions of both the District Court and Court of Appeals by pretending those decisions never happened. And that impression is bolstered by the NCOSE's website, which continues to solicit donations based on this litigation with no mention the claims have been dismissed. Plaintiff's Complaint here, along with the actions of her attorneys in pursuing this litigation and seeking accompanying notoriety, represent an unabashed abuse of the court system.

///
///
///
///
///
///
///



1  The sanctions/fees available under 28 U.S.C. §1927 are the best remedy to ensure that these repetitive, vexatious and utterly frivolous suits come to a stop. Fee awards under 42 U.S.C.§ 1988, or the inherent power of the court, serve as viable alternative means to the same end. The County Defendants therefore respectfully request that the District Court grant their requested attorney's fees in full, in the amount of **$29,193.75 for Elko County, $34,548.75 for Storey County, and $27,190.00 for Nye County, for a total of $90,932.50, along with an additional $532.19 for travel expenses,** as set forth in their initial Motion (ECF No. 160) and supporting Declaration of Counsel.

DATED this 20th day of March, 2025.

ERICKSON, THORPE & SWAINSTON, LTD.

*/s/ Brent Ryman*
BRENT L. RYMAN, ESQ. (#008648)
PAUL M. BERTONE, ESQ. (#004533)
ERICKSON, THORPE & SWAINSTON, LTD.
1885 South Arlington Ave., Suite 205
Reno, Nevada 89509
Telephone: (775) 786-3930
*Attorneys for Defendants Nye,
Elko and Storey Counties*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP Rule 5, I certify that I am an employee of ERICKSON, THORPE & SWAINSTON, LTD. and that on this day I caused to be served a true and correct copy of the attached document by:

- ☐ U.S. Mail
- ☐ Facsimile Transmission
- ☐ Personal Service
- ☐ Messenger Service
- ☒ CMECF

addressed to the following:

*See* CMECF service list.

DATED this 20th day of March, 2025.

              */s/ Brent Ryman*
              Brent Ryman