1

2

3                          UNITED STATES DISTRICT COURT

4                                DISTRICT OF NEVADA

5                                      * * *

6   JANE DOE,                                    Case No. 3:24-cv-00065-MMD-CSD

7                            Plaintiff,                        ORDER

8       v.

9   JOSEPH LOMBARDO, in his capacity as
    Governor of the State of Nevada, *et al.*,

10                          Defendants.

11

12  **I.    SUMMARY**

13         Anonymous Plaintiff "Jane Doe" filed this action to challenge Nevada's system of

14  legalized prostitution, asserting claims against four Nevada establishments licensed to

15  sell sexual services ("Brothel Defendants")[1], their respective counties ("County

16  Defendants"), and Nevada's Governor and Attorney General ("State Defendants"), under

17  the Thirteenth Amendment and the Trafficking Victims Protection Reauthorization Act

18  ("TVPRA"), 18 U.S.C. §§ 1591(A)(1)-(2), 1595. (ECF No. 1 ("Complaint").) On August 16,

19  2024, the Court dismissed Plaintiff's claims against State and County Defendants—as

20  well as her prospective relief claims against Brothel Defendants—and issued an order to

21  show cause ("OSC") directing Plaintiff to demonstrate standing to bring her remaining

22  damages claims against Brothel Defendants. (ECF No. 112 ("August Order").) On

23  October 18, 2024, the Court issued an order finding that Plaintiff satisfied the OSC as to

24  her TVPRA claims, denying her motion for a protective order and leave to proceed

25

26  _____

27         [1]Brothel Defendants are Western Best, Inc. d/b/a Chicken Ranch ("Chicken
    Ranch"); Desert Rose Club, LLC ("Desert Rose Club"); Hacienda Rooming House, Inc.
    d/b/a Bella's Hacienda Ranch ("Bella's Hacienda Ranch"); Mustang Ranch Productions,
28  LLC d/b/a Mustang Ranch Lounge, LLC ("Mustang Ranch"), and Lance Gilman, owner of
    Mustang Ranch, in his individual capacity (collectively, "Mustang Ranch Defendants").

1  pseudonymously (ECF No. 73), and directing her to disclose her identity to proceed. (ECF
2  No. 141 ("October Order").)

3      Now before the Court is Plaintiff's motion for reconsideration of the portion of the
4  October Order denying leave to proceed under a pseudonym. (ECF No. 145 ("Motion for
5  Reconsideration")[2].) In the alternative, Plaintiff requests that the Court certify an
6  interlocutory appeal. (*Id.*) Also before the Court is Defendant Desert Rose Club's motion
7  for sanctions. (ECF No. 153 ("Motion for Sanctions").[3]) For the reasons explained below,
8  the Court denies both motions and sets a new deadline for Plaintiff to file a notice
9  disclosing her identity.

10  **II.    BACKGROUND**

11      Plaintiff Doe is an anonymous individual residing in Nevada who alleges that she
12  experienced sex trafficking while working at four separate licensed Nevada brothels over
13  the course of six years. (ECF No. 1.) In her original Complaint, Doe asserted Thirteenth
14  Amendment constitutional claims, as well as statutory claims for perpetrating and
15  benefiting from sex trafficking under 18 U.S.C. §§ 1591(A)(1) and 1595 of the TVPRA,
16  seeking both injunctive relief and damages. (Id. at 42-44.) The Court dismissed all claims
17  against State and County Defendants[4] and certified final judgment as to those
18  defendants. (ECF No. 158.)

19      In its August Order, the Court dismissed Plaintiff's prospective relief claims against
20  Brothel Defendants and directed Plaintiff to show cause as to her standing to bring
21  damages claims against them. (ECF No. 112.) Given the OSC, the Court declined to
22  reach Defendants' argument that Plaintiff's use of a pseudonym violated Fed. R. Civ. P.
23  10(a), warranting dismissal as an independent threshold issue. (*Id.*) The Court similarly

24  _____

25  [2]Western Best responded (ECF No. 149) and Mustang Ranch Defendants, Bella's
    Hacienda Ranch, and Desert Rose Club joined the response (ECF Nos. 150, 151, 152).
26  Plaintiff replied. (ECF No. 154.)

27      [3]Plaintiff responded (ECF No. 155) and Desert Rose Club replied (ECF No. 156).

28      [4]The Court dismissed claims against Defendant Gilman in his official capacity as
    County Commissioner, but has not dismissed claims against him in his individual capacity
    as owner of Mustang Ranch.

1   deferred ruling on Plaintiff's motion for a protective order and leave to proceed

2   pseudonymously (ECF No. 73 ("Motion for Protective Order")). (ECF No. 112.)

3          On August 30, 2024, Plaintiff responded to the OSC. (ECF No. 115.) Addressing

4   this response in its October Order, the Court found that Plaintiff failed to demonstrate

5   standing to seek damages under the Thirteenth Amendment, but that she satisfied the

6   OSC as to her statutory TVPRA damages claims. (ECF No. 141 at 5-9.) Turning to the

7   Motion for Protective Order, the Court found that Plaintiff failed to demonstrate her interest

8   in anonymity outweighed other relevant factors. (*Id.* at 9-15.) The Court thus denied

9   Plaintiff's request to proceed under the pseudonym "Jane Doe" and directed her to file a

10  notice disclosing her true identity within 15 days if she wished to proceed with her TVPRA

11  claims. (*Id.*)

12         Instead of filing a notice disclosing her identity, Plaintiff filed the instant Motion for

13  Reconsideration. (ECF No. 145.) In the alternative, she requests that the Court permit her

14  to seek interlocutory appeal. (*Id.*) Separately, Defendant Desert Rose Club moved for

15  sanctions against Doe and her attorneys on the basis that both the Complaint and the

16  response to the OSC are legally and factually baseless. (ECF No. 153.)

17  **III.    DISCUSSION**

18         **A.    Motion for Reconsideration**

19         Plaintiff argues the Court should reconsider its decision barring her from

20  proceeding anonymously as "Jane Doe" under this district's local rules.[5] (ECF No. 145.)

21  *See* LR 59-1(a) ("The court possesses the inherent power to reconsider an interlocutory

22  order for cause, so long as the court retains jurisdiction.").

23          A party seeking reconsideration must "state with particularity the points of law or

24  fact that the court has overlooked or misunderstood. Changes in legal or factual

25  circumstances that may entitle the movant to relief also must be stated with particularity."

26  *Id.* Reconsideration is appropriate if "(1) there is newly discovered evidence that was not

27  available when the original motion or response was filed, (2) the court committed clear

28

_____

[5]Fed. RR. Civ. P. 59 and 60 govern reconsideration of case-dispositive orders.

3

error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* In general, such motions are disfavored, and "[a] movant must not repeat arguments already presented." LR 59-1(b)-(c). *See also Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) ("A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled.").

In its October Order, the Court found that Doe was not entitled to proceed under a pseudonym because she failed to adequately justify a deviation from the bedrock standard that court cases are public events. (ECF No. 141 at 9-11.) *See* Fed. R. Civ. P. 10(a) (providing that a complaint must include the names of all parties in its title); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (holding that when determining whether rare circumstances justify use of a pseudonym, courts consider whether (1) the party's need for anonymity outweighs (2) the prejudice to the opposing party and (3) the public's interest in knowing the party's identity). Balancing the interests set out by the Ninth Circuit in *Advanced Textile Corp.*, 214 F.3d at 1067-68, the Court concluded that Doe's private interest in anonymity weighed slightly in her favor, the public interest factor was neutral or weighed slightly in Defendants' favor, and the prejudice factor weighed in Defendants' favor. (ECF No. 141 at 9-15.)

Doe now seeks reconsideration based on (1) "new, relevant facts not available when she filed her motion for a protective order," (2) "clear error in considering factors outside the Ninth Circuit's standard," and (3) "manifest injustice." (ECF No. 145 at 5.) *See* LR 59-1(a). The Court considers each argument in turn and declines to reconsider its ruling.

### 1.    Newly discovered evidence

Plaintiff first argues that "there is newly discovered evidence that was not available when the original motion or response was filed" regarding potential harm which could result from disclosure of her identity. (ECF No. 145 at 5-6.) She attaches a declaration to support her position that she is vulnerable to abuse by sex buyers and that her earlier

statements on this point are not conclusory. (ECF No. 145-1.) The Court fails to find, however, any new facts in either the Motion for Reconsideration or the attached declaration which alter its analysis in the October Order—especially given that the Court already found that Plaintiff's personal interest in privacy weighs at least mildly in her favor.

To start, a party may not present new evidence in a motion for reconsideration merely to bolster previously-submitted arguments that the Court already considered and found uncompelling. *See Brown*, 378 F. Supp. 2d at 1288; *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211-12 (9th Cir. 1987) (noting in the context of Rules 59 and 60 that "newly discovered" evidence does not include evidence previously in a moving party's possession or which could have been discovered with reasonable diligence). Here, Doe largely re-packages many of the retaliation arguments the Court already evaluated. (*See, e.g.*, ECF No. 145-1 at 8 (referring to fear about "various forms of potentially debilitating harassment and other retaliation").)

In addition, it is unclear how some of the ostensibly new evidence in the declaration—for example, Plaintiff's statements about experiences of harm from sex buyers in her local area at the current time—implicates a causal relationship with the *disclosure of her identity in the instant action*. (*See id.* at 7 ("Given the hundreds of sex buyers who raped and committed other violence against me in many locations, including the area where I live now, I remain in fear for my physical safety . . . . "[a]t least one sex buyer has subjected me to other abuses since I left the brothels").) Plaintiff further contends that "[a]fter [she] filed her motion for a protective order, a sex buyer who heard about this lawsuit attempted to uncover her identity, exactly as she predicted," pointing to Proposed Intervenor Defendant Greer's filings in this action (ECF Nos. 121 at 4, 132 at 6).[6] (ECF No. 145 at 5.) But even if the Court now weighs Greer's statements—including the fact that he purportedly went to one or more brothels and "asked around" as to Doe's identity—Plaintiff fails to support how any specific danger would materialize if he succeeded in discovering her identity. *See Doe v. Kamehameha Sch./Bernice Pauahi*

---

[6]The Court denied Greer's motion to intervene. (ECF No. 158.)

*Bishop Est.*, 596 F.3d 1036, 1043 (9th Cir. 2010) (analyzing the fear of severe harm alongside the reasonableness of that fear). More broadly, Plaintiff asserts that the "number of . . . abusers is vast and given the nature of their abuse, there is no way to track down and determine with certainty who may or may not pose a threat." (ECF No. 145 at 6.) But without more specificity as to the nature of the threat, this argument amounts to a request that Plaintiff be allowed to proceed anonymously based on vague speculation.

Plaintiff also argues that, because her claims about trafficking do not arise under employment-related statutes, Defendants misplace their focus on the fact that she no longer works in the brothel industry and will not face economic retaliation. (ECF Nos. 145, 154.) But this is relevant to the extent it bears on the absence of allegations regarding how exactly Brothel Defendants or those associated with them would exert control over Plaintiff if her identity were revealed. In other words, it goes to the reasonableness of the fears identified. *See Kamehameha Sch.*, 596 F.3d at 1043; *4 Exotic Dancers v. Spearmint Rhino*, Case No. CV 08-4038ABCSSX, 2009 WL 250054, at *3 (C.D. Cal. Jan. 29, 2009). *See also Advanced Textile Corp.*, 214 F.3d (finding strong private interest in anonymity where foreign workers were "extremely vulnerable" to deportation and retaliation in the workplace).[7] In short, Plaintiff does not present any meaningful new evidence.[8]

### 2.    Clear error

Plaintiff next argues that the Court committed clear error by resting its analysis on two factors which are outside the Ninth Circuit's standard in *Advanced Textile Corp.*: (1) "public ability to assess the credibility of a sex trafficking victim" and (2) "public discussion

---

[7]To the extent Plaintiff states that she would be willing to submit further evidence for in camera review—for example, regarding her fear of members of organized crime who frequent the Desert Rose Club—the Court will not provide repeated opportunities to present new evidence not adequately described, particularly at this stage of litigation.

[8]Plaintiff notes that "[w]hile at the brothel, she did not use her real name, but had a stage name, which further underscores the dangers that sex buyers pose to her." (ECF No. 145 at 6.) While the use of a stage name is relevant to a private interest factors, it does not fundamentally alter the Court's analysis.

of a civil rights case". (ECF No. 145 at 6-8.) *See Advanced Textile Corp.*, 214 F.3d at 1067-72 (describing public and private interest factors). The Court finds no clear error in its consideration of relevant factual circumstances—and more importantly, the subfactors Plaintiff paraphrases were not, contrary to Doe's contention, dispositive to the Court's holistic anonymity balancing.

Plaintiff first contends that the Court improperly considered the public's interest in assessing Doe's credibility, which does not fit within the basic public interest in open judicial proceedings. (ECF No. 145 at 6-7.) Here, Plaintiff emphasizes that "the main value behind having open legal proceedings is the public's ability to scrutinize the government, not the litigants." (*Id.* at 7.) *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980) ("[O]pen trials are bulwarks of our free and democratic government: public access to court proceedings is one of the numerous checks and balances of our system, because contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power[.]") (internal citations removed).

It is true that, as the Ninth Circuit found in *Advanced Textile Corp.*, the mere fact that a case is of major public import does not weigh against a plaintiff's anonymity where it is unclear "how disguising plaintiffs' identities [would] obstruct public scrutiny of the important issues in th[e] case." 214 F.3d at 1072. And credibility in a narrow sense is generally evaluated by a jury and not by the public. Nevertheless, the public's interest in restraint on "abuse of judicial power" extends to judicial power wielded in favor of both plaintiffs and defendants. *See Richmond*, 448 U.S. at 592. And given the unique procedural history of this action, the Court's discussion on this point in the October Order primarily relates to a risk that disguising Plaintiff's identity may obstruct contemporaneous public scrutiny into the foundations of a concerted challenge to a legislatively-enacted system of brothels in Nevada. *See Kamehameha Sch.*, 596 F.3d at 1043 (noting general public interest in "*understanding* the judicial process") (quoting *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir.2006)) (emphasis added). Even setting this

aside, however, the Court balanced multiple considerations[9] to determine that the public interest factor was neutral or weighed slightly in Defendants' favor. (ECF No. 141.)

Plaintiff also argues that the Court committed clear error by giving improper weight to "public discussion of a civil rights case" which "is similarly outside the relevant standard." (ECF No. 145 at 7.) The Court does not explicitly refer to "discussion of a civil rights case" anywhere in its October Order, but Doe seems to mean the section of the Order addressing Plaintiff's actions to publicize her case, including through press conferences and online publications (ECF No. 141 at 13-15). There, the Court found that Doe's intentional steps to seek publicity cut against her represented need for privacy, also impacting the prejudice factor. (*Id.* at 14-15.) *See Doe v. City of Las Vegas*, Case No. 2:19-cv-00382-GMN-BNW, 2019 WL 2601554, at *2 (D. Nev. June 25, 2019). Doe argues that "[t]he press conference that the court referenced . . . not only does not contain any identifying information about the Plaintiff, it barely discusses the Plaintiff's story at all, relying almost entirely on the Complaint's claims about Nevada's systemic legalized prostitution regime" and thus that the Court improperly denied privacy protections. (ECF No. 145 at 7-8.)

Again, however, the Court considered Plaintiff's attempts to generate press as only one aspect of its analysis of her interest in anonymity (ultimately finding the private interest factor *favored* Plaintiff) and never presumed that Plaintiff was the sole focus of the publicity. Moreover, the fact that the press conference at issue dealt "almost entirely" on the Complaint's claims about Nevada's systemic legalized prostitution regime also supports the public's interest in access to more details about the challenge. And to the extent the Court considered publicity in its analysis of prejudice to Defendants, the Court

---

[9]The Court considered Doe's arguments as to the countervailing public interest in allowing victims to bring cases against sex traffickers and their facilitators and in seeing those cases resolved on their merits, and took into consideration that the public interest in access was lessened because injunctive relief claims had already been dismissed. (ECF No. 141.)

already considered that the terms of a protective order could mitigate some amount of prejudice.[10]

In short, the Court fails to find any error justifying reconsideration in its consideration of multiple individually non-determinative factors, especially given the presumption of open access. Plaintiff also argues that the Court "effectively sets aside a stipulation between Plaintiff Jane Doe and Chicken Ranch in which they agreed to stay Chicken Ranch's response deadline until a protective order was entered." (ECF No. 145 at 8.) But this argument was detailed for the first time in Plaintiff's reply (ECF No. 85 at 3) to Chicken Ranch's opposition to the Motion for Protective Order, and does not provide a basis for reconsideration.[11]

### 3.    Manifest injustice

Finally, Plaintiff argues that refusing privacy protections would amount to manifest injustice. (ECF No. 145 at 8-10.) *See* LR 59-1(a)(2). She argues that it is against public policy to penalize victims of civil rights abuses seeking redress, and that the Court's ruling is extraordinary because in the balance of cases involving trafficking, courts have permitted pseudonymity. (*Id.*) In its October Order, however, the Court already analyzed the circumstances distinguishing this case from others involving trafficking and violations of other federal statutes. The Court again finds no reason to reconsider that analysis.

---

[10]Plaintiff argues that if Brothel Defendants are worried about facing negative press, "then the solution is to have a mutual protective order that protects them as well." (ECF No. 145 at 8.) But this does not go to the press's impact on an analysis of *Plaintiff's* privacy interest, nor does a mutual protective order dissolve all prejudice to Brothel Defendants. Plaintiff's cited case on this point does not refer to a mutual protective order. *See Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1148 (N.D. Ala. 2022) (sex trafficking allegations involving plaintiffs who were minors at the time of the alleged misconduct).

[11]Plaintiff bases this argument on an April 29, 2024, stipulation, in which Chicken Ranch stipulated that "Defendants' deadline to file a responsive pleading will extend indefinitely until a motion for protective order has been entered, granted, and the name of Plaintiff revealed to the Defendants" and "Defendants will then have fourteen days from the issuance of a protective order to file a responsive pleading." (ECF Nos. 53, 85 at 3.) The Court is not convinced that the stipulation amounts to an agreement to a protective order, as opposed to an extension in deadline tied to disclosure of Plaintiff's identity.

1    To support her manifest injustice argument, Plaintiff primarily cites *Advanced*

2  *Textile Corp.*, asserting that "fear of …reprisals will frequently chill [a person's] willingness

3  to challenge…violations of their rights," 214 F.3d at 1072-73, and contending that "[l]ike

4  the suit in *Advanced Textile Corp.*, this case is premised on a federal statute designed to

5  come forward and seek redress in federal court." (ECF No. 145 at 9.) But in *Advanced*

6  *Textile Corp.*, the "chilling" effect was heightened because the plaintiffs were "extremely

7  vulnerable" foreign garment workers seeking redress under the Fair Labor Standards Act

8  for violations by their *current* employers – there was a direct risk of deportation or other

9  significant reprisals.[12] *See* 214 F.3d at 1068-73. As the Court noted in the October Order,

10  Doe does not allege that she has continued exposure to Brothel Defendants (either as a

11  employee or otherwise) that heightens her vulnerability to retaliation related to disclosure

12  of her identity. And the other cases Plaintiff cites here are largely distinguishable with

13  regard to the degree of specific sensitive material involved. *See also Fleites v. MindGeek*

14  *S.A.R.L.*, Case No. CV-2104920-CJC-ADSX, 2021 WL 2766886, at *2 (C.D. Cal. June

15  28, 2021) (finding pseudonymity appropriate in case where plaintiffs alleged that sexually

16  explicit videos of them were uploaded online).

17    As it acknowledged in its October Order, the Court must take privacy interests in

18  sex trafficking actions seriously. But the Court must also refrain from hastily concluding

19  that any case involving sex-related allegations automatically meets the standard for

20  pseudonymity. Plaintiff asserts that "[t]he court drew exactly the wrong inference from the

21  systemic nature of the claims in plaintiff's lawsuit" because "[i]f a person is challenging an

22  abusive social structure, she faces potentially greater retaliation than someone who is

23  just going after an individual person or even a single corporation." (ECF No. 145 at 9.)

24  The Court reiterates, here, that the existence of a systemically abusive structure does not

25  _____

26    [12]In *Advanced Textile Corp.*, the Ninth Circuit found that that the district court erred
by failing to consider an extreme risk of retaliation and plaintiffs' highly vulnerable status
27  and, at the same time, "failing to decide whether the public's interest was best served by
requiring plaintiffs to reveal their identities" beyond reference to widespread implications
28  to the public at large. 214 F.3d at 1072-73. Taken together, the privacy factors favoring
anonymity in *Advanced Textile Corp.* were significantly stronger than those claimed here,
and the public interest factors were weaker.

1   create a presumption that any individual plaintiff is at a risk of harm significant enough to

2   justify deviation from the baseline standards of civil procedure. Accordingly, the Court

3   denies Plaintiff's Motion for Reconsideration.

4         **B.**    **Interlocutory Appeal**

5         Doe also argues, in the alternative, that the Court should certify its October Order

6   for interlocutory appeal. (*Id.* at 10-17.) A district court may certify an order for interlocutory

7   appeal under 28 U.S.C. § 1292(b) if the order: "(1) involves "a controlling question of law";

8   (2) on which there is "substantial ground[s] for difference of opinion"; and (3) "an

9   immediate appeal from the order may materially advance the ultimate termination of the

10   litigation[.]" *Id. See also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).

11   Doe does not satisfy these criteria.

12         Doe first argues there are controlling questions of law at issue regarding privacy

13   protections for sex trafficking victims. (ECF No. 145 at 10-17.) *See Cement Antitrust Litig.*,

14   673 F.2d at 1026 (providing that a controlling question of law is one that would materially

15   affect a case's outcome). Plaintiff specifically asserts that two controlling questions exist:

16   "whether sex trafficking victims should generally be permitted to proceed

17   pseudonymously and under a protective order, and whether the public advocacy factors

18   the Court relied on should be part of any balancing analysis." (ECF No. 145 at 12.) But

19   Defendants argue—and the Court agrees—that a multi-factorial discretionary

20   determination like the one the Court made here does not implicate a controlling question

21   of law, let alone an unsettled one (ECF No. 149 at 16.) *See Kamehameha Sch.*, 596 F.3d

22   at 1042 (reviewing a district court's weighing of anonymity factors). As the Court has

23   discussed, the public advocacy factors Doe identifies as problematic did not control the

24   Court's holistic finding. The Court also declines to certify an unnecessarily broad question

25   about whether plaintiffs bringing suit under the TVPRA "in general" may precede under a

26   pseudonym (especially when courts in this circuit and others have consistently treated

27   the pseudonymity inquiry as discretionary across many statutes).

28

1    Because Plaintiff fails to meet the first criteria under 28 U.S.C. § 1292(b), the Court

2    need not reach the other factors. The Court also notes, however, that Plaintiff's second

3    argument—that substantial grounds for difference of opinion *on a controlling question of*

4    *law* exist given other federal court ruling involving sex trafficking victims—is unpersuasive

5    for the same reasons. *See also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111

6    (2009). The Court's analysis was based on factual rather than legal considerations; that

7    other courts may disagree on an interpretation of those facts does not justify an

8    interlocutory appeal.

9    Doe further argues that the Court should certify an appeal because the Court's

10    determination will be "effectively unreviewable on appeal from final judgment." *Advanced*

11    *Textile Corp.*, 214 F.3d at 1066 (quoting *Midland Asphalt Corp. v. United States*, 489 U.S.

12    794, 799 (1989)). Indeed, courts have sometimes reviewed denials of pseudonymity

13    under the collateral order doctrine. *See, e.g.*, *Advanced Textile Corp.*, 214 F.3d at 1066

14    (reviewing order dismissing the case with leave to amend under collateral order doctrine);

15    *Kamehameha Sch.*, 596 F.3d at 1041; *Doe v. Coll. of New Jersey*, 997 F.3d 489, 493 (3d

16    Cir. 2021). Whether an order is an appealable collateral order—a subclass of interlocutory

17    orders—involves a distinct factor-based analysis not detailed in the instant Motion and

18    separate from certification under 28 U.S.C. § 1292(b). *See Cohen v. Beneficial Indus.*

19    *Loan Corp.*, 337 U.S. 541 (1949) (finding certain collateral orders appealable as a

20    practical construction of the finality rule in 28 U.S.C. § 1291); *Advanced Textile Corp.*,

21    214 F.3d at 1066 (describing requirements that a collateral order "[1] conclusively

22    determine the disputed question, [2] resolve an important issue completely separate from

23    the merits of the action, and [3] be effectively unreviewable on appeal from a final

24    judgment") (internal citations omitted). The Court declines to make a determination on the

25    appealability of the October Order beyond the arguments discussed under 28 U.S.C. §

26    1292(b) in the Motion.[13]

27    
28    [13]The Court notes, however, that Defendants concede that if Plaintiff chooses not to disclose her identity and this action is dismissed without prejudice, the dismissal order will be reviewable in itself under 28 U.S.C. § 1291.

1     In sum, the Court denies the Motion for Reconsideration and Plaintiff's alternative

2   request for certification of an interlocutory appeal. To the extent Plaintiff also requests a

3   stay in the deadline to disclose her identity pending resolution of the instant Motion, the

4   Court will grant that request. If Plaintiff wishes to proceed in this action, she must file a

5   notice disclosing her identity within 15 days from the date of this order. If she does not file

6   a notice, the Court will dismiss her remaining claims against Brothel Defendants without

7   prejudice.

8         **C.    Motion for Sanctions**

9         Defendant Desert Rose Club moves for sanctions against Plaintiff and her

10  attorneys at the National Center on Sexual Exploitation under Fed. R. Civ. P. 11. (ECF

11  No. 153.) *See* Fed. R. Civ. P. 11(b)(1)-(3) (providing that in presenting any document to

12  the court, an attorney must certify that to the best of his or her knowledge, information,

13  and belief, and "after any inquiry, reasonable under the circumstances," the document is

14  not being filed for an improper purpose, "the claims, defenses, and other legal contentions

15  there are warranted by existing law," and the allegations and other factual contentions

16  have evidentiary support). Desert Rose Club seeks attorneys' fees and other costs on the

17  basis that Doe's claims are frivolous and malicious as alleged in the Complaint, and as

18  presented in response to the OSC. (ECF No. 153 at 2.) *See* Fed. R. Civ. P. 11(c)(2)

19  (providing that a court has discretion to impose appropriate sanctions).

20        Desert Rose Club primarily asserts that a "cursory review" by Doe's attorneys

21  would reveal that many of Plaintiff's allegations are factually false or misleading, as well

22  as legally frivolous. (ECF No. 153 at 2.) But at this stage in the litigation, the Court cannot

23  determine that Plaintiff's Complaint or response to the OSC are legally or factually

24  baseless such that sanctions are warranted. *See Christian v. Mattel, Inc.*, 286 F.3d 1118,

25  1127 (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir.1997))

26  (providing that where a complaint is the primary focus of proceedings under Rule 11, a

27  court must consider (1) whether the complaint is objectively legally or factually baseless,

28  and (2) if the attorney has conducted a "reasonable and competent inquiry" before signing

1  and filing it). Desert Rose Club primarily objects to portions of the Plaintiff's filings which

2  implicate factual disagreements. For example, they take issue with Plaintiff's allegations

3  as to threats by brothel personnel, asserting that statements about gang affiliations and

4  debt have been fabricated. (ECF No. 153 at 2, 3-5 (contesting the allegation that Desert

5  Rose Club took 50% of fees from Plaintiff and asserting that "the attorneys would have

6  known that every sex worker is made aware of the 50% payout system before they begin

7  work").) These factual issues cannot be resolved without discovery, and Desert Rose

8  Club has moved for sanctions prior to filing an answer or Rule 12 motion. Similarly, the

9  Court cannot conclude that Plaintiff's TVPRA claims against Brothel Defendants are

10 legally baseless at this stage.

11     In short, sanctions are an extraordinary remedy, and Desert Rose Club does not

12 show they are justified here. *See Euram Realty, Inc. v. Dunn*, 15 F.3d 1084, 1084 (9th

13 Cir. 1993). The Court thus denies the Motion for Sanctions.[14]

14 **IV.    CONCLUSION**

15     The Court notes that the parties made several arguments and cited to several

16 cases not discussed above. The Court has reviewed these arguments and cases and

17 determines that they do not warrant discussion as they do not affect the outcome of the

18 issues before the Court.

19     It is therefore ordered that Plaintiff's motion for reconsideration or in the alternative,

20 for certification of an interlocutory appeal (ECF No. 145) is denied.

21     It is further ordered that Plaintiff must file a notice disclosing her identity for the

22 public docket within 15 days from the date of this order if she wishes to proceed with her

23 remaining TVPRA claims as described in the Court's October 18, 2024, order (ECF No.

24 141). If Plaintiff fails to timely file such a notice, the Court will presume she does not wish

25 to disclose her identity and will dismiss the case without prejudice.

26

27

28     [14]To the extent Plaintiff argues the motion was brought in bad faith and asks for attorneys' fees in connection with defending it, the Court also finds insufficient reason to conclude that Desert Rose Club acted in bad faith.

It is further ordered that remaining Brothel Defendants which have not answered the Complaint will have 15 days from the date on which Plaintiff files a notice disclosing her identity to file an answer or other responsive pleading. In that event, the Court defers to the Magistrate Judge to establish a scheduling order to allow this case to proceed.

It is further ordered that Defendant Desert Rose Club's motion for sanctions (ECF No. 153) is denied.

DATED THIS 4th Day of April 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

15